128-07/PJG
FREEHILL HOGAN & MAHAR LLP
Attorneys for Plaintiff
Ocean Line Holdings Limited
80 Pine Street
New York, NY 10005
(212) 425-1900
(212) 425-1901 fax
Peter J. Gutowski (PG 2200)

RECEIVED
SEP 17 2007
U.S.D.C. S.D. N.Y.
CASHIERS

JUDGE CHIN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

07 CIV 8123

-------------------------------------------------------------x
OCEAN LINE HOLDINGS LIMITED,                      07-CV-

                                        Plaintiff,

                                                          **VERIFIED COMPLAINT**

            - against –

CHINA NATIONAL CHARTERING CORP.
a/k/a SINOCHART,

                                        Defendant.
-------------------------------------------------------------x

        Plaintiff Ocean Line Holdings Limited (hereinafter "Plaintiff" or "Ocean Line"), by its

attorneys Freehill, Hogan & Mahar, LLP, as and for its Verified Complaint against the

Defendant China National Chartering Corp. a/k/a SINOCHART (hereinafter "CNCC"), alleges

upon information and belief as follows:

        1.    This is an admiralty and maritime claim within the meaning of Rule 9(h) of the

Federal Rules of Civil Procedure in that it involves a claim for the breach of a maritime contract

of charter party.  This case also falls under this Court's admiralty and maritime jurisdiction

pursuant to 28 U.S.C. §1333, and the Court's federal question jurisdiction pursuant to 28 U.S.C.

§1331. Federal jurisdiction also exists because the action arises under the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards at 9 U.S.C. §201 *et seq.* and/or the Federal Arbitration Act, 9 U.S.C. §1 *et* seq.

2.   At all times relevant hereto, the Plaintiff Ocean Line was and still is a foreign business entity duly organized and existing under the laws of Hong Kong with a correspondent address at  Suite 2101, 21/Fl, Two International Finance Centre, 8 Finance Street, Central, Hong Kong.

3.   At all times relevant hereto, the Defendant CNCC was and still is a foreign business entity duly organized and existing under the laws of China with an office and place of business at 12F, One Sinotrans Plaza, A43 Xizhimen Beidajie, Beijing 100044, China, but no office or presence within this District.

4.   On or about August 2, 2006, Plaintiff Ocean Line, in the capacity as disponent owner, entered into a maritime contract of charter party with Defendant CNCC under which Defendant CNCC agreed to charter the M/V OCEAN VICTORY for a period of minimum five months – maximum 7 months.  A copy of the subject charter party is annexed hereto as Exhibit A and incorporated herein by reference.

5.   The subject charter party provided, *inter alia*, that the Defendant charterer CNCC would only employ the vessel via … safe berth(s), safe port(s)…), and that it would be governed and construed according to English Law.  (*See* Ex. A at Printed Form lines 14 and 109 respectively, and Rider Clauses line 31 and clause 119 respectively.)

6.   The incorporation of a safe berth and safe port clause, as outlined in paragraph 5 above, constitutes a warranty under English law given by the charterer CNCC that the port(s) to

which the charterer trades the vessel shall be one(s) which the vessel can reach, use and return from without, in the absence of some abnormal occurrence, being exposed to danger.

7.    Pursuant to the terms of the charter, Plaintiff Ocean Line tendered the M/V OCEAN VICTORY into the service of CNCC in August 2006 and the vessel commenced trading under the subject charter.

8.    In October, 2006, and pursuant to voyage orders issued by CNCC, the M/V OCEAN VICTORY transited to the port of Kashima, Japan to discharge a cargo of iron ore.

9.    The vessel was berthed alongside Berth C at the Raw Materials Quay on 20 October 2006, and commenced discharge.

10.  On 23 October 2006, discharge was interrupted due to severe weather conditions.

11.  While attempting to depart from the port to take shelter on October 24, 2006, the vessel ran aground.

12.  Professional salvors, Nippon Salvage, were engaged to try to salve the vessel under a Lloyds Open Form Salvage Agreement dated 24 October 2006 but on December 27, 2006, the vessel broke into two sections before being refloated and became a total loss.

13.  The wreck of the vessel has been the subject of a wreck removal operation, which is partially complete.

14.  As a consequence of the grounding, significant damages and losses have been suffered, all of which are the responsibility of the defendant CNCC for breach of the safe port warranty contained in the charter.

15.  The damages, as nearly as can be estimated at this time, include the following items:

|      |                   |                |
|------|-------------------|----------------|
| (i)  | Value of the vessel: | $90,000,000.  |
| (ii) | Wreck removal:    | $35,000,000.   |
| (iii)| Salvage Expenses  | $19,820,838.   |
| (iv) | Loss of Use       | $2,700,000.    |
|      | Total             | $147,520,838   |

16.  The charter party provides that it is to be governed by English law and all disputes between the parties are to be resolved by arbitration in London.  Plaintiff Ocean Line specifically reserves its right to arbitrate the substantive matters at issue. Notice has been given to CNCC of the intention to arbitrate.

17.  This action is brought to obtain security in favor of Plaintiff Ocean Line in respect to its claims against CNCC in aid of London arbitration proceedings and to obtain jurisdiction over CNCC for enforcement purposes.

18.  This action is further brought to obtain security for any additional sums to cover Plaintiff's anticipated attorney fees and costs in the arbitration and interest, all of which are recoverable as part of Plaintiff's claim under English law.

19.  Under English law, including but not limited to Section 63 of the English Arbitration Act of 1996, costs including attorney fees, arbitrators' fees, disbursements and interest are recoverable as an element of Plaintiff's claim.

20.  Plaintiff Ocean Line's anticipated recoverable attorney fees and costs in the arbitration are estimated to be $3 million.

21.  Plaintiff Ocean Line's interest recovery is estimated at $ 27 million based on a rate of 6% p.a. for a period of 3 years.

22. Upon information and belief, and after investigation, Defendant CNCC cannot be "found" within this district for the purpose of Rule B of the Supplemental Rules of Certain Admiralty and Maritime Claims, but Plaintiff is informed that Defendant has, or will shortly have, assets within this District comprising of, *inter alia*, cash, funds, credits, debts, wire transfers, electronic funds transfers, accounts, letters of credit, freights, sub-freights, charter hire and/or sub-charter hire, of, belonging to, due or for the benefit of Defendant (hereinafter, "ASSETS"), moving through banking institutions and/or such other garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein, with the total amount to be attached being $177,520,838.

WHEREFORE, Plaintiff Ocean Line prays:

a.      That process in due form of law according to the practice of this Court in admiralty and maritime jurisdiction issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged;

b.      That since Defendant cannot be found within this District pursuant to Supplemental Rule B, all tangible or intangible property of the Defendant, up to and including the sum of **$177,520,838** be restrained and attached, including but not limited to any cash, funds, credits, wire transfers, electronic funds transfers, accounts, letters of credit, debts, freights, sub-freights, charter hire, sub-charter hire, and/or other assets of, belonging to, due or for the benefit of Defendant CNCC (as identified herein) moving through or within the banking institutions and/or any other institutions or any garnishees who may be served with a copy of the Process of Maritime Attachment and Garnishment issued herein; and

c.  That this enter an order directing and compelling the defendant to appear and defend in the arbitration;

d.  That this Court retain jurisdiction over this matter for purposes of any subsequent enforcement action as may be necessary, including enforcement of the award and entry of judgment thereon; and,

e.  For such other, further and different relief as this Court may deem just and proper in the premises.

Dated: New York, New York
       September 17, 2007

FREEHILL HOGAN & MAHAR, LLP
Attorneys for Plaintiff

By _____
    Peter J. Gutowski (PG 2200)
    80 Pine Street
    New York, NY  10005
    (212) 425-1900
    (212) 425-1901 fax

## ATTORNEY VERIFICATION

State of New York    )
                    ) ss.:
County of New York   )

      PETER J. GUTOWSKI, being duly sworn, deposes and says as follows:

      1.      I am a partner with the law firm of Freehill Hogan & Mahar, LLP, attorneys for Plaintiff in this action, I have read the foregoing Verified Complaint and know the contents thereof, and the same is true to the best of my knowledge, information and belief.

      2.      The sources of my information and the grounds for my belief are communications, information and documentation provided by our client through their English solicitors.

      3.      The reason this verification is made by an attorney and not by the Plaintiff is because the Plaintiff is a foreign entity, none of whose officers are presently within this Judicial District.

                                                     Peter J. Gutowski

Sworn to before me this
__17__ day of September, 2007

Notary Public

**Lisa M. Morales**
**Notary Public, State of New York**
**No. 01MO6162004**
**Qualified in the Bronx**
**Commission Expires Feb. 26, 2011**

NYDOCS1/290267.1

*Effective Head C/P*

# Time Charter

## GOVERNMENT FORM

*Approved by the New York Produce Exchange*

*November 6th, 1913 — Amended October 20th, 1921; August 6th 1931; October 3rd, 1946*

1. *This Charter Party*, made and concluded in.......Beijing......... 2nd day of August 2005

2. Between Messrs Ocean Line Holdings Limited, Hong Kong as ............................................

3. disponent Owners of the good Hong Kong Flag ....~~Steamship~~/Motorship "OCEAN VICTORY" (See Rider Clause 115 for Vessel's Description)...of ...............................

4. of .........~~tons gross register, and~~ ......................~~tons net register, having engines of~~ .................. ~~indicated horse power~~

5. and with hull, machinery and equipment in a thoroughly efficient state, and classed...BV ......~~Lloyd's Register of Shipping or equivalent......................................~~

6. ~~at.............ref about..................-cubic   feet  bale capacity, and about~~ ............................................. ~~tons of 2240 lbs.~~

7. ~~deadweight capacity—  (cargo and bunkers, including fresh water and stores not exceeding  one and one half percent of ship's deadweight capacity;~~

8. ~~allowing a minimum of fifty tons) on a draft of................feet.....inches on...........Summer freeboard, inclusive of permanent bunkers;~~

9. ~~which are of the capacity of about...........tons of fuel, and capable of steaming, fully laden, under good weather~~

10. ~~conditions about .....knots on a consumption of about  ...tons of best Welsh coal best grade fuel oil best grade Diesel oil,~~

11. now trading ..............................................................................................................................

12. and ...Messrs China National Chartering Corp.  Charterers of the City of...BEIJING.........

13. *Witnesseth*, that the said Owners agree to let, and the said Charterers agree to hire the said vessel, from the time of delivery, for

14. ~~about  For minimum 5 months maximum 7 months via safe anchorage(s), safe berth(s) safe port(s) always accessible, always afloat, always within Institute warranty Limits,~~ always within trading limits with  harmless/Non-dangerous/Non-hazardous  coal  or  iron  ore  in  bulk  only  always  excluding DRI/DRIP/HBI/SPONGE IORN ORE/INDIAN COAL.  All cargoes to be loaded/ trimmed/ transported/ discharged strictly in accordance with current IMO/local regulations/recommendations. However the offhire period for drydocking always excluded from minimum charter period.

15. ..............................................................................within below mentioned trading limits.

16. Charterers to have liberty to sublet the vessel for all or any part of the time covered by this Charter, but Charterers remaining responsible for

17. the fulfilment of this Charter Party. Acceptance of delivery by Charterers shall not constitute any waiver of Owners' obligations hereunder.

18. Vessel to be placed at the disposal of the Charterers, ~~at~~ ...on dropping last outwards sea pilot 1(one) safe port China  (intention Beilun/Shanghai) port in owners option  at any time, day or night, Sundays and Holidays Included...............

19. ..............................................................................................................................................

20. ~~in such dock or at such wharf  or place (where she may safely lie, always afloat, at all times of tide, except as otherwise provided in clause No. 6) as~~

21. ~~the Charterers may direct.  If such dock, wharf or place be not available time to count as provided for in clause No. 5.~~ Vessel on arrival first loading port ~~her delivery~~ to be

EXHIBIT

A

tabbies

22. ready to receive cargo  with clean-swept holds and tight, staunch, strong and in every way fitted for the service,
(see Clause 31) having water ballast, and˚ winches  and

23. ~~donkey-boiler with sufficient steam-power, or if not equipped with donkey-boiler, then other power sufficient to run all the winches at one and the same~~

24. ~~time~~ (and with full complement of officers and ratings. ~~seamen, engineers and firemen~~ for a vessel of her tonnage), to be employed, in carrying permitted cargo ~~lawful merchan-~~

25. ~~dise, including petroleum or its products, in proper containers,~~ excluding (See Rider Clause 43)  .......................

26. ~~(vessel is not to be employed in the carriage of Live Stock, but Charterers are to have the privilege of shipping a small number on deck at their risk,~~

See Clause 66

27. ~~all necessary fittings and other requirements to be for account of Charterers), in such lawful trades, between safe port and/or ports in British North~~

28. ~~America, and/or United States of America, and/or West Indies, and/or Central America, and/or Caribbean Sea, and/or Gulf of Mexico, and/or~~

29. ~~Mexico, and/or South America,~~ ......................................................................................~~and/or Europe,~~

30. ~~and/or Africa, and/or Asia, and/or Australia, and/or Tasmania, and/or New Zealand, but excluding Magdalena River, River St. Lawrence between~~

31. ~~October 31st and May 15th, Hudson Bay and all unsafe ports; also excluding, when out of season, White Sea, Black Sea and the Baltic,~~

32. In world wide trading within Institute Warranty Limits (I.W.L.) See Rider Clauses (Line 31)............

33. ............................................................................................................................................................

34. ............................................................................................................................................................

35. as the Charterers or their Agents shall direct, on the following conditions :

36.     1. That the Owners shall provide and pay for all provisions, wages, and   consular shipping and discharging fees of the crew; also charges for port services pertaining to the crew;  shall pay for the

37. insurance of the vessel, also for all the cabin, deck, engine-room and other necessary stores,   including boiler water, fresh water, lubricating oil, and galley oil if any, and maintain her class and keep

38. the vessel in a thoroughly efficient state in hull, machinery and equipment with inspection certificates necessary to comply with current requirements at ports of call and canals for and during the service.

39.     2. That the Charterers whilst the vessel is on hire shall provide and pay for all the fuel and MDO except as otherwise agreed, Port Charges, compulsory and customary Pilotages, Great Barrier Reef, Torres Strait, Queensland Coast, Hyrographers Passage, Japan Island Sea, Magellan Strait, Dover Strait,  Suez Canal, Bosphorus, Dardanelles and Baltic pilotages covering south of Baltic, Baltic Sea, Skagerrak and Canal Dues always to be for charterers' account,  Agencies, Commissions,

40. Consular Charges (except those pertaining to the Crew or her Owners), and all other usual expenses except those before stated, but when the vessel puts into

41. a port for causes for which Owners/vessel is responsible, then all such charges incurred shall be paid by the Owners. Fumigations ordered because of

42. illness of crew  to be for Owners account. Fumigations ordered because of cargoes carried or ports visited while vessel is employed under this charter to be for Charterers account. See Clause 41 ~~Fumigation ordered because of cargoes carried or ports visited while vessel is employed under this~~

43. ~~charter to be for Charterers account~~ . All other fumigations to be for Charterers account after vessel has been on ~~charter for a continuous period~~

44. ~~of six months or more.~~

45.     Charterers are to provide necessary dunnage, and shifting boards, also any extra fittings requisite for a special trade or unusual cargo, but

46. Owners to allow them the use of any dunnage and shifting boards already aboard vessel. Charterers to have the privilege of using shifting boards

47. for dunnage, they making good any damage thereto.

48.     3. See Clause 33 ~~That the Charterers, at the port — of delivery, and the Owners, at the port of re-delivery, shall take over and pay for all fuel — remaining on~~

49. ~~board the vessel —, at the current prices in the respective ports, the vessel to be delivered with not less than .................. tons and not more than~~

50. ~~.........tons and to be re-delivered with not less than......... tons and not more than............ tons.~~

51.     4.  That the Charterers shall pay for the use and hire of the said Vessel at the rate of ....(See Clause 117)

52. ..~~United States Currency per — ton on vessel's total deadweight carrying capacity, including bunkers and~~

53. ~~stores, on ........................................ summer freeboard, per Calendar Month,~~ commencing on and from the time ~~day~~ of her delivery, as aforesaid, and at

54. and after the same rate for any part of a day ~~month;~~ hire to continue until ~~the hour of the day~~ time of her re-delivery in like good order and condition, ordinary

55. wear and tear excepted, to the Owners (unless lost) ~~at~~ on dropping last outward sea pilot at one safe port P.R.China or Singapore/Japan range or Skaw/Passero range port in Charterers option at any time, day or night, Sundays and Holidays included always within Institute Warranty Limits and within Trading Limits.

56. unless otherwise mutually agreed.   Charterers are to give Owners   30/20/10...........days approximate and 5/3/2/1 day(s) definite

57. notice of vessels ~~expected date of~~ re-delivery date and port , ~~and probable port~~

58.     5.  Payment of said hire to be made in ~~New York~~ in cash (the expression 'cash' to include payment by customary bank remittance/transfer) in United States Currency, every 15 days ~~semi-monthly~~ in advance, and for the last  15 days  ~~half-month~~ or to See Rider Clause 117

59. part of same the approximate amount of hire, and should same not cover the actual time, hire is to be paid for the balance day by day, as it becomes

60. due, if so required by Owners, unless bank guarantee or deposit is made by the Charterers, otherwise failing the punctual and regular payment of the

61. hire, or bank guarantee, or on any breach of this Charter Party, the Owners shall be at liberty to withdraw the vessel from the service of the Char-

62. terers, **subject to Clause 36** without prejudice to any claim they (the Owners) may otherwise have on the Charterers.  ~~Time to count from 7 a.m. on the working day~~

63. ~~following that on which written notice of readiness has being given to the Charterers or their Agents before 4 p.m., but if required by Charterers, they~~

64. ~~to have the privilege of using the vessel at once, such time used to count as hire.~~

65.     Cash for vessel's ordinary disbursements at any port may be advanced as required by the Captain,  by the Charterers or their Agents, subject

66. to 2 1/2 % commission and such advances shall be deducted from the hire.  The Charterers, however, shall in no way be responsible for the application

67. of such advances.  .

68. 6. That the ~~cargo or cargoes~~ be laden and/or discharged in any safe dock or at any safe wharf or safe place that Charterers or their agents may

69. direct, provided the vessel can safely lie always afloat at any time of tide, ~~except at such places where it is customary for similar size vessels to safely~~

70. ~~lie aground.~~

71.    7. That the whole reach of Vessel's Hold, ~~Decks~~ and usual places of loading (not more than she can reasonably stow and carry), also

72. accommodations for Supercargo, if carried, shall be at Charterers' disposal reserving only proper and sufficient space for Ship's officers, **ratings** ~~crew,~~

73. tackle, apparel, furniture, provisions, stores and fuel. ~~Charterers have the privilege of passengers as far as accommodations allow, Charterers~~

74. ~~paying Owners ..................... per day per passenger for accommodations and meals. However, it is agreed that in case any fines or extra expenses are~~

75. ~~incurred in the consequences of carriage of passenger, Charterers are to bear such risk and expense.~~ **No passenger is allowed.**

76.    8. That the Captain shall prosecute his voyages with the utmost despatch, and shall render all customary assistance with ship's crew and

77. boats. The Captain (although appointed by the Owners) shall be under the orders and directions of the Charterers as regards employment and

78. agency; and Charterers are to load, stow, **tally** ~~and trim~~ **and discharge** the cargo at their expense under the supervision, **direction of the Captain. Owners hereby authorize Charterers or their Agents to** ~~who is to~~ sign Bills of Lading for

79. cargo as presented, **provided in conformity with Mate's** ~~or Tally Clerk's~~ receipts **without prejudice to this Charter Party.**

80.    9. That if the Charterers shall have the reason to be dissatisfied with the conduct of the Captain, Officers ,or Engineers, the Owners shall on

81. receiving particulars of the complaint, investigate the same, and, if necessary make a change in the appointments.

82.    10. That if the Charterers shall have permission to appoint a Supercargo, at **Charterers' expenses and risk, signing Letter of Indemnity to Master upon embarkation,** who shall accompany the vessel and see that the voyages are prosecuted

83. with the utmost despatch. **In such case, Charterers are also required to provide/guarantee following per the CSO request due to security purpose: 1) a copy of official document with full name & recent photo (i.e. Passport) will be provided for the proof of joining Supercargo' identity; 2) a copy of recommended letter issued by requested party; 3) only personal belongings are allowed to bring onboard and no arms & ammunition to be declared.** He is to be furnished with free accommodation, and same fare as provided for Captain's table. Charterers paying at the

84. rate of  $10.00 per day. Owners to victual Pilots and Custom Officers, and also, when authorised by Charterers or their Agents to victual Tally

85. Clerks, Stevedore's, Foremen, etc., Charterers paying at the ~~current~~ rate per meal for all such victualling..**(See Rider Clause 97)**

86.    11. That the Charterers shall furnish the Captain from time to time with all requisite instructions and sailing directions, in writing, and the

87. Captain shall keep a full and correct deck Log of the voyage or voyages which are to be patent to the Charterers or their Agents,  and furnish the Char-

88. terers, their Agents or Supercargo when required, with a true copy of daily Logs, showing the course of the vessel and distance run and the con-

89. sumption of fuel.

90. 12. That the Captain shall use diligence in caring for the ventilation of the cargo. **Vessel has natural ventilation only**

91. 13. ~~That the Charterers shall have the option of continuing this charter for a further period of.............~~

92. ~~...............................................................................................~~

93. on giving written notice thereof to the Owners or their Agents .............. days previous to the expiration of the first-named term, or any declared option.

94.   14. That if required by Charterers, time not to commence before ...0000 hours local time 22nd August 2006 ...............and should vessel

95. not have given written notice of readiness on or before ...2400 hours local time 3rd September, 2006... but not later than 4p.m. Charterers or (See also Rider Clause 14)

96. their Agents to have the option of cancelling this Charter at any time not later than the day of vessel's readiness.

97.   15. That in the event of the loss of time from default and/or deficiency of men including strike of officers and/or ratings or deficiency of stores, fire, breakdown or damages to hull, machinery or equipment, *

98. grounding, detention by average accidents to ship or cargo, drydocking for the purpose of examination or painting bottom, or by any other cause,

99. preventing the full working of the vessel, the payment of hire shall cease for the time thereby lost; and if upon the voyage the speed be reduced by

100. defect in or breakdown of any part of her hull, machinery or equipment, the time so lost, and the cost of any * extra fuel consumed in consequence

101. thereof, and all extra expenses shall be deducted from the hire.

102.   16. That should the Vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being last heard of) shall be

103. returned to the Charterers at once. The act of God, enemies, fire, restraint of Princes, Rulers and People, and all dangers and accidents of the Seas,

104. Rivers, Machinery, Boilers and Steam Navigation, and errors of Navigation throughout this Charter Party, always mutually excepted.

105. The vessel shall have the liberty to sail with or without pilots, to tow and to be towed, to assist vessels in distress, and to deviate for the

106. purpose of saving life and property.

107.   17. That should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to, three persons at New York,

108. one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for

109. purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men. Arbitration in London and English Law to apply

110.   18. That the Owners shall have a lien upon all cargoes, and all sub-freights and sub-hires for any amounts due under this Charter, including General Aver-

111. age contributions, and the Charterers to have lien on the Ship for all monies paid in advance and not earned, and any overpaid hire or excess

112. deposit to be returned at once. Charterers will not suffer, nor permit to be continued, any lien or encumbrances incurred by them or their agents, which

113. might have priority over the title and interest of the owners in the vessel.

114.   19. That all the derelicts and salvage shall be for Owners' and Charterers' equal benefit after deducting Owners' and Charterers' expenses and

115. Crew's proportion. General Average shall be adjusted, stated and settled according to Rules 1 to 15, inclusive, 17 to 22, inclusive, and Rule F of

116. York-Antwerp Rules 1994 and/or any modification thereof 1924, as such port or place in the United States as may be selected by the carrier, and as to matters not provided for by these

117. Rules, according to the laws and usages at the port of New York. In such adjustments in foreign currencies shall be exchanged into

118. ~~United States money at the rate prevailing on the dates made and allowances for damage to cargo claimed in foreign currency shall be converted at~~

119. ~~rate prevailing on last day of discharge at the port or place of final discharge of such damaged cargo from the ship. Average agreement or~~

120. ~~bond and such additional security, as may be required by the carrier, must be furnished before delivery of the goods. Such cash deposits as the carrier~~

121. ~~or his agents may deem sufficient as additional security for the contribution of the goods and for any salvage and special charges thereon, shall, if~~

122. ~~required, be made by the goods, shippers, consignees or owners of the goods to the carrier before delivery. Such deposit shall, at the option of the~~

123. ~~carrier, be payable in United States money and be remitted to the adjuster. When so remitted the deposit shall be held in a special account at the~~

124. ~~place of adjustment in the name of the adjuster pending settlement of the General Average and refunds or credit balances, if any, shall be paid in~~

125. ~~United States money.~~ Hire not to contribute to General Average

126. ~~In the event of accident, danger, damage, or disaster, before or after commencement of the voyage resulting from any cause whatsoever,~~

127. ~~whether due to negligence or not, for which, or for the consequence of which, the carrier is not responsible, by statute, contract, or otherwise, the~~

128. ~~goods, the shipper and the consignee, jointly and severally, shall contribute with the carrier in general average to the payment of any sacrifices,~~

129. ~~losses, or expenses of a general average nature that may be made or incurred, and shall pay salvage and special charges incurred in respect of the~~

130. ~~goods. If a salving ship is owned or operated by the carrier, salvage shall be paid for as fully and in the same manner as if such salving ship or~~

131. ~~ships belonged to strangers.~~

132. ~~Provisions as to General Average in accordance with the above   are to be included in all bills of lading issued hereunder.~~

133. 20. Fuel  used by the vessel while off hire, ~~also for cooking, condensing water, or for grates and stoves~~ to be agreed to as to quantity, and the

134. cost of  replacing same, to be allowed by Owners.

135. 21. ~~That as the vessel may be from time to time employed in tropical waters during the term of this Charter, vessel is to be docked at a~~

136. ~~convenient place, bottom cleaned and painted whenever Charterers and Captain think necessary at least once in every six months, reckoning from~~

137. ~~time of last painting, and payment of the hire to be suspended until she is again in proper state for the service.~~

138. ~~No~~
    ~~Drydocking during the currency of this Charter except in case~~
    ~~Of emergency ....................................................................................................................................................~~

139. ~~..................................................................................................................~~

140. ~~22. Owners shall maintain the gear of the ship as fitted, providing  gear (for all  derricks) capable of handling lifts  up to  three tons, also~~

141. ~~providing ropes, falls, slings and blocks. If vessel if fitted with derricks capable of handling heavier lifts, Owners are to provide necessary gear for~~

142. ~~same, otherwise equipment and gear for heavier lifts shall be for Charterers' account. Owners also to provide on the vessel  lanterns and oil  for~~

143. ~~night work, and vessel to give use of electric light when so fitted, but any additional lights over those on board to be at Charterers' expense.  The~~

144. ~~Charterers to have the use of any gear on board the vessel.~~ Owners also to provide and maintain in efficient working order adequate electric lights for night work

145. ~~23.  Vessel to work night and day,  if required by Charterers; and all winches to be at Charterers' disposal during loading and discharging :~~

146. ~~steamer to provide one winchman per hatch to work winches day and night, as required, Charterers agreeing to pay officers, engineers, winchmen,~~

147. ~~deck hands and donkeymen for overtime work done in accordance with the working hours and rates stated in the ship's articles.  If the rules of the~~

148. ~~port, or labor unions, prevent crew from driving winches, shore Winchmen to be paid by Charterers.  In the event of a disabled winch or winches, or~~

149. ~~insufficient power to operate winches, Owners to pay for shore engine, or engines, in lieu thereof, if required, and pay any loss of time occasioned~~

150. ~~thereby.~~

151. ~~24. It is also mutually agreed that this Charter is subject to all terms and provisions of and all the exemptions from liability contained~~

152. ~~in the Act of Congress of  United States approved on the 13th day of February, 1893, and entitled "An Act relating to Navigation of Vessels,~~

153. ~~etc.," in respect of all cargo shipped under this charter to or from the United States of America.  It is further subject to the following clauses, both~~

154. ~~of which are to be included in all bills of lading issued hereunder :~~

155. ~~————————————————————  U.S.A. Clause Paramount~~

156. ~~This bill of lading shall have effect subject to the provisions of the Carriage of goods by Sea Act of United States, approved April 16,~~

157. ~~1936, which  shall  be  deemed  to  be  incorporated  herein,  and  nothing  herein  contained  shall  be  deemed  a surrender by the carrier of any~~

158. ~~rights or immunities or an increase of any of its responsibilities or liabilities under said Act.  If any term of this bill of lading~~

159. ~~be repugnant to said Act to any extent, such term shall be void to that extent, but no further.~~

160. ~~————————————————————  Both to Blame Collision Clause~~

161. ~~If the ship comes into collision with another ship as a result of the negligence of other ship and any act, neglect or default of the~~

162. ~~Master, mariner, pilot or the servants of the Carrier in the navigation or in the management of the ship, the Owners of the goods carried~~

163. ~~hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss~~

164. ~~or liability represents loss of, or damage to, or any claim whatsoever of the owners of said goods, paid or payable by the other or non-~~

165. ~~carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her~~

166. ~~owners as part of their claim against the carrying ship or carrier.~~

167.     25. The vessel shall not be required to force ice or follow ice breakers or enter any ice-bound port or any port where lights or light-ships have been or are about to be with-

168. drawn by reason of ice, or where there is risk that in the ordinary course of things the vessel will not be able on account of ice to safely enter the

169. port or to get out after having completed loading or discharging.

170.    26. Nothing herein stated is to be construed as a demise of the vessel to the Time Charterers. The owners to remain responsible for the

171. navigation of the vessel, act of pilots and tugboats, insurance, crew, and all other matters, same as when trading for their own account.

172.    27. A commission of 1 2¼ per cent is payable by the Vessel and Owners to **Ocean Robin Shipping Holding Corp.** ................................................................................................................

173. ....................................................................................................................................................................

174. on hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

175.    28. An address commission of  3.75 2 ½ per cent payable to **Charterers** ................ on the hire earned and paid under this Charter, and also upon any continuation or extension of this Charter.

176.    29. This Charter Party shall be governed by and construed in accordance with English Law.

177.    30. Should the actual performance of the vessel show a failure to satisfy the vessel's speed/consumption specified in Clause 99 **115 provided Charterers shall submit the underperformance claim with supported evidence/report issued by an independent weather bureau**, the hire shall be decreased

178. by an amount sufficient to indemnify Charterers to the extend of such failure, the Charter remaining otherwise unaffected.

179    31. **Vessel's holds on delivery and/or on arrival the first loadport to be clean swept and washed down by fresh water and dried up and in every respect ready to receive Charterers' intended cargo and should pass inspections. If vessel fails to pass hold cleanliness inspection vessel to be put off-hire until she passes the re-inspection.**  Refering to line 22 of the Charter Party, Owners warrant vessel's holds on delivery or in Owners' option prior to arrival at first loading port to be

180 can, swept, dried and free of rust, odor and/or cargo residues from previous voyage to the satisfaction of an Inspector appointed or approved by Charterers or

181 Shippers in order to receive any permissible cargoes including ....... If the vessel is rejected by the Inspector at loading port, the

182 vessel will be off-hire until all holds are accepted by the Inspector, any response caused thereby to be borne by Owners. Charterers' intended cargo

183 is

184    32. Refering to line 32 of the Charter Party, Charterers have the option of trading vessel beyond I.W.L. and additional premium, if any,

185 thus incurred to be for their account.

186    33. Charterers on delivery, and Owners on re-delivery, shall take over and pay for all fuel (FO) and diesel oil (DO) remaining on board the vessel as

187 hereunder.

188 The quantities and prices of the bunkers on vessel's delivery and re-delivery respectively and estimated bunker quantities on delivery to be as

189 follows: (See Rider Clause 90)

| | ON DELIVERY | ON RE-DELIVERY |
|---|---|---|
| BUNKER QUANTITY | a. as on board <br> b. minimum (min) ...............metric tons (MT) FO <br> ...MT <br> DO <br> maximum(max)     MT FO <br> ...MT <br> DO | a.  about  same  quantities  as delivered. <br> b. min—          ..MT FO <br> ...MT DO <br> max...................MT FO <br> ... MT DO <br> c as on board |
| BUNKER PRICE <br> US. DOLLARS | ...........FO <br> ...........DO | a ....................FO <br> b.......................... DO |

| PER MT | | | ~~c. Charterers' current contract price~~ |
|---|---|---|---|
| ~~ESTIMATED QUANTITY~~ | ............MT FO | ............MT DO | |

190 At both delivery and re-delivery the vessel to have sufficient bunkers to reach nearest main bunkering port.

191 Charterers to have the privilege of supplying bunkers at their expense during discharging of the vessel's previous cargo provided same does not hinder

192 discharging operations.

193 ~~34. Owners to allow Charterers US$....... Per day for fuel used for domestic requirements basis ...... MT per day~~

194 ~~US$...... per MTDO/FO~~ ~~used by vessel.~~

195 ~~35. Charterers may deduct the value of the estimated quantity of bunkers on board at re-delivery from the~~ ~~estimated last sufficient hire payment or~~

196 ~~payment for the time up to re-delivery. Charterers may also deduct the estimated disbursements and claims for~~ ~~Owners' account undertaken under the Charter party~~

197 (and not previously deducted) from such payment or payments, **provided properly supported with vouchers.**

198 36 If hire is due and not received, Owners, before exercising the option of withdrawing the vessel will give Charterers **72 hours' notice** notice

199 Saturdays Sundays and holidays excluded and will not withdraw the vessel if the hire is paid within these 72 hours.

200 37. The vessel to have liberty of using diesel oil when entering and leaving port and for maneuvering in shallow narrow waters

201 38. During the currency of this Charter the vessel to be adequately fitted and suitable for transit of the ~~Panama Canal and~~ Suez Canal at all

202 times. The vessel to have on board valid Suez Canal Admeasurement

203 certificates and this certificate to remain valid throughout the currency of the Charter.

204 ~~39. the vessel to have on board all appropriate cargo gear certificates including but not limited to a certificate which complies with the~~

205 ~~requirements of the International Labour Organization Convention No.32 on delivery under this charter and these certificates to remain valid throughout~~

206 ~~the currency of the Charter Owners to obtain and pay for a British tonnage certificate should the vessel call at any the United Kingdom port.~~

207 ~~40. During the currency of the Charter, Owners guarantee the vessel will have valid grain loading certificates approved by a government and/or~~

208 ~~recognized Classification Society according to Chapter VI of the International Convention for the safety of Life at Sea 1974 and its amendments~~

209 41. The vessel to provide valid deratisation certificate on delivery and if this does not cover the whole period of the Charter and fumigation is necessary from

210 any cause whatsoever such cost and time to be for Owners' account.

211 42. ~~The vessel is able to load a full cargo of iron Ore pellets concentrates only using alternate holds only~~ (See Rider Clause 43 )

212 ~~43. Charterers have the right to carry cargoes of concentrates and/or fishmeal provided they are shipped in accordance with International maritime~~

213 ~~Organization (I.M.O.) regulations Charterers have the right to carry cargoes of coal and/or petroleum coke and/or sulfur~~ (See Rider Clause 43 )

214 ~~44. Owners agree to the carriage of salt provided that prior to loading Charterers whitewashing vessel's holds at their expense and time and wash~~

215 ~~down holds with fresh water after completion of discharge to Master's satisfaction that all salt has been removed. Unless consecutively allocated~~

216 ~~for this trade Notwithstanding the above Owners agree to the carriage of salt without whitewashing of holds for occasional single voyages only.~~

217 ~~45. Charterers have the liberty to carrying injurious, inflammable and other dangerous cargoes (but always excluding cargoes specified Preamble)~~

218 ~~provided same packed, loaded and stowed also numbered and discharged in accordance with I.M.O. regulation, extra insurance, if any to be for~~

219 ~~Charterers' account.~~

220 46. "Carriage of Nuclear Materials"

221 Notwithstanding any provision whether written or printed contained in this Charter, it is agreed that nuclear fuels or radioactive waste or

222 products are specifically excluded from the cargo permitted to be loaded or carried under this Charter Party. This exclusion does not apply to radio

223 isotopes used or intended to be used for any industrial, commercial, agricultural, medical, or scientific proposes provided Owners' prior approval

224 has been obtained to the loading thereof.

225 47. If Owners are required to establish or maintain financial security of responsibility in respect of oil or other pollution to enable the

226 vessel lawfully to enter, remain in, or leave any port, place, territorial or contiguous waters of any country, state in performance of this charter,

227 the Owners shall comply with such requirements at their expenses and any time lost to Charterers shall be treated as off-hire and any expenses

228 flowing from same shall be for Owners account. (See Rider Clause 103)

229 48. The Vessel is guaranteed suitable for grab discharge. No cargo to be loaded in or on top of deep tankers, nor in tweendecks, nor in bridge space

230 nor in any other place not suitable for discharge by means of customary mechanical grabs and bulldozers. Nevertheless, should any cargo be loaded by the vessel in places

231 not accessible to grabs, any time and/or dispatch money so lost and all extra expenses over and above the cost of normal grab discharge at

232 destination to be for Owners account. Deep tanks, tunnels and all other fittings within the vessel's hold are to be adequately protected against

233 damage by Stevedores' grabs, failing which Owners to be responsible for all consequences.

234 49. In the event of the vessel being subjected to boycott, being delayed or rendered inoperative by strikes, labor stoppages or any other

235 difficulties arising from vessel's flag, ownership, crew or terms or employment of crew of chartered vessel or any other vessel under same ownership

236 operation or control, such time lost to be considered as off-hire, and any extra expenses, claims or damages incurred thereby to be for Owners' account. Owners

237 guarantee that on delivery the minimum terms and conditions of employment of the crew of the vessel will be covered by a contract acceptable to the International

238 Transport Workers Federation (I.T. F.) or by a bona fide trade union agreement acceptable to the I.T.F. and will remain so during the duration of the Charter

239 period. Vessel to have on board a current " Blue Certificate " issued by the I.T.F. Officers and crew must be employed under agreement recognized by I.T.F. or acceptable to I.T.F.

240 50. Owners to give Charterers 25/20 running days approximate and 10/5/3 running days definite notice of vessel's readiness to deliver under this Charter

241 and to keep Charterers informed of any changes immediately they occur.

242 51. An 'on-hire survey' and 'off-hire survey' to be held jointly by Owners and Charterers, the cost to be equally shared but in Owners time at

243 delivery or first loading port provided same prevents/delays Charterers' operations of the Vessel and Charterers' time at redelivery at last discharging port.

244 52. Crew to open and close hatches before during and after stevedoring work when and where required and when permitted by shore labor regulations.

245 53. Charterers have the option of holding a superficial inspection at any time but limited to maximum 2 times throughout the whole duration of this charter party. Owners or Master giving every facility and assistance in carrying

246 this out.

247 54. In the event of a failure or breakdown of derrick or derricks, winch or winches, crane or cranes, or any piece of equipment connected thereto

248 by reason of disablement or insufficient power, the hire to be reduced, pro-rata according to the number of winches and/or derricks and/or cranes which

249 are available as compared with those that are required by Charterers to be available at that time, for the period of such insufficiency.

Owners are to pay

250  for the cost of hiring shore appliances in lieu thereof If required by Charterers and pay for any losses occurred hereby, Owners are to pay in addition

251  the cost of the labour affected by the failure or breakdown, either Idle or additional engaged.

252  55. Charterers are not to be responsible for stevedores or either damage to the vessel unless Master ensures the admission of liability in writing

253  from the party causing damage (See Rider Clause 55)

254  56. Should the vessel put back on a voyage by reason of breakdown or an accident, the hire shall be suspended from the time of her putting back

255  until she again be in the same or equivalent position and the voyage resumed therefrom.

256  57. During the currency of this charter should the vessel be on hire for a continuous period of more than 30 consecutive days or 60 accumulative days but in both cases the off-hire period for drydocking is always excluded Charterers have

257  the liberty of cancelling this Charter party provided no cargo on board.

258  58. Charterers to have the benefit of any return insurance premium recoverable by Owners from their Underwriters (as and when received from their ..

259  Underwriters) by reason of the vessel being in port for a minimum of 30 days, if on full hire for this period or pro-rata for the time actually on

260  hire.

261  59. In the event of war, whether declared or undeclared between any two of the following : U.S.A. Russia, United

262  Kingdom, China, France, Japan, Germany and ............ either party to have the right of cancelling this Charter

263  or any remaining portion thereof (See Rider Clause 59)

264  60. Normal War risk Insurance on Hull and Machinery and Crew to be for Owners' account, but any extra War Risk and crew bonus required by Chinese Seamans Union if applicable to be for Charterers' account, Vessel's current War Risk Hull and Machinery Increased value and /or Disbursement Value ...US$70,000,000.00. Insurance due to vessel's trading In Charterers' service to be for Charterers' account, Vessel's insurance value for War Risk Insurance for the period of this Charter Party

266  Is US$70,000,000.00 upto 28th January 2007............

267  61. extra insurance on cargo, If any, due to vessel's age, flag, class or ownership or on account of the vessel being sold for demolition to be for

268  Owners' account.

269  62. In the case of damage to and/or loss of cargo carried on the vessel in which Owners' liability could be involved under terms of this

270  Charter Party, Owners authorize Charterers and/or their operators and/or their agents at the discretion of the latter parties, specifically in each and

271  every case to extend the time of suit on their behalf beyond the statutory one year of the Hague Rules and of the relevant legislation in the countries

272  of their enactment, the so granted extension shall not prejudice

273  the ultimate responsibility of both parties. Owners agree that liability for cargo claims as between Owners and Charterers shall be apportioned as.

274  specified by the Inter-Club New York Produce Exchange Agreement 1996 and any subsequent amendment. as amended

275  63. crew to clean the vessel's holds between voyages when requested by Charterers. Charterers to pay US$ 150 per hold in case of sweeping

276  US$ 250 per hold In case of sweeping and washing as intermediate hold cleaning bonus.

277  64. Charterers have the option of redelivering the vessel upon completion of discharge without cleaning and sweeping of holds in consideration of

278  which Charterers are to pay Owners US$ 8,000 lumpsum or pro-rata if In fact one or more holds are redelivered In clean swept condition

279  65. All taxes on cargo or voyage freights to be for Charterers' account, except income taxes and taxes on time charter hire levied in the country

280  of the vessel and/or her Owners' domicile. All dues, duties, charges and/or taxes on crew and /or stores to be for Owners' account.

281  66. the vessel to carry a full deck load If required In accordance with normal marine practice, and the deck load will be controlled by vessel's

282  stability and seaworthiness such deck load will not be limited by a arbitrary restriction of weight of cargo which can

283 ~~be loaded on deck or on~~
~~hatches.~~

284 ~~67. The vessel to have sufficient tones to cover hatches during shifting time between berth in loading and~~
~~discharging ports, if no night work~~

285 ~~affected the crew to cover hatches with tents at Owners' expense.~~

286 ~~68. During the period of this time charter, Charterers have the right of taking down and shifting any wooden~~
~~bulkheads and/or shifting boards~~

287 ~~if necessary, time and cost of taking down and re-erecting to be for Charterers' account. The crew to assist in~~
~~erecting and taking down shifting~~

288 ~~boards and uprights for deck cargo when necessary and if permitted by local shore regulation, otherwise~~

289 ~~shore labor to be employed at Charterers' expense.~~

290 69. Shifting boards, bins and feeders, if any, are to be dismantled and stowed away before delivery of the vessel,
unless otherwise required by

291 Charterers.

292 70. Charterers have the liberty as part of the proposed voyages under this time charter of ordering the vessel to
proceed to any port or ports at

293 which bunker oil is available for the purpose of bunkering at any stage of the said voyage whatsoever, whether
such ports are on or off the direct

294 and/or customary routes between any of the ports of loading and/or discharging for which the vessel is scheduled
and may there take oil bunker in

295 any quantity in the discretion of Charterers, maximum ~~even~~ up to the allowed safe capacity of fuel tanks ~~and~~
~~deeptanks and any other~~
~~compartment in which oil is normal~~

296 ~~earned, whether such amount is or is not required for the voyage or voyage in question. In the event of Charterers~~
~~taking bunker oil in a~~

297 ~~compartment which can normally be used for the carriage of either bunker oil or cargo but which is clean at the~~
~~time the bunker oil is shipped~~

298 ~~Charterers undertake to clean same at their own expenses and in their own time either before or on completion of~~
~~this Charter Party, if Owners is~~

299 ~~desire~~

300 71. Should the vessel be requisitioned by any Government or Government authority during the period of this
Charter, she shall be off-hire during

301 the period of such requisition and any hire or other compensation paid in respect of such requisition shall be for
Owners' account.

302 72. Cargo delivery without presentation of original Bills of lading: Owners and Master to deliver cargo as per
Charterers request at discharge

303 port(s) and Charterers agree to present a Letter of Indemnity as per Owners' Production and Indemnity Association
( P and I Club) standard text
and signed

304 by Charterers only, in the event the original endorsed Bills of Lading are not obtained by Charterers. The Letter of
Indemnity is to be sent by facsimile

305 (fax) machine to Owners' office and to be followed by the original Letter of Indemnity at a later date.

306 73. ~~Owners guarantee that neither this vessel nor any vessel nor any vessel under their ownership/management/~~
~~charter has called at~~...Owners guarantee that the vessel has not called at Cuba/North Korea....
period trading clause

307 74. ~~Any time vessel is off-hire to be added or not to be added to the Charter Period at Charterers option. Such~~
~~option is to be declared not later than end of the 12th month counting from the date of delivery.~~

308 75. See Rider Clause (Line 308-336 ) ~~Charterers to be allowed to paint their own Funnel mark on the vessel's~~
~~funnel during the period of the Charter The cost of painting and~~

309 ~~repainting to be borne by Charterers and to be done in their time, Charterers also have the privilege of flying their~~
~~owns House Flag~~

310 ~~76 Charterers have the option of laying up the vessel instead of working her in which case the hire provided for~~
~~under this Charter shall be~~

311 ~~reduced by the amount be which Owners are capable of reducing their expenditure under this Charter.~~

312 ~~77. Owners to drydock the vessel as may be necessary in order to maintain her normal speed but at least once in~~
~~every twelve months when at a~~

313 ~~mutually convenient port where drydocked available, the first period count from the date of the last drydocking,~~
~~which was~~

314 ~~All expenses and time incurred thereby to be for Owners' account.~~

315 ~~78. Owners warrant that the vessel is eligible for bunkers in the U.S.A. Its Territories and Possessions.~~

316 ~~79. Owners warrant that during the currency of the Charter Party they will comply fully with United States Federal~~
~~and State water pollution~~

317 ~~Statutes, Rules and Regulations. Owners further warrant that the vessel will carry on board valid Certificate of~~
~~Financial Responsibility as~~
~~required~~

318 ~~by and Federal and State Statutes, Rues and Regulations and will meet all Financial Responsibility requirements~~
~~of those Federal and State~~
~~Statutes,~~

319 ~~Rules and Regulations.~~

320 ~~80. If the vessel sells at any U.S.A. port for the purpose of loading and/or discharging cargo and/or embarking~~
~~and/or disembarking~~
~~passengers,~~

321 ~~vessel's cargo gear and all other equipment shall comply with the regulation established by U.S. Public Law No.~~
~~86/742 Part 9 (Safety and~~
~~Health~~

322 ~~Regulations for Longshoring) and amendments thereto and/or related Requirements and Recommendations. If~~
~~Longshoremen are not permitted~~
~~to work~~

323 ~~due to failure of Owners and/or Master and/or Owners' Agents to comply with the aforementioned Regulations,~~
~~any delay and expenses~~
~~resulting~~

324 ~~therefrom shall be for Owners' account.~~
~~Australian trading clauses~~

325 ~~81. Owners guarantee that the vessel complies with all Australian Navigation (Loading and Unloading Safety~~
~~Measures) Regulations 1961 and~~

326 ~~amendments thereto, and/or related Requirements and Recommendations and that all cargo fulfills Australian~~
~~cargo gear requirements including~~

327 ~~approved splices in all running gear.~~

328 ~~82. Vessel to be equipped with Waterside Workers' Federation approved held ladders~~

329 ~~83. Vessel to be equipped with Pilot Ladders by Australian pilots.~~

330 ~~84. In the event the vessel in ordered to be repaired by a union in Australia Owners to immediately arrange~~
~~repairs there in which case time~~

331 ~~lost and extra cost incurred including repair fee to be for Owners' account.~~
~~Saint (St.) Lawrence River and Great Lakes prior to entry into these waters.~~

332 ~~85. Vessel is fully equipped with the necessary gear and equipment required for transiting the St. Lawrence~~
~~River, St. Lawrence Seaway,~~

333 ~~the Welland Canal and the Great Lakes prior to entry into these waters.~~

334 ~~85. Vessel is equipped with a Gyro Compass Radio Direction Finder, Two Raders and both Medium and Very High~~
~~Frequency (V.H.F) Radio~~
~~Telephone~~

335 ~~(installed as required by the St. Lawrence Waterway Marine Traffic Regulations as well as by the St. Lawrence~~
~~Seaway Authorities) all in~~
~~good working~~

336 ~~order.~~

337 ~~87. Owners guarantee that the vessel's deadweight on a draft of 26 feet fresh water will not be less than ... ...~~
~~long tons (LT).~~

338 88. New Jason Clause, New Both-to-Blame Collision Clause and Conwartime 1993 War Clause (as attached)
~~Chamber of Shipping War Risks~~
~~Clause 1 and 2~~ as set out below are deemed to

339 form part of this Charter Party and are to be incorporated in all Bills of Lading issued under this Charter Party.

*NEW JASON CLAUSE*

In the event of accident, danger, damage or disaster before or after the commencement of the voyage, resulting from any cause whatsoever, whether due to negligence or not, for which, or for the consequence of which, the Carriers is not responsible, by statute, contract or otherwise, the goods, shippers, Consignees or Owners of the goods shall contribute with the Carrier in general average to the payment of any sacrifices, losses or expenses of a general average nature that may be made or incurred and shall pay salvage and special charges incurred in respect of the goods.

If a salving ship is owned or operated by the Carrier, salvage shall be paid for as fully as if the said salving ship or ships belonged to strangers. Such deposit as the Carrier or his agents may deem sufficient to cover the estimated contribution of the goods and any salvage and special charges thereon shall, if required, be made by the goods, Shippers, Consignees or Owners of the goods to the Carrier before delivery.

## New Both-to-Blame Collision Clause

If the ship comes into collision with another ship as a result of the negligence of the other ship and any act, neglect or default of the master, mariner, pilot or the servants of the Carrier in the navigation or in the management of this ship, the Owners of the goods carried hereunder will indemnify the Carrier against all loss or liability to the other or non-carrying ship or her owners in so far as such loss or liability represents loss of, or damage to, or any claim whatsoever of the Owners of said goods, paid or payable by the other or non-carrying ship or her owners to the owners of said goods and set off, recouped or recovered by the other or non-carrying ship or her owners as part of their claim against the carrying ship or carrier."

The foregoing provisions shall also apply where the Owners, Operators or those in charge of any ship or ships or objects other than, or in addition to, the colliding ships or objects are at fault in respect to a collision or contact.

## ~~Chamber of Shipping War Risks Clauses 1 and 2~~

~~1.    No Bills of Lading to be signed for any blockaded port and if the port of discharge be declared blockaded after bills of lading have been signed, or if the port to which the ship has ordered to discharge either on signing Bills of Lading or thereafter be one to which the ship is or shall be prohibited from going by  the Government of the nation under whose flag the ship sails or by any other Government, the owner shall discharge the cargo at any other port covered by this Charter Party as ordered by the Charterers (provided such other port is not a blockaded or prohibited port as above mentioned) and shall be entitled to freight as if the ship had discharged at the port or ports of discharge to which she was originally ordered.~~

~~2.    The ship shall have the liberty to comply with any order or directions as to departure, arrival, routes, ports of call, stoppages, destination, delivery or otherwise howsoever given by the Government of the nation under whose flag the vessel sails or any department thereof of any person acting or purporting to act with the Authority of such Government or of any department thereof, or by any committee or person having, under the terms of the War Risk Insurance on the ship, the Right to give such orders or directions and if by reason of and in compliance with any such orders or directions anything is done or is not done, the same shall not be deemed a deviation, and delivery in accordance with such orders or directions shall be a fulfillment of the contract voyage and the freight shall be payable accordingly. C.S.U.K., London 26th September 1935.~~

340   89.  USA / Canadian / Australian / General Clause Paramount as applicable, to be incorporated in all Bills of Lading to be issued under this Charter
341   Party and to form part of this Charter Party

### U.S.A Clause paramount

This Bill of Lading shall have effect subject to the provisions of Carriage of Goods by Sea Act of the United States, approved April 16, 1936, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any terms of this Bill of Lading be repugnant to said Act to any extent, such term shall be void to that extent, but no further.

### Canadian clause paramount

This Bill of Lading, so far as it relates to the carriage of goods by water, shall have effect, subject to the provisions of Carriage of Goods by water Act 1970, Revised Statutes of Canada, Chapter C 15 enacted by the Parliament of the Dominion of Canada, or any statutory re-enactment thereof, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act.

### Australian clause paramount

This Bill of Lading shall have effect subject to the provisions of the Australian Sea Carriage of Goods Act, 1924, which shall be deemed to be incorporated herein, and nothing herein contained shall be deemed a surrender by the carrier of any of its rights or immunities or an increase of any of its responsibilities or liabilities under said Act. If any

terms of this Bill of Lading be repugnant to said Act to any extent, such terms shall be void to that extent, but no further.

<u>General clause paramount</u>

The Hague Rules contained in the International Convention for the Unification of certain rules relating to Bills of Lading, dated Brussels the 25th August 1924 as enacted in the country of shipment shall apply to this contract. When no such enactment is in force in the country of shipment, the corresponding legislation of the country of designation shall apply, but in respect of shipments to which no such enactments are compulsorily applicable, the terms of said Convention shall apply.

Trades where Hague-Visby Rules apply

In trades where the International Brussels Convention 1924 as amended by the Protocol signed at Brussels on February 23rd 1968—the Hague-Visby Rules—apply compulsorily, the provisions of the respective legislation shall be considered incorporated in this Bill of Lading. The Carrier takes all reservations possible under such applicable legislation, relating to the period before loading and after discharging and while the goods are in the charge of another Carrier, and to deck cargo and live animals.

Line 31 and Lines 308-336, Clause 14, 17, 43, 55, 59, Clause Nos 90 through 123 inclusive as attached hereto are part of this Charter Party as though fully incorporated herein.

OWNERS                                                    CHARTERERS

*For and on behalf of*                          *For and on behalf of*

...................................                    ...................................
*Authorized Signature*                          *Authorized Signature*

This Charter Party is a computer generated copy of the NYPE (Revised 3rd October, 1946) form printed under licence from the Association of ship Brokers & Agents (U.S.A), Inc., using software which is the copyright of Strategic Software Limited.

It is a precise copy of the original document which can be modified, amended or added to only by the striking out of original characters, or the insertion of new characters, such characters being clearly highlighted by underlining or use of colour or use of a larger font an marked as having Been made by the licensee or end user as appropriate and not by the author.

RIDER CLAUSES TO M.V. "OCEAN VICTORY" / SINOCHART CHARTER PARTY
DATED 2ND AUGUST, 2006

**Line 31  Trading Exclusions:**

Vessel to be employed in lawful trades for the carriage of lawful merchandises only between good safe berths, ports or areas where Vessel can safely lie always afloat within IWL, specially excluding:

Albania, Algeria, Angola, Bangladesh, Bahrain, Belize, CIS Pacific ports, Cabinda, Cambodia, Democratic Republic of Congo, Costa Rica, Cuba, Cyprus, Turkish occupied Cyprus, Denmark, Djibouti, Ecuador, Egypt, El Salvador, Eritrea, Ethiopia, Finland, Georgia (incl Abkhazia), Ghana, Guatemala, Guyana, Haiti, Honduras, Iran, Iraq, Israel, Ivory Coast, Jordan, North Korea, Kuwait. Lebanon, Liberia, Libya, Madagascar, Namibia, Nicaragua, Nigeria, Norway, Oman, Pakistan, Qatar, Saudi Arabia, Sierra Leone, Somalia, Sri Lanka, Sudan, Sweden, Syria, UAE, U.S.A., Vietnam, North and South Yemen, former Yugoslavia except Croatia/Slovenia, Zimbabwe, Alaska, River Amazon, River Orinoco, River St. Lawrence out of season (permitted in season only), Great Lakes, Sea of Azov, Listed Areas under JWC Hull War, Strikes, Terrorism and Related Perils dated 3rd March 2006 and any subsequent amendments, and any United Nation embargo countries/ports.

In the event that the voyage has already commenced but prior to arrival at first load port and subsequently any of the ports intended to call in the voyage is declared by the Joint War Committee to be added to the Listed Areas under JWC Hull War, Strikes, Terrorism and Related Perils, Charterers are required to alter such port to another port not under the Listed Areas. However, if part or full cargo has already been loaded on board and subsequently any of the ports intended to call is declared by the Joint War Committee to be added to the Listed Areas under JWC Hull War, Strikes, Terrorism and Related Perils, Charterers are fully responsible to pay all additional premium upon demand by Vessel's underwriters plus any extra crew bonus.

Any ice affected port(s) and/or place(s)

Charterers are not allowed to send Vessel for whatever purposes directly from mainland China to Taiwan or vice versa, unless calling an intermediate port neither in mainland China nor in Taiwan.

**Lines 308–336**

The Owners warrant that throughout the currency of this Charter Party, the vessel shall be in possession of any necessary valid certificates enabling the vessel to perform the Charter Party and to comply with all applicable requirements, regulations and recommendations, including but not limited to :

- Tonnage and Measurement Certificates
- Classification and Trading Certificates
- Certificates issued pursuant to the Civil Liability Convention 1969 ( C L C )
- Certificate issued in accordance with 33 CFR 138, to meet liability under section 1002 of the U.S. Oil pollution Act of 1990 and under Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act (US CoFR) to trade U.S. waters or similar certificate to the waters of any other country relevant under this Charter Party.

RIDER CLAUSES TO M.V. "OCEAN VICTORY" / SINOCHART CHARTER PARTY
DATED 2ND AUGUST, 2006

- ISM Certificates:
- Certificates pertaining to the crew
- Suez Canal Certificate

Any time lost or other consequence of any failure to comply with this warranty shall be for Owners' account.

## Clause 14

If at any stage it is becoming evident that the vessel will miss the cancelling date, Owners will advise in writing by telex or by fax Charterers as soon as known and Charterers to advise Owners within two working days from the date of receiving Owners notice, whether Charterers will exercise their option to cancel this Charter Party. In absence of Charterers news, the seventh day from the date of the new readiness advised by the Owners will become the new cancelling date.

## Clause 17 - Deleted (See Clause 114)

## Clause 43

Permitted cargoes are:
Harmless iron ore/coal in bulk always excluding DRI/DRIP/HBI/Sponge Iron Ore/Indian Coal. Cargo to be loaded, trimmed, transported and discharged in accordance with current IMO/local regulations/recommendations.

The vessel is to load and sail with a full cargo evenly spread in all holds. Charterers' option to request Owners to permit any other cargoes and such permission not to be unreasonably withheld.

Cargo shall never be injurious to vessel and/or crew and/or stevedores. Cargoes are always to be loaded, stowed, carried, and discharged in accordance with IMO and latest/local regulations / recommendations.

## Clause 55

Any damage caused by stevedore during currency of this Charter Party to be reported by Master to Charterers or their agents in writing within 24 hours of occurrence or as soon as possible thereafter, otherwise Charterers shall not be responsible for such damage.

Upon each occurrence of damage, subject that such is practical, a joint survey to be held in Charterers time and for their account in case Charterers are responsible for such damage, otherwise in Owners time and their account. The Master to use his best efforts to obtain written

RIDER CLAUSES TO M.V. "OCEAN VICTORY" / SINOCHART CHARTER PARTY
DATED 2ND AUGUST, 2006

acknowledgement by responsible parties causing damage unless damage be made good in the meantime by stevedores. The Charterers have the right to perform any repairs of stevedore damage at any moment prior to or before the completion of the voyage, but must repair stevedore damage affecting the vessel's seaworthiness and class before the vessel sails from the port where such damage was caused. All damages affecting vessel's class, seaworthiness or trading ability to be repaired by Charterers prior to redelivery.

Clause 59

Should war occur between two or more of the listed nations, that materially restricts the trading of the vessel under this charter and provided no cargo on board, then either the Charterers or Owners shall have the liberty to cancel this Charter Party.
The listed nations being

U.S.A., RUSSIA, CHINA, GREAT BRITAIN, FRANCE, JAPAN and GERMANY.

Any charter hire paid in advance and not earned, together with cost of fuel oil, galley fuel on board to be refunded to the Charterers on demand, with the least possible delay.
This Clause only to have effect after Charterers have taken delivery of the vessel.

Clause 90

Bunker on delivery to be about 1,800 MTS for IFO and about 45 MTS for MDO
Bunker on redelivery to be same quantities as on delivery
Bunker prices US$360 per MT for IFO and US$680 per MT for MDO at both ends
Bunker value to be paid together with the first hire.

Clause 91

See clause 43

Clause 92

Deleted

Clause 93

RIDER CLAUSES TO M.V. "OCEAN VICTORY" / SINOCHART CHARTER PARTY
DATED 2ND AUGUST, 2006

Any delay, expenses and/or fines incurred on account of smuggling to be for Charterers' account if caused by Charterers and/or persons appointed by Charterers and to be for Owners' account if caused by Owners, Officers and/or crew and/or persons appointed by Owners.

Clause 94

Vessel to be left in seaworthy trim to Master's satisfaction for shifting between berths/ports

Clause 95

If Owners like to change vessel's flag during this Charter Party, Owners and Charterers will discuss this in good faith.

Clause 96

Owners P and I Club : West of England

Clause 97

Charterers to pay Owners lumpsum US$ 1,500 per every 30 (thirty) days or pro rata for Communications /entertainment/victualling expenses. If actual costs exceed US$1,200 per every 30 days or pro rata, then same to be settled basis actual costs with supporting vouchers.

Clause 98

In lieu of hold cleaning US$8,000 Lumpsum

Clause 99

While on this charter, Charterers agree that Owners shall be able to use Charterers' agents for usual Owners' matters, such as crew's medical treatment, shore pass, dispatching and/or delivery mail and/or telegrams, ordering small repairs and/or purchasing ship supplies, provided said agents are willing and able to do so and with Owners paying the actual costs for such matters without paying any additional agency fee.

Clause 100

RIDER CLAUSES TO M.V. "OCEAN VICTORY" / SINOCHART CHARTER PARTY
DATED 2ND AUGUST, 2006

Charterers have the option to replenish bunkers prior to delivery without interference to Owners operation. Owners have the option to replenish bunkers prior to redelivery without interference to Charterers' operations.

## Clause 101

Delivery/redelivery to be based on local time, but hire calculation to be based on GMT

## Clause 102

Deleted

## Clause 103

If during the currency of this Charter Party new legislation is introduced by any country or state according to which Owners have to provide or procure certificate of financial responsibility then Owners, as soon as they become aware of such legislation shall inform the Charterers. If Owners are by virtue of above unable to comply with such legislation and if Charterers trade will thereby be affected, then Charterers/Owners shall have the option to re-negotiate the present Charter Party terms in relation to the Certificate of Financial Responsibility in order for agreement and/or solution

## Clause 104

Fresh water consumed under this charter by stevedores and/or for the purpose of hold cleaning and/or for Charterers business in excess of vessel's fresh water generating capacity shall be for Charterers' account.

## Clause 105

Watchmen shall be for Owners' account unless as compulsorily required by port regulations or by Charterers and /or their agents for cargo.

## Clause 106 Sea Waybill Clause

Charterers and/or their authorized Agents may issue and sign non-negotiable Sea waybills for cargo destined to Japan, provided such Sea waybills incorporate and are subject to the Hague/Hague Visby Rules and in strict conformity with Mate's Receipt and in any event without prejudice to this charter party. Charterers hereby guarantee to fully indemnify Owners

RIDER CLAUSES TO M.V. "OCEAN VICTORY" / SINOCHART CHARTER PARTY
DATED 2ND AUGUST, 2006

and to keep Owners harmless from any claim and/or any consequences howsoever/whatsoever arisen from Charterers such issuance/releasing of such Seaway Bill.

Subject always to aforesaid terms and conditions, cargo may be released at the discharge port without presentation of the Sea Waybill and/or Charterers LOI to the party named in the Sea Waybill at Charterers sole risk/responsibility, in consideration of which Charterers undertake to fully indemnify Owners and to keep Owners harmless from any claim and/or any consequences howsoever/whatsoever arisen therefrom.

## Clause 107   Intermediate Hold Clean Clause

Intermediate hold cleaning USD600 per hold.
During charter period, all intermediate hold cleaning are at Charterers' time/risk/expenses and responsibility and in any case, Owners are not responsible for passing hold cleanliness inspection. However if requested by Charterers and agreed by master, vessel's crew shall, upon completion of each cargo (save the last cargo prior redelivery), render customary assistance in cleaning all cargo compartment in preparation for the next cargo, provided it is not prevented by any regulation or agreement whatsoever. Such cleaning work shall be performed while vessel is enroute to next loading port, provided the work can be safely done and that duration of voyage is sufficient. All fresh water consumed in washing down of holds/decks are to be for Charterers' account and Charterers are to pay to Owners according to the supply price or at Charterers' proposal to arrange the consumed quantity at their expenses Master considers necessary and convenient.

## Clause 108   Hamburg Rules Clause

Neither the Charterers nor their agents shall permit the issuance of any Bill of Lading, Waybill or other document evidencing a contract of carriage (whether or not signed on behalf of Owner or on the Charterers' behalf or on behalf of any sub-Charterers) incorporating, where not compulsorily applicable, the Hamburg Rules or any legislation giving effect to the Hamburg Rules or any other legislation imposing liabilities in excess of Hague or Hague-Visby Rules. Charterers shall indemnify the Owners against any liability, loss or damage which may result from any breach of the forgoing provisions or this clause.

## Clause 109   BIMCO Double Banking Clause

(a) The Charterers shall have the right, where and when it is customary and safe for vessels of similar size and type to do so, to order the vessel to go, lie or remain alongside another vessel or vessels of any size or description whatsoever or to order such vessels to come and remain alongside at such safe dock, wharf, anchorage or other place for transshipment,

RIDER CLAUSES TO M.V. "OCEAN VICTORY" / SINOCHART CHARTER PARTY
DATED 2ND AUGUST, 2006

loading or discharging of cargo and/or bunkering.

(b) The Charterers shall pay for and provide such assistance and equipment as may be required to enable any of the operations mentioned in this clause safely to be completed and shall give the Owners such advance notice as they reasonably can of the details of any such operations.

(c) Without prejudice to the generality of the Charterers' rights under (a) and (b), it is expressly agreed that the master shall have the right to refuse to allow the vessel to perform as provided in (a) and (b) if in his reasonable opinion it is not safe so to do.

(d) The Owners shall be entitled to insure any deductible under the vessel's hull policy and the Charterers shall reimburse the Owners any additional premium(s) required by the vessel's underwriters and/or cost of insuring any deductible under the vessel's hull policy.

(e) The Charterers shall further indemnify the Owners for any costs, damage and liabilities resulting from such operation. The vessel shall remain on hire for any time lost including periods for repairs as a result of such operation.

Clause 110  Excessive Days in Port

The Charterers will waive their claim on the vessel's performance/bunker consumed affecting by fouling of the vessel's bottoms due to the prolonged stay over 20 days in one port/anchorage/place for Charterers business. Charterers are also fully responsible for arranging shore gang to carry out under-water cleaning/scraping at their time and expenses when the vessel is at laden condition.

Clause 111

STANDARD FORM LETTER OF INDEMNITY TO BE GIVEN IN RETURN FOR DELIVERING CARGO WITHOUT PRODUCTION OF THE ORIGINAL BILL OF LADING

To:  Ocean Line Holdings Limited, Hong Kong          [inset date]
     The Disponent Owners of M.V.Ocean Victory

Dear Sirs:

Ship:    M.V. Ocean Victory

RIDER CLAUSES TO M.V. "OCEAN VICTORY" / SINOCHART CHARTER PARTY
DATED 2ND AUGUST, 2006

Voyage:   [insert load and discharge ports as stated in the bill of lading]
Cargo:    [insert description of cargo]
Bill of Lading: [insert identification numbers, date and place of issue]

The above cargo was shipped on the above ship by [insert name of shipper] and consigned to [insert name of consignee or party to whose order the bill of loading is made out, as appropriate] for delivery at the port of [insert name of discharge port stated in the bill of lading] but the bill of lading has not arrived and we, [insert name of party requesting delivery] , hereby request you to deliver the said cargo to [insert name of party to whom delivery is to be made] at [insert place where delivery is to be made] without production of the original bill of lading.

In consideration of your complying with our above request, we hereby agree as follows:

1. To indemnify you, your servants and agents and to hold all of you harmless in respect of any liability, loss, damage or expense of whatsoever nature which you may sustain by reason of delivering the cargo in accordance with our request.

2. In the event of any proceedings being commenced against you or any of your servants or agents in connection with delivery of the cargo as aforesaid, to provide you or them on demand with sufficient funds to defend the same.

3. If, in connection with the delivery of the cargo as aforesaid, the ship, or any other ship or property in the same or associated ownership, management or control, should be arrested or detained or should the arrest or detention thereof be threatened, or should there be any interference in the use or trading of the vessel (whether by virtue of a caveat being entered on the ship's registry or otherwise howsoever), to provide on demand such bail or other security as may be required to prevent such arrest or detention or to secure the release of such ship or property or to remove such interference and to indemnify you in respect of any liability, loss, damage or expense caused by such arrest or detention or threatened arrest or detention or such interference whether or not such arrest or detention or threatened arrest or detention or such interference may be justified.

4. If the place at which we have asked you to make delivery is a bulk liquid or gas terminal or facility, or another ship, lighter or barge, then delivery to such terminal, facility, ship, lighter or barge shall be deemed to be delivery to the party to whom we have requested you to make such delivery.

5. As soon as all original bills of lading for the above cargo shall have come into our possession, to deliver the same to you, or otherwise to cause all original bills of lading to be delivered to you, whereupon our liability hereunder shall cease.

6. The liability of each and every person under this indemnity shall be joint and several and shall not be conditional upon your proceeding first against any person, whether or not such person is party to or liable under this indemnity.

7. This indemnity shall be governed by and construed in accordance with English law and each and every person liable under this indemnity shall at your request submit to the jurisdiction of the High Court of Justice of England.

Yours Faithfully

RIDER CLAUSES TO M.V. "OCEAN VICTORY" / SINOCHART CHARTER PARTY
DATED 2ND AUGUST, 2006

For and on behalf of
[insert name of requestor]
The Requestor

Signature
--------------------------
Name & Title

Clause 112

Charterers are to have the privilege of using bulldozers in the vessel's holds provided their weight does not exceed vessel's tanktop strength. Charterers to be responsible for stevedore damages resulting from damage to vessel caused by the use of bulldozers in the vessel's holds. Charterers to pay for all costs resulting from damage to vessel caused by the use of bulldozers in the vessel's holds.

Clause 113

No through Bills of Lading to be issued.

Clause 114

All Claims of US$ 50,000 or less (excluding costs and interest) to be settle in accordance with the L.M.A.A. Small Claims Procedure in London.

Clause 115  Vessel's Description

MV OCEAN VICTORY
FLAG HONG KONG, BUILT AUG 2005 SHANGHAI WAIGAOQIAO SHIPYARD
SINGLE DECK GEARLESS BULK CARRIER, CLASS BV
DWT ABT 174,148.2 MT ON ABT 18.12 M SSW
GT/NT 88,853/58,005
LOA/BEAM 289M/45M
9 HOLDS/9 HATCHES
GRAIN CAPACITY 193,247.27 CBM INCLUDING HATCHWAYS
TYPE OF HATCHCOVERS: 2-PANELS SIDE ROLLING
HATCH SIZE: NO.1 / 15.47 X 16.50M
          NO.2-8/ 15.47 X 20.00M
          NO.9 / 15.47 X 16.50M

RIDER CLAUSES TO M.V. "OCEAN VICTORY" / SINOCHART CHARTER PARTY
DATED 2ND AUGUST, 2006

AHL FITTED
NATURAL CARGO HOLD VENTILATION
CO2 NOT FITTED
NO ALTERNATE HOLD LOADING

SPEED/CONS: ABOUT 15 KTS BALLAST/14 KTS LADEN ON ABOUT 56 MTS IFO(380CST)
+ ABOUT 0.2 MTS MDO BASIS GOOD WEATHER UPTO AND INCLUDING BEAUFORT
SCALE WIND FORCE 4 AND DOUGLAS SEA STATE 3, CLEAN BOTTOM, SMOOTH SEA
WITH NO SWELL AND NO ADVERSE CURRENTS.
ADDITIONAL ABOUT 6 MTS IFO FOR EACH BALLAST EXCHANGE OPERATION
IN PORT: IDLE ABOUT 3MTS IFO + 0.2MTS MDO PER DAY
          WORKING ABOUT 4.5MTS IFO + 0.2MTS MDO PER DAY
          BALLAST/DEBALLAST ABOUT 4.5MTS IFO + 0.2MTS MDO
BUNKER SPEC: IFO380CST – ISO8217: 2005: RMG35
              MDO        – ISO8217: 2005: DMC
VESSEL HAS LIBERTY TO USE MDO WHEN MANOEUVRING, IN/OUT OF PORTS,
NAVIGATING IN SHALLOW/RESTRICTED/FOGGY/BUSY WATERS, CANALS,
CHANNELS, RIVERS AND ANY STARTING AND STOPPING OF AUX ENG.

(ALL DETAILS ABOUT)

Clause 116 BIMCO U.S. Customs 24 Hours Rule Clause for Time Charter Parties

(a) If loading cargo destined for the US or passing through US ports in transit, the Charterers shall:

   (1) Provide all necessary information to the Owners and/or their agents to enable them to submit a timely and accurate cargo declaration directly to the US Customs; or

   (2) If permitted by US Customs Regulations (19 CFR 4.7) or any subsequent amendments thereto, submit a cargo declaration directly to the US Customs and provide the Owners with a copy thereof

In all circumstances, the cargo declaration must be submitted to the US Customs latest 24 hours in advance of loading.

(b) The Charterers assume liability for and shall indemnify, defend and hold harmless the Owners against any loss and/or damage whatsoever (including consequential loss and/or damage) and any expenses, fines, penalties, and all other claims of whatsoever nature, including but not limited to legal costs, arising from the Charterers' failure to comply with the provisions of sub-clause (a)

(c) If the Vessel is detained, attached, seized or arrested as a result of the Charterers' failure to comply with the provision of sub-clause (a), the Charterers shall provide a bond or other security to ensure the prompt release of the Vessel. Notwithstanding any other provision in this Charter Party to the contrary, the Vessel shall remain on hire.

RIDER CLAUSES TO M.V. "OCEAN VICTORY" / SINOCHART CHARTER PARTY
DATED 2ND AUGUST, 2006

Code Name : "CONWARTIME 1993"

(1) For the purpose of this Clause, the words:

(a) "Owners" shall include the shipowners, bareboat Charterers, disponent Owners, managers or other operators who are charged with the management of the Vessel, and the Master, and

(b) "War Risk" shall include any war (whether actual or threatened), act of war, civil war, hostilities, revolution, rebellion, civil commotion, warlike operations, the laying of mines (whether actual or reported), acts of piracy, acts of terrorists, acts of hostility or malicious damage, blockades (whether imposed against all vessels or imposed selectively against vessels of certain flags or ownership, or against certain cargoes or crew or otherwise howsoever), by any person, body, terrorist or political group, or the Government of any state whatsoever, which, in the reasonable judgement of the Master and/or the Owners, may be dangerous or are likely to be or to become dangerous to the Vessel, her cargo, crew or other persons on board the Vessel.

(2) The Vessel, unless the written consent of the Owners be first obtained, shall not be ordered to or required to continue to or through, any port, place, area or zone (whether of land or sea), or any waterway or canal, where it appears that the Vessel, her cargo, crew or other persons on board the Vessel, in the reasonable judgement of the Master and/or the Owners, may be, or are likely to be, exposed to War Risks.
Should the Vessel be within any such place as aforesaid, which only becomes dangerous, or is likely to be or to become dangerous, after her entry into it, she shall be at liberty to leave it.

(3) The Vessel shall not be required to load contraband cargo, or to pass through any blockade, whether such blockade be imposed on all vessels, or is imposed selectively in any way whatsoever against vessels of certain flags or ownership, or against certain cargoes or crews or otherwise howsoever, or to proceed to an area where she shall be subject, or is likely to be subject to a belligerent's right of search and/or confiscation.

(4)   (a)  The Owners may effect war risks insurance in respect of the Hull and Machinery of the Vessel and their other interests (including, but not limited to, loss of earnings and detention, the crew and their Protection and Indemnity Risks), and the premiums and/or calls therefor shall be for their account.

(b)  If the Underwriters of such insurance should require payment of premiums and/or calls because, pursuant to the Charterers' orders, the Vessel is within, or is due to enter and remain within, or pass through any area or areas which are specified by such Underwriters as being subject to additional premiums because of War Risks, then such premiums and/or calls shall be reimbursed by the Charterers to the Owners at the same time as the next payment of hire is due.

RIDER CLAUSES TO M.V. "OCEAN VICTORY" / SINOCHART CHARTER PARTY
DATED 2ND AUGUST, 2006

(5) If the Owners become liable under the terms of employment to pay to the crew any bonus or additional wages in respect of sailing into an area which is dangerous in the manner defined by the said terms, then such bonus or additional wages shall be reimbursed to the Owners by the Charterers at the same time as the next payment of hire is due.

(6) The Vessel shall have liberty :

   (a) to comply with all orders, directions or recommendations or advice as to departure, arrival, routes, sailing in convoy, ports of call, stoppages, destinations, discharge of cargo, delivery, or in any other way whatsoever, which are given by the Government of the Nation under whose flag the Vessel sails, or other Government to whose laws the Owners are subject, or any other Government, body or group whatsoever acting with the power to compel compliance with their orders or directions;

   (b) to comply with the orders, directions, recommendations of any war risks underwriters who have the authority to give the same under the terms of the war risks insurance;

   (c) to comply with the terms of any resolution of the Security Council of the United Nations, any directives of the European Community, the effective orders of any other Supranational body which has the right to issue and give the same, and with national laws aimed at enforcing the same to which the Owners are subject, and to obey the orders and directions of those who are charged with their enforcement;

   (d) to divert and discharge at any other port any cargo or part thereof which may render the Vessel liable to confiscation as a contraband carrier;

   (e) to divert and call at any other port to change the crew or any part thereof or other persons on board the Vessel when there is reason to believe that they may be subject to internment, imprisonment or other sanctions.

(7) If in accordance with their rights under the foregoing provisions of this Clause, the Owners shall refuse to proceed to the loading or discharging ports, or any one or more of them, they shall immediately inform the Charterers. No cargo shall be discharged at any alternative port without first giving the Charterers notice of the Owners' intention to do so and requesting them to nominate a safe port for discharge. Failing such nomination by the Charterers within 48 hours of the receipt of such notice and request, the Owners may discharge the cargo at any safe port of their own choice.

(8) If in compliance with any of the provisions of sub-clauses (2) to (7) of this Clause anything is done or not done, such shall not be deemed a deviation, but shall be considered as due fulfillment of this Charter Party.


Clause 117 - Hire

USD 58,500 daily including overtime payable every 15 days in advance.
1st hire to be paid together with bunkers value on delivery within 3 (three) banking days after delivery.

RIDER CLAUSES TO M.V. "OCEAN VICTORY" / SINOCHART CHARTER PARTY
DATED 2ND AUGUST, 2006

Owners' bank account as below:

To          : BNP Paribas, Hong Kong        (Swift BNPAHKHH)
Favouring : Ocean Line Holdings Limited
A/C No.   : 00001-200206-008-54 USD
Ref         : MV Ocean Victory / Sinochart CP DD 2/Aug/2006 – xxth hire

## Clause 118

US$ 1,000.00 lumpsum to be paid for cleaning/washing all deck/hatchcover/accommodation etc. for each voyage if no intermediate hold cleaning to be required by Charterers/sub-Charterers for loading next cargo.

## Clause 119

Arbitration in London and England Law to apply
General Average shall be adjusted/stated/settled according to YA Rules 1994 and/or any modification thereof.

## Clause 120 – drydocking clause

Charterers to bring vessel to one safe port Singapore/Japan range excluding Vietnam/Malaysia but including China/Korea/Taiwan/Philippines and place the vessel free of cargo with Owners for dry dock/special survey within three (3) months from Owners serving notice for drydocking. Owners to deliver vessel back to Charterers in same or equidistant position.

## Clause 121

BIMCO ISPS/ISM/AMS Clauses to be applied

## Clause 122

Vessel's basic war risk insurance premium to be for Owners account. Any additional war risk insurance premium and crew war risk bonus to be for Charterers account. If war/warlike zone have been declared by Vessel's underwriters and/or P+I club after cargo has already been loaded onboard, subsequently, the war risk clause of Vessel's underwriters and/or P+I club to apply, Charterers are fully responsible to pay all additional war risk premium upon demand of Vessel's underwriters and/or P+I club.

RIDER CLAUSES TO M.V. "OCEAN VICTORY" / SINOCHART CHARTER PARTY
DATED 2ND AUGUST, 2006

---

Clause 123 – Marpol Convention Annex VI to apply.

Charterers are kindly reminded that Annex VI of Marpol Convention has entered into force on the 19th May 2005. Charterers are therefore to ensure that all bunkers, bunker suppliers, bunker delivery procedures (compliant bunker delivery notes and sampling location at ship's manifold) fully comply with the requirements of Marpol Annex VI.

**** End ****