UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
OCEAN LINE HOLDINGS LIMITED,  :
 :
                        Plaintiff,  :      07 Civ. 8123 (DC)
 :
   - against -  :
 :
CHINA NATIONAL CHARTERING CORPORATION,  :
 :
                      Defendant.  :
 :
------------------------------------------------------------------X

# MEMORANDUM OF LAW
# IN SUPPORT OF MOTION TO VACATE MARITIME ATTACHMENT
# OR IN THE ALTERNATIVE FOR COUNTERSECURITY

*Of counsel:*

Patrick F. Lennon, Esq.
Lennon, Murphy & Lennon, LLC
Attorneys for Defendant
CHINA NATIONAL CHARTERING CORPORATION
The GrayBar Building
420 Lexington Avenue, Suite 300
New York, New York 10170
Telephone:    (212) 490-6050
Facsimile:    (212) 490-6070

# TABLE OF CONTENTS

| Topic | Page |
|---|---|
| Preliminary Statement | 1 |
| Facts | 1 |
| Legal Argument | 3 |
|     Point I   THE PLAINTIFF OCEAN LINE HAS THE BURDEN TO SHOW CAUSE WHY THE ATTACHMENT SHOULD NOT BE VACATED | 3 |
|     Point II   UNDER THE FSIA, SINOCHART IS AN INSTRUMENTALITY OF THE PEOPLE'S REPUBLIC OF CHINA | 4 |
|     Point III   FSIA SECTION 1609 BARS PREJUDGMENT ATTACHMENT OF SINOCHART'S PROPERTY | 8 |
|     Point IV   IN THE ALTERNATIVE, SINOCHART IS ENTITLED TO COUNTERSECURITY PURSUANT TO SUPPLEMENTAL ADMIRALTY RULE E(7) | 11 |
| Conclusion | 14 |

## PRELIMINARY STATEMENT

This Memorandum of Law is submitted on behalf of the Defendant, China National Chartering Corp., also known as Sinochart (hereinafter "Sinochart"), in support of its motion pursuant to Supplemental Admiralty Rule E (4) (f) of the Federal Rules of Civil Procedure (hereinafter "Supplemental Admiralty Rules") to Vacate the Court's Ex Parte Order for Process of Maritime Attachment and Garnishment dated September 20, 2007 obtained by the Plaintiff, Ocean Lines Holdings Ltd. (hereinafter "Plaintiff" or "Ocean Lines"). In the alternative, in the event the Court denies the Motion to Vacate, Sinochart moves for an order directing Plaintiff to post countersecurity in the sum of **$9,640,457.89** pursuant to Supplemental Admiralty Rule E(7).

There is a statutory bar to the attachment of the property of Sinochart as it is "an agency or instrumentality of a foreign state" for purposes of the United States Foreign Sovereign Immunities Act, 28 U.S.C. § 1600 *et seq*. Accordingly, for the reasons set forth at length herein, the Ex Parte Order must be vacated and all of Sinochart's property released the garnishee banks. Alternatively, as Sinochart's counterclaim arises from the same transaction or occurrence, Plaintiff must be ordered to post countersecurity pursuant to Supplemental Admiralty Rule E(7), failing which the Ex Parte Order must be vacated.

## THE FACTS

The facts relevant to the underlying dispute between the parties are relevant only to Sinochart's alternative motion for countersecurity pursuant to Supplemental Admiralty Rule E(7). The facts are as follows:

On or about August 2, 2006, Plaintiff chartered the M/V Ocean Victory to Sinochart for a period of 5-7 months. *See Verified Answer and Counterclaim ¶ 4.* In or

1

about October 2006, while the vessel was at Kashima, Japan, she allegedly ran aground. *See Verified Complaint* ¶¶ 8-11. Thereafter, during salvage efforts, the vessel allegedly broke in two and sank. *Id.* ¶ 12. Plaintiff claims that the vessel grounding and subsequent loss was the result of Sinochart's alleged breach of the August 2, 2006 charter party. *Id.* ¶ 14. Sinochart disputes Plaintiff's claims which it will contest in arbitration proceedings between the parties in London, England.

Plaintiff has claimed damages against Sinochart in the sum of **$177,520,838**, inclusive of interest, costs and legal fees. To the date of this motion, Plaintiff has attached Sinochart's property in the hands of various garnishee banks in the sum of **$22,266,247.93**. *See accompanying Declaration of Patrick F. Lennon* ¶ 4. Upon information and belief, Plaintiff continues to serve the PMAG on a daily basis in its effort to attach Sinochart's property up to the full amount authorized by the Ex Parte Order, *i.e.* $177,520,838.00.

As set forth above, Sinochart disputes Plaintiff's claims. In addition, as is alleged in Sinochart's Answer and Counterclaim, Sinochart has sustained losses as a result of the vessel's grounding and sinking which it claims were a result of Plaintiff's breach of the August 2, 2006 charter party. Sinochart claims damages in the sum of **$9,640,457.89** inclusive of interest, costs and legal fees. *See Sinochart's Answer and Counterclaim* ¶ 16.

**LEGAL ARGUMENT**

**POINT I**

**THE PLAINTIFF OCEAN LINE HAS THE BURDEN
TO SHOW CAUSE WHY THE ATTACHMENT SHOULD NOT BE VACATED**

Supplemental Admiralty Rule E (4)(f) of the Federal Rules of Civil Procedure provides:

> Whenever property is arrested or attached, any person claiming an interest in it shall be entitled to a prompt hearing at which <u>the plaintiff shall be required to show why the arrest or attachment should not be vacated or other relief consistent with these rules</u>.

Fed. R. Civ. P., Supp. Adm. R. E (4)(f). It is clear from the text of Rule E (4)(f) that Plaintiff, Ocean Line, bears the burden of showing cause why the attachment in this case should not be vacated. *See e.g., Ullises Shipping Corp. v. FAL Shipping Co. Ltd.*, 415 F.Supp.2d 318, 323 (S.D.N.Y. 2006), *overruled on other grounds, Aqua Stoli Shipping Ltd. v. Gardiner Smith Pty Ltd.*, 460 F. 3d 434, 445 (2d Cir. 2006). Given the *ex parte* nature of the attachment procedure, which results in the restraint of property without any prior opportunity to be heard, both the courts and legal commentators have recognized that the burden placed on an attaching plaintiff at the Rule E hearing is considerable. *See e.g.*, 29 James W.N. Moore, MOORE'S FEDERAL PRACTICE, § 7.05.04 [5] (3rd Ed. 2005).

Indeed, the Court of Appeals for the Second Circuit affirmed that it is a plaintiff's burden to demonstrate that the requirements of Rule B have been met:

> A district court must vacate an attachment if the plaintiff fails to sustain its burden of showing that he has satisfied the requirements of Rules B and E. We also believe vacatur is appropriate in other limited circumstances. While, as we have noted, the exact scope of a district court's vacatur power is not before us, we believe that a district court may vacate the attachment if the defendant shows at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the

3

district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise.

*Aqua Stoli,* 460 F.3d at 445.

At a Rule E(4)(f) hearing, a defendant may attack "'the complaint, the arrest, the security demanded, or any other alleged deficiency in the proceedings.'" *Aqua Stoli*, 384 F. Supp. 2d at 728 (quoting Supp. R. Fed. R. Civ. P. advisory committee notes). To satisfy the requirements of Rule B, the plaintiff has the burden to show: (a) it has a *prima facie* admiralty claim; (b) the named defendant cannot be found within district; (c) the attached defendant's property was within the district; and (d) there is no statutory or maritime law bar to the attachment. *Aqua Stoli,* 460 F.3d at 445. Simply put, in order to carry its burden at a Rule E hearing, the plaintiff must demonstrate that all technical requirements of Supplemental Admiralty Rule B have been met (*Maersk, Inc. v. Neewra, Inc.*, 443 F. Supp. 2d 519, 527 (S.D.N.Y. 2006)) and there are no other grounds for vacatur. *Aqua Stoli,* 460 F.3d at 445.

## POINT II

### UNDER THE FSIA, SINOCHART IS AN INSTRUMENTALITY OF THE PEOPLE'S REPUBLIC OF CHINA

The Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611 ("FSIA"), governs actions against foreign states and agencies or instrumentalities of foreign states. *Republic of Argentina v. Weltover,* 504 U.S. 607, 610-11, 112 S. Ct. 2160, 119 L. Ed. 2d 394 (1992). Unless there has been an explicit waiver of immunity a foreign sovereign, or an agency or instrumentality of a foreign sovereign, is immune from any prejudgment attachment of its assets, even if used for commercial activity, in the United States. *See,* 28 U.S.C. § 1610(d); *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344

4

F.3d 255, 261 (2d Cir. 2003) and *S&S Mach. Co. v. Masinenexportimport*, 706 F.2d 411, 416 (2d Cir. 1983).

To claim immunity under the FSIA, a defendant must present a *prima facie* case that it is a foreign sovereign, or an agency or instrumentality of a foreign sovereign and, thereafter, the burden shifts to the plaintiff to demonstrate that an FSIA exception applies. *Cargill Int'l S.A. v. M/T Pavel Dybenko,* 991 F.2d 1012, 1016 (2d Cir. 1993).

Section 1603(b) of the FSIA defines an agency or instrumentality of a foreign state for the purposes of 28 U.S.C. § 1610(d) as:

> (b) An "agency or instrumentality of a foreign state" means any entity--
>   (1) which is a separate legal person, corporate or otherwise, and
>   (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>   (3) which is neither a citizen of a State of the United States as defined in section 1332(c) and (e) of this title 28 U.S.C.S. § 1332(c) and not created under the laws of any third country.

28 U.S.C. § 1603(b).

Under this statutory definition, foreign corporations incorporated in and at least fifty percent owned by a foreign state are regarded as agencies or instrumentalities of a foreign state. *See e.g., S&S Mach. Co. v. Masinenexportimport*, 706 F.2d 411, 415 (2d Cir. 1983) (finding a wholly state-owned export/import company established to carry out the foreign trade goals of the state to be an agency or instrumentality); *Arango v. Guzman Travel Advisors Corp.*, 621 F.2d 1371, 1374 (5th Cir. 1980) (noting a wholly foreign state-owned corporation's prerogative to remove action to federal court); *Carey v. Nat'l Oil Co.*, 592 F. 2d. 673, 676 n.1 (2d Cir. 1979) (finding a government owned oil company to be a foreign state); *Lopez del Valle v. Gobierno de la Capital*, 855 F. Supp. 34, 36 (D.P.R. 1994) (finding a corporation to be a "foreign state" since the Government

of Venezuelan owns a majority of its shares); *Alifieris v. Am. Airlines, Inc.*, 523 F. Supp. 1189, 1190-91 n.2 (E.D.N.Y. 1981) ("Congress clearly intended that commercial entities [i.e. Olympic Airways] ... which are owned by foreign states should be afforded the same protections as foreign governments under the Foreign Sovereign Immunities Act.").

The starting point for analyzing sovereign immunity issues involving instrumentalities of a foreign sovereign is the Supreme Court's decision in *Dole v. Patrickson*, 538 U.S. 468 (2003). In *Dole*, the Supreme Court made clear that "[m]ajority ownership by a foreign state, not control, is the benchmark of instrumentality status." *Id.* at 477. *Dole* involved two Israeli companies (the "Dead Sea companies") that asserted they were instrumentalities of a foreign state, *i.e.* Israel, for the purposes of the FSIA. The Supreme Court recognized that the FSIA's provisions can be invoked by a corporate entity that is an "instrumentality" of a foreign state as defined by the FSIA. *Id.* at 470. The issue presented in that case was whether a corporate subsidiary could claim instrumentality status where the foreign state did not own a majority of its shares, but did own a majority of the shares of the corporate parent one or two tiers above the subsidiary. *Id.* The Court found that the State of Israel did not have direct ownership of shares in either of the Dead Sea companies at any time pertinent to the suit and, accordingly, held that the Dead Sea Companies were not entitled to sovereign immunity. *Id.* at 473-474.

As is set forth in the accompanying Declarations of Song Dihuang, Sinochart's Chinese legal expert, and Xing Nai Qun, Manager of Sinochart's Legal Department, Sinochart is 100% owned by the People's Republic of China. *See Dihuang Decl.* ¶9; *Xing Decl.* ¶ 4. Sinochart was incorporated in 1955 by the People's Republic of China (the Chinese government). *Xing Decl.* ¶ 3, *Dihuang Decl.* ¶ 7, *Ex. 3*. As a matter of

Chinese law, Sinochart's "economic" nature is categorized as an "enterprise owned by the whole people, ('EOWP')". Mr. Dihuang explains in his Declaration that:

> Under Chinese law, an EOWP means an enterprise duly registered under the Law of PRC on Industrial Enterprises Owned by the Whole People . . . . Art 2 of the Law of PRC on EOWP provides that the property of the enterprise shall be owned by the whole people, and shall be operated and managed by the enterprise with the authorization of the state in line with the principle of the separation of ownership and managerial authority. The enterprise shall enjoy the rights to possess, utilize and dispose of, according to law, the property which the state has authorized it to operate and manage. It is therefore beyond any doubt that an EOWP means an enterprise owned by the People's Republic of China.

*Dihuang Decl.* ¶ 5, *Ex. 4*. The EOWP concept was analyzed and thoroughly discussed by the court in *Trans Chemical Ltd. v. China National Machinery Import and Export Corp.*, 978 F.Supp. 266 (S.D. Tx. 1997). In that case, the court held that because it was an EOWP, the defendant, China National Machinery Import and Export Corporation ("CNMC"), was an agency or instrumentality of the Chinese government whose assets were state-owned. Specifically, the court held:

> Based on the court's analysis of Chinese law and CNMC's documents the court concludes that Chinese industrial enterprises "owned by the whole people," including CNMC, are "state-owned," with proprietary rights exercised by the State Council on behalf of the state. Because CNMC is state-owned the court also concludes that CNMC is an agency or instrumentality of the People's Republic of China within the meaning of 28 U.S.C. § 1603(b)(2) (an "entity a majority of whose shares *or other ownership interest* is owned by a foreign state or political subdivision thereof" is an agency or instrumentality of a foreign state) (emphasis added).

*Trans Chemical*, 978 F.Supp at 290. The ownership of Sinochart, as established by the Declarations of Song Dihuang and Xing Nai Qun and exhibits annexed thereto, is identical to that of the defendant in *Trans Chemical, supra.*

7

Addressing the other elements relevant to the analysis under FSIA section 1603 is even more straightforward. It is clear that Sinochart is neither a citizen of a State of the United States . . . . nor created under the laws of a third country." 28 U.S.C. § 1603(b)(3). First, there is no question that Sinochart is not a citizen of a State of the United States. Second, Sinochart was established in China and was not created under the laws of any third country. *See Dihuang Decl. ¶ 4 ; Xing Decl. ¶ 5.*

All of the foregoing establishes that Sinochart is an instrumentality of the People's Republic of China. Accordingly, Sinochart is entitled to the protections and immunities of the FSIA. *See Carey v. Nat'l Oil Co.*, 592 F. 2d. 673, 676 n.1 (2d Cir. 1979) (finding a government owned oil company to be a foreign state – "National Oil Corporation ("NOC"), as well as Libya, is considered a 'foreign state' under 28 U.S.C. § 1603(a) and (b)(2), since NOC is a corporation 'a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof'").

### POINT III

### FSIA SECTION 1609 BARS PREJUDGMENT ATTACHMENT OF SINOCHART'S PROPERTY

The issue of whether Plaintiff's use of Supplemental Admiralty Rule B to attach Sinochart's assets was valid is governed by FSIA § 1609, which provides, "the property in the United States of a foreign state shall be immune from attachment arrest and execution, except as provided in sections 1610 and 1611 of this chapter." Sinochart is absolutely immune from any prejudgment attachment of its assets, even if used for commercial activity in the United States, pursuant to FSIA section 1610 (d). Section 1610(d) provides:

8

> (d) The property of a foreign state, as defined in section 1603(a) of this chapter [28 USCS § 1603(a)], used for a commercial activity in the United States, shall not be immune from attachment prior to the entry of judgment in any action brought in a court of the United States or of a State, or prior to the elapse of the period of time provided in subsection (c) of this section, if—
>
> > (1) the foreign state has explicitly waived its immunity from attachment prior to judgment, notwithstanding any withdrawal of the waiver the foreign state may purport to effect except in accordance with the terms of the waiver, *and*
> >
> > (2) the purpose of the attachment is to secure satisfaction of a judgment that has been or may ultimately be entered against the foreign state, and not to obtain jurisdiction.

28 U.S.C. § 1610(d).

Sinochart has not *explicitly* waived its right to immunity from prejudgment attachment, and its agreement to a charter party with Plaintiff that included an arbitration clause cannot be interpreted as such an *explicit* waiver. *See Enron Equipment Procurement Co. v. M/V Titan 2*, 82 F. Supp. 2d 602 (S.D. La. 1999), where the court held that an agreement to arbitrate is an *implicit* waiver that is insufficient to allow prejudgment attachment under section 1610(d). *Enron*, 82 F.Supp.2d at 608. The Second Circuit Court of Appeals adhered to this construction of section 1610(d) in *S & S Machinery Co. vs. Masinexportimport*, 706 F.2d 411 (2nd Cir. 1983), stating "[a] foreign state's immunity from attachment as an aid in the execution of judgment can be waived implicitly as well as explicitly, while the immunity from *prejudgment attachment* can be waived only by unmistakable and plain language." *Id.* at 416. *See also Kensington Int'l Ltd. v. Republic of Congo*, 461 F.3d 238, 243 (2d Cir. 2006); and *Banco de Seguros del Estado v. Mutual Marine Office, Inc.*, 344 F.3d 255, 261 (2d Cir. 2003). Here, Sinochart

9

made no "unmistakable" explicit waiver of its right to immunity from prejudgment attachment.

The Second Circuit Court of Appeals has held, moreover, that the courts must adhere diligently to prohibition against prejudgment attachment. In *Stephens v. National Distillers & Chem. Corp.*, 69 F.3d 1226 (2d Cir. 1995), the Court held:

> the FSIA forbids any "attachment[,] arrest or execution" of a foreign sovereign's property subject only to the exceptions set forth in §§ 1610-1611. And we are not at liberty to create other exceptions, not in the statute. We ought not, moreover, readily ignore our conclusion in *S & S Machinery* -- which postdated *Sperry* -- that the principle behind the prohibition against attachments should apply broadly. For, as we noted in that case, "such a measure could only . . . result[] in the disingenuous flouting of the FSIA ban on prejudgment attachment of assets." *S & S Machinery*, 706 F.2d at 418.

*Stephens*, 69 F.3d 1230.

As established by the accompanying Declarations of Song Dihuang and Xing Nai Qun, Sinochart has introduced sufficient evidence to demonstrate that it is a separate legal person, and it is neither a citizen of the United States nor created under the laws of a third country. *See*, 28 U.S.C. § 1603(b)(1) and (3), above. In addition, it has carried its burden under the FSIA of proving, on a *prima facie* basis, that it is an entity "a majority of whose shares ... is owned by a foreign state or a political subdivision thereof" (28 U.S.C. § 1603(b)(2)), because it is 100% owned by the People's Republic of China itself and thus, for FSIA purposes, is itself considered a foreign state.

Consequently, the Process of Maritime Attachment and Garnishment issued in this case on September 20, 2007 must be vacated because Sinochart is entitled to the protections and immunities of the FSIA, in particular the immunity from prejudgment

attachment of its property. *See* 28 U.S.C. § 1609. As such, the Process of Maritime Attachment as to Sinochart must be vacated.

## POINT IV

### IN THE ALTERNATIVE, SINOCHART IS ENTITLED TO COUNTERSECURITY PURSUANT TO SUPPLEMENTAL ADMIRALTY RULE E(7)

In the event the Court denies Sinochart's Motion to Vacate the maritime attachment of its property in this case, it is in the alternative then entitled to countersecurity in an acceptable form in the sum of **$9,640,457.89** from Plaintiff on its counterclaim, pursuant to Supplemental Admiralty Rule E(7).

Supplemental Rule E(7)(a) of the Supplemental Rules for Certain Admiralty and Maritime Claims states:

> When a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action, a plaintiff for whose benefit the security has been given must give security for damages demanded in the counterclaim unless the court, for cause shown, directs otherwise. Proceedings on the original claim must be stayed until this security is given, unless the court direct otherwise.

Fed. R. Civ. P., Supp. Adm. R. E(7)(a).

"Although this Rule initially appears to make the posting of countersecurity mandatory whenever its conditions are satisfied, the final clause of the quoted language makes clear that the trial court possesses broad discretion in deciding whether to order countersecurity under such conditions." *Result Shipping Co. v. Ferruzzi Trading USA, Inc.*, 56 F.3d 394, 399 (2d Cir. 1995), citing *Afram Lines Int'l, Inc. v. M/V Capetan Yiannis*, 905 F.2d 347, 349 (11th Cir. 1990). The Second Circuit in *Result Shipping* stated that, in exercising this discretion, a court should be guided by two principles.

11

First, a court should note that the purpose of the Rule is "to place the parties on an equality as regards security." *Id.* At 399-400 *citing Titan Navigation*, 808 F. 2d at 403 (*quoting Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.*, 263 U.S. 629,638-39, 68 L. Ed. 480, 44 S. Ct. 220 (1924)). This factor mandates the ordering of countersecurity when a defendant whose property has been attached asserts non-frivolous counterclaims growing out of the same transaction, and specially so when the counterclaimant could have proceeded *in rem or quasi in rem* in an independent suit. *Id.*

The second consideration cited by the court of Appeals in *Result Shipping* was that Rule E(7)(a) is not intended to impose burdensome costs on a plaintiff that might prevent it from bringing suite *Id. citing Titan Navigation*, 808 F.2d at 403-05; *and Washington-Southern*, 263 U.S. at 632-36 (construing predecessor to Rule E(7) under old Admiralty Rules). For example, courts have recognized that seaman should not be forced to post countersecurity. *Titan Navigation*, 808 F.2d at 403.

Consistent with the guiding principles of *Result Shipping*, the Courts of this District have routinely recognized that Rule E (7) entitles a defendant to countersecurity. *See e.g. Clipper Shipping Lines, Ltd. v. Global Transporte Oceanico S.A.*, 2007 U.S. Dist. LEXIS 18827*4 (S.D.N.Y. 2007); *accord, Seatrade Croup N. V. v. 6,785.5 Metric Tons of Cement*, 2006 U.S. Dist. LEXIS 53437 (S.D. Tx. 2006). As stated by Judge Lynch in *Finecom Shipping Ltd. v. Multi Trade Enterprises AG*:

> While courts have identified a number of factors to be considered in exercising this discretion, the core purpose of the countersecurity rule is to place the parties on an even footing; if one party is deprived of the use of its property during the litigation but the adverse party is not, despite the pendency of reciprocal claims, the party with the security may have unfair

leverage in the action. *Wash.-S. Nav. Co. v Balt, & Phila. Steamboat Co.,* 263 U.S. 629, 638-39, 44 S. Ct. 220 68 L. Ed. 480 (1924) (discussing predecessor of Rule E (7) in the 1920 admiralty rules).

2005 U.S. Dist. LEXIS 25761 *2 (S.D.N.Y. 2005).

Indeed, the Court must consider that there is an injustice to require the Defendant-Counterclaimant to post security by reason of a Rule B attachment without affording it reciprocal protection for its counterclaim. *Ythan Ltd. v. Americas Bulk Transport Ltd*, 336 F. Supp. 2d 305, 307 (S.D.N.Y. 2004).

In the circumstances of this case, Sinochart's request for countersecurity should be granted because the counterclaim arises out of the same transaction and occurrence as alleged in the Verified Complaint.

In the event that Plaintiff fails to post countersecurity or pleads inability to post countersecurity, then the Court must enter an order vacating the attachment of Sinochart's property because there is no reason to permit a complainant to enjoy unilateral security rights. *Verton Navigation, Inc. v. Cariba Shipping Ltd.*, 1992 U.S. Dist. LEXIS 517 at *6 (S.D.N.Y. 1992) (citing cases); see also, *Finecom Shipping Ltd. v. Multitrade Enterprises AG*, 200 U.S. Dist. LEXIS 25761*6 (S.D.N.Y. 2005) (Judge Lynch required the plaintiff to post countersecurity on including the requirement that and went on to rule: "If plaintiff fails to provide such [counter]security within 10 business days of this Order, the attachment previously ordered at the plaintiff's behest will be vacated."). *Id.*

For all of the foregoing reasons, if the Court denies Sinochart's Motion to Vacate the attachment of its property, the Court should issue an order directing Plaintiff to post countersecurity on Sinochart's counterclaim in the sum of **$9,640,457.89**, with the further

condition that if Plaintiff does not post such countersecurity within 10 business days the September 20, 2007 Ex Parte Order shall be vacated.

## CONCLUSION

For all of the foregoing reasons, the September 20, 2007 Ex Parte Order must be vacated be vacated, and the garnishees directed to immediately release all of Sinochart's property attached pursuant thereto; or in the alternative, Plaintiff should be ordered to post countersecurity in an acceptable form on Sinochart's counterclaim in the sum of **$9,640,457.89**, with the further condition that if Plaintiff does not post such countersecurity within 10 business days the September 20, 2007 Ex Parte Order should be vacated.

Dated: October 18, 2007
New York, New York

                                            The Defendant,
                                            CHINA NATIONAL CHARTERING CORPORATION

By: _/s/ Patrick F. Lennon_
Patrick F. Lennon (PL 2162)
LENNON MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 (phone)
(212) 490-6070 (fax)
pfl@lenmur.com

## AFFIRMATION OF SERVICE

I hereby certify that on September 18, 2007, a copy of the foregoing Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

                                                                Patrick F. Lennon