# EXHIBIT D
# TO GUTOWSKI DECLARATION:

# DECLARATION OF
# LUKE PARSONS Q.C.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
OCEAN LINE HOLDINGS LIMITED
                      Plaintiff,         07 Civ.8123(DC) ECF Case

- against -

CHINA NATIONAL CHARTERING CORPORATION
                Defendant.

-------------------------------------------------------X

## DECLARATION OF LUKE PARSONS QC

I, LUKE PARSONS QC of Quadrant Chambers, 10 Fleet Street, London, England declare under penalty of perjury under the laws of the United States of America as follows:

1. I am an English Barrister specializing in English maritime and admiralty law. I have a degree in law from Bristol University. I was called to the English Bar in 1985 and was appointed Queen's Counsel in 2003. Throughout my career I have specialized in maritime and Admiralty Law and therefore have over 20 years experience in these areas. A copy of my curriculum vitae is attached.

2. I have reviewed the following material in this case:

    1) Verified Complaint dated 17th September 2007 New York, New York, together with a copy of the charterparty exhibited to the Verified Complaint.

    2) Verified Answer with Counterclaim dated 18th October 2007 New York, New York;

    3) Declaration of Patrick F. Lennon in support of Defendant's motion to vacate maritime attachment or in the alternative for countersecurity executed 18th October 2007;

1.06.7011.00 6702273

    4)      Memorandum of Law in support of motion to vacate maritime attachment or in the alternative for countersecurity dated New York, New York, 18th October 2007.

3. I have been asked to review the above documents and provide a written opinion whether the heads of counterclaim set out in the Verified Answer and Counterclaim are sustainable as a matter of English Law. The relevant charterparty provides for London Arbitration subject to English Law.

4. In brief and as developed below, my opinion can be summarised as follows:

　　1) In so far as the claim is based on the negligence of those on board the vessel in the navigation or management of the vessel, the claim is unsustainable, because the carrier is protected by Article IV rule 2 Hague/Hague-Visby Rules. The Defendant/Counterclaimant has not identified any other relevant breach.

　　2) Nevertheless, the claim for return of hire is sustainable pursuant to clause 16 of the Charterparty.

　　3) London Arbitrators do award compound interest on sums recovered and will award a successful party its costs.

　　4) The claim for exposure to pay sub-charterers legal costs is unsustainable in any event on the additional ground of causation, as the proximate or dominant cause of the exposure to pay these costs is the Defendant/Counterclaimants' decision to pursue an unsafe port claim against sub-charterers.

## Cause of Action

5. Paragraph 6 of the Counterclaim states:

*"The grounding of the Vessel and subsequent sinking was a direct and proximate result of the Plaintiff's breach of the charterparty and/or its negligence or gross negligence in the operation and navigation of the vessel."*

6. The format of the Counterclaim is different to an English pleading. In an English pleading it is necessary to set out expressly the provisions of the contract, which it is said have been breached and to give particulars of the facts that it is said amount to a breach. Where a cause of action is non contractual, it is necessary to identify the duty of care relied upon and set out in detail the facts relied on as amounting to the breach of duty. However, where the parties are in a charterparty relationship, the liability of one party to the other will be governed by the contractual terms.

7. The Counterclaim is in very general terms. It does not for example specify which terms have been broken or the facts amounting to breach. The only matters referred to are negligence or gross negligence in the operation and navigation of the vessel.

8. In so far as it is alleged that the cause of action, whether in contract or otherwise, is based on the fact that the direct and proximate cause of the grounding was negligence in the navigation or management (which is what I assume is meant by "operation") of the vessel by those on board during the voyage, such a claim is unsustainable under English Law. The reasons for this are as follows:

   1) Clause 89 of the Charterparty provides that "USA/ Canadian/ Australian/ General Clause Paramount as applicable to be incorporated in all Bills of Lading to be issued under this Charter Party and to form part of this Charter Party."

   2) The effect of this clause and the General Clause paramount referred to on the following page of the charterparty is to make the terms of the Charterparty subject to the provisions of the Hague or depending on the particular trade, Hague-Visby Rules: see Adamastos Shipping Co Ltd v Anglo Saxon Petroleum Ltd [1959] AC 133.

1.00.7011.00 00 0702273

3) For present purposes it does not matter whether the Hague as opposed to Hague Visby Rules were applicable, because both contain the following provision under Article IV rule 2:

"Neither the carrier nor the ship shall be responsible for loss or damage arising or resulting from:

(a) act, neglect or default of the master, mariner, pilot or the servants of the carrier in the navigation or in the management of the ship."

4) Where the Hague or Hague-Visby rules are incorporated into a charterparty, the immunities in Article IV apply to the full range of contractual activities to be performed by the Owners under the Charterparty, protecting the owner against claims for economic as well as physical loss and damage: see The Satya Kailash [1984] 1 Lloyds Rep.588.

5) The words "act, neglect or default" cover negligence: see Cooke on Voyage Charterer paras 85.261 to 85.264. Thus a claim based on negligent navigation of the vessel or negligent management of the vessel (whether contractual or non-contractual) by those on board is not sustainable as the carrier is protected by the provisions of the Hague/Hague-Visby Rules.

6) There is no cause of action under English Law either in contract or non-contractual tort based on "gross" negligence as opposed to "mere" negligence so that even if the negligence is alleged to be "gross", there is no sustainable claim and the carrier is protected by Article IV rule 2 (a) of the Hague/Hague-Visby rules.

9. Therefore if the claim is based on negligent navigation or operation by those on board as paragraph 6 of the Counterclaim appears to be suggesting, the counterclaim is unsustainable (save in relation to return of hire for the reasons set out in paragraphs 11 to 14 below). Unless and until some other breach is identified, I cannot comment on whether it is sustainable.

### Damages

10. Paragraph 7 of the Counterclaim states that:

    "As a result of the Vessel sinking, the Defendant/Counterclaimant has suffered serious and substantial damages as follows:

    (a) Overpayment of hire to the Plaintiff in the sum of US$ 896,221.04;

    (b) Indemnity for the loss of the bunkers on board the Vessel for which Defendants/Counterclaimant is liable to the sub-charterer Daiichi Chuo in the sum of $834,995.85; and

    (c) Loss of the Vessel for the remaining period of the charter party contract in the sum of $ 2,150,000."

    *(a) Claim for overpayment of hire*

11. As regards overpayment of hire to the Plaintiff, clause 16 of the charterparty provides:

    "That should the vessel be lost, money paid in advance and not earned (reckoning from the date of loss or being heard of) shall be returned to the charterers at once. The acts of god, enemies, fire, restraint of Princes, Rules and people and all accidents of the seas, machinery boilers and steam navigation, and errors of Navigation throughout this Charter Party, always mutually excepted."

12. The phrases "accidents of the seas" and "errors of navigation" are not wide enough under English Law to protect the carrier from the consequences of negligent navigation: see The Satya Kailash [1984] 1 Lloyds Rep 588.

13. In those circumstances, if the loss or damage was caused by negligent navigation or management by those on board the vessel, the carrier is obliged to return unearned hire. I cannot comment on whether the quantum is correct as I have not seen any

underlying calculations. In order to defend a claim for return of hire, the Plaintiff would have to establish that the loss of the vessel was caused by the Defendant/Counterclaimant's breach of charterparty.

14. This claim is therefore sustainable in any event, though I cannot comment on the quantum of the claim.

*(b) and (c) Indemnity for bunkers and Loss of vessel for remaining period.*

15. These are claims for damages dependent on establishing a breach of contract or other non-contractual claim and are therefore not sustainable if based on negligent navigation or operation as set out above.

16. For completeness, I should explain the position if (contrary to the above) the counterclaimant could establish a sustainable breach of charterparty or other claim:

   1) If a breach can be established, there is a sustainable case that the Defendant/Counterclaimant would be entitled to a declaration of the right to an indemnity for liability to sub-charterers in respect of lost bunkers.

   2) I do not know how the sum claimed has been calculated. Where bunkers are lost the prima facie measure of damages would be their market value. However where there has been a breach of contract, the award of damages is designed to put the innocent party in the position he would have been in had the contract been performed. I assume that if the vessel had not sunk, some or all of the bunkers would have been consumed in any event, thereby reducing the amount payable in damages.

   3) If a vessel is lost during a charter period and the charterer would have continued trading the vessel for the remainder of the charter period, it is assumed that he would mitigate his loss by chartering in a substitute vessel. If

he can establish a breach, he would then have a sustainable claim for the difference between the market and contractual rate of hire. He would not have some other general loss of use claim. I do not know how the loss of use claim is calculated, so I cannot comment on the quantum of the claim.

### Interest

17. A successful claimant or counterclaimant is entitled to interest on the amount awarded based on the appropriate borrowing rate. In London Arbitration, this is usually awarded on a compound basis.

### Costs

18. I agree with paragraph 11 of the Counterclaim. Pursuant to section 63 Arbitration Act 1996 the successful party will be awarded his costs. These include lawyers' fees, arbitrators' fees, disbursements and interest.

### Paragraphs 13 to 15 of the Counterclaim: exposure to a claim of recoverable legal fees and costs incurred by Daiichi Chuo in arbitration proceedings under the subcharter party.

19. This head of counterclaim is unsustainable.

20. First, it is dependent on establishing a breach of contract or a non-contractual claim. The difficulties with this are set out in paragraph 8 above.

21. Secondly, it is unsustainable, because it will be impossible for the Defendant/ Counterclaimants to establish a causative link between any alleged breach and the exposure to a claim to pay Daiichi Chuo's legal fees for the following reasons:

    1) In the case of The Vakis T [2004] 2 Lloyds Rep 465 an owner brought an unsafe port claim against a charterer. The charterer decided to commence an unsafe port claim in turn against his sub-charterer. Mr Justice Langley (a commercial Judge of the English High Court) refused to allow the charterer's claim for an

indemnity in respect of liability to pay the sub-charterers' costs. He found that the proximate or dominant cause of exposure to pay the sub-charters' costs was the charterer's decision to make the unsafe berth allegation against sub-charters and not any alleged breach of charterparty by the Owners (which by definition would be breach of an obligation different to the obligation to provide a safe port).

2) The position is the same here. Paragraph 13 of the Counterclaim states that:

"As a further result of the grounding and sinking due to Plaintiff's breach of charterparty contract and/or negligence and/or gross negligence, Defendant/Counterclaimant has been forced to pursue indemnity claims against the sub-charterer of the vessel, Daiichi Chuo, under a September 12, 3006 (sic) sub-charter Party between Defendant/Counterclaim and Daiichi Chuo."

3) Although not expressly stated, the Defendant/Counterclaimant's indemnity claim against Daiichi Chuo must be based on an allegation that the port was unsafe i.e. the Defendant/Counterclaimant would have repeated the Plaintiff's claim against it down the charterparty chain to the sub-charterers.

4) Thus the proximate cause of their exposure to liability to pay Daiichi Chuo's costs is the Defendant/Counterclaimant's independent decision to make an unsafe port claim against Daiichi Chuo. It is not caused by any alleged breach of charterparty by the Plaintiff. The position is therefore the same as in The Vakis T case.

5) Under English Law of precedent the arbitrators are obliged to apply decisions of the English High Court and would therefore be obliged to apply The Vakis K.

6) Any such claim would therefore fail on the issue of causation.

1.06.7011.00 6702273

22. In conclusion, for the above reasons:

   1) The Defendant/Counterclaimant has a sustainable claim in respect of return of hire under clause 16 of the charterparty.

   2) London Arbitrators will award compound interest on sums recovered and will award a successful party its costs.

   3) If, as appears to be the case, the Defendant/Counterclaimants' claim is based on negligent navigation or operation of the ship by those on board, this cause of action is unsustainable by reason of Article IV rule 2 of the Hague/Hague-Visby Rules incorporated into the charterparty. No other breach of charterparty is identified in the Counterclaim.

   4) In any event, the claim in respect of exposure to liability to pay Daiichi Chuo's costs is unsustainable as the proximate cause of this exposure to pay costs is the Defendant/Counterclaimant's decision to commence unsafe port proceedings against sub-charterers.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 1st day of November 2007 in London.

..................................................

**LUKE PARSONS QC**

1.03.7011.00 8702273

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
OCEAN LINE HOLDINGS LIMITED
                        Plaintiff,        07 Civ.8123(DC) ECF Case

- against -

CHINA NATIONAL CHARTERING CORPORATION
                Defendant.

-------------------------------------------------------X

### DECLARATION OF LUKE PARSONS QC

---

**EXHIBIT 1**

---



# Luke Parsons Q.C.

**Address**
Quadrant Chambers, Quadrant House, 10 Fleet Street, London EC4Y 1AU

**Telephone**
020 7583 4444

**Fax**
020 7583 4455

**Email**
info@quadrantchambers.com

| | |
|---|---|
| **Call Date** | 1985, Inner Temple |
| **Silk** | 2003 |
| **Summary of Practice** | • Insurance and reinsurance<br>• Professional negligence<br>• Admiralty including Salvage, Collision and Arrests<br>• Shipping including formal investigations, public inquiries, carriage and charterparty<br>• Commercial Litigation |
| | Luke Parsons is a highly regarded and well known Commercial and Admiralty Barrister. His broad practice encompasses shipping, insurance/reinsurance, international trade, sale of goods, banking and commercial contracts. Much of his work combines complex legal and factual analysis, often requiring the co-ordination of a range of expert specialisms. He believes in combining a friendly, down to earth approach with tenacious and well prepared presentation of his clients' case. |
| **Publications** | Editor of Steel and Parsons on Forms and Precedents (2nd Ed.) |
| **Qualifications** | LLB (Bristol) |

2

### Shipping

Luke Parsons's experience covers all aspects of shipping work. He is regularly instructed on a broad range of bill of lading and charterparty disputes (involving both dry and liquid cargos). He is also frequently instructed in limitations and salvage disputes.

Recent and reported cases:

- *Mediterranean Shipping Company SA v Trafigura Beheer SA; The Amsterdam* [2007] EWCA Civ 794: the leading case on the compulsory application of Hague/Hague-Visby rules and limitation post discharge US $6 billion oil pollution arbitration.
- *'Tropical Reefer' Anton Durbeck GMBH v Den Norske Bank ASA* [2006] 1 Lloyds Rep 93: Principles of wrongful arrest by banks.
- *Den Norske Bank v. Acemex* [2004] 1 Lloyds Rep 1: ship mortgagee rights against a surety.
- *Maintop Shipping Company Limited v Bulkindo Lines*: The Mariniki [2003] 2 Lloyds Rep 655: unsafe port dispute.
- *Import Export v. CSA V [2003] 1 Lloyds Rep 405*: a bill of lading/ conversion of cargo dispute.
- *Tsavliris Russ v. RL Baron Shipping*: The Green Opal [2003] 1 Lloyds Rep 523: a claim in respect of allegedly negligent wreck removal operations.
- *The "Guiseppe Di Vittorio" [2000] 1 Lloyds Rep. 136*: the case in the Court of Appeal, which established the right to arrest ships belonging to CIS states.

Recent arbitrations have included: indemnity claims under the Interclub agreement and the recovery of legal costs: meaning of "without guarantee" in charterparty; unseaworthiness in chemical and product tankers; fraudulent repair claims under a charterparty; scope of the Hague rules time limit in a misdescription claim; meaning of average damage affecting class in ship sale's dispute; scope of ice warranty in charter parties; unsafe port disputes; conversion claims.

Luke Parsons has extensive experience of ship sale and ship building disputes. Over a number of years he acted for major Far East Shipyards in a series of high value claims in respect of shipbuilding and ship conversion disputes raising complex legal and factual issues. He was also involved in London's longest running ship building arbitration covering issues such as project management, ISO quality assurance and state of the art computer project modeling.

3

**Insurance and reinsurance**

From working in the insurance industry before starting at the Bar, Luke Parsons has practical experience of the London and International market. He has gained experience in the insurance field, firstly with a firm of international Lloyds' brokers and thereafter with a multi-national underwriting company on Hull & Machinery. He has a broad marine and non-marine practice.

Luke Parsons acted for Exxon in the insurance claims arising out of the "Exxon Valdez" spill and for Townsend Thoreson in the insurance claim relating to the Herald of Free Enterprise disaster.

Recent Cases:

- *Shell UK Limited v. CLM Engineering* [2000] 1 Lloyds Rep. 612: Commercial Court: Contractors all risks insurance and design liability insurance in respect of the construction of a North Sea gas line.
- *Independent Insurance Company v. Congal Chemical Company Limited* : a case in the Commercial Court involving fraudulent presentation of a claim.
- *Segura Fenix Sa v. QBE International Insurance Limited* : a reinsurance dispute in the Commercial Court in respect of hurricane damage involving the scope of the claims control clause.
- Suspa VII: AA. Commercial Court: marine insurance alleged non-disclosure of criminal association.
- *Esperance Limited v. Norwich Union and others: Marine Insurance* (Commercial Court, Langley J. : December 1998): misrepresentation and non-disclosure.
- *Plastribution Limited v Aegon Insurance: Commercial Court 1997: Trade Indemnity Insurance.*
- *Baltic Real Estate v. Generali* (Commercial Court May 1997): breach of warranty in the context of fire insurance: decision of Judge Diamond sitting as a deputy Judge of the Commercial Court).
- *Noble Resources v. Greenwood* [1993] 2 Lloyds Rep. 309: duty of insured to sue and labour.
- *Argonaut AB v. Michaels* (Commercial Court: January 1996: Manse J.): binding authorities and brokers negligence.

4

### Commercial Litigation

Luke Parsons represents clients in Commercial Arbitrations as well as regularly appearing in the Commercial Court. He has acted on behalf of clients in disputes involving joint venture and long term management agreements; the effect of retrospective taxation legislation on tax protected oil field construction contracts; disputes on the construction and delivery of a floating oil production platform disputes regarding the construction of a mine in Papua New Guinea; claims in respect of the construction of North Sea oil pipeline; commercial agency agreements, sale of computer controlled machinery and warehouse terms.

Luke Parsons is also frequently instructed in international trade disputes involving FOB and CIF, and GAFTA contracts. Luke Parsons regularly applies to the Commercial Court in regard to the pre-emptive strike particularly the use of anti-suit injunctions and mareva inunctions.

- *Berliner Bank v. Karageorgis* [1996] 1 Lloyds Rep. 426: Worldwide mareva injunctions.
- *Schiffahrtgesellschaft Detlev VonAppen GmbH v. Weiner Allianz Versicherungs AG* [1997] 2 Lloyds Rep. 279: Court of Appeal: anti-suit injunctions against insurers exercising rights of assignment.
- *Charterers Mutual Assurance Association v. British & Foreign* (transcript 15th September 1997: Judge Diamond sitting as a Judge of the Commercial Court and August 1998 Clarke J.): anti-suit injunctions and claims under the Third Party (Rights against insurers) Act 1930.
- *Afrodite Maritime v. Ibrahim bazzi:* (Commercial Court: November 1998).
- *Colman Marubeni v. McNeel* (Commercial Court: August 1998: Clarke J.). Anti-suit injunctions and disputed GAFTA arbitration clause.
- *Allianz Versicherungs - Ahtiengesellschaft v Fortuna Co. Inc* [1999] 1 WLR 2117: Commercial Court: validity of notices commencing commercial arbitrations.
- *Shell UK Limited v. CLM Engineering* [2000] 1 Lloyds Rep 612: Commercial Court: design responsibility for defective gas pipeline.
- *Canara Bank v. Standard Bank* (Moore-Bick J) (Transcript 22.5.02): a case arising out of a US$500 million tin mining fraud.
- *Mamidoil - Jetoil Greek Petroleum Co. SA v. Okta Crude Oil Refinery AD* [2003] 1 Lloyds Rep 1: a series of disputes arising out of the privatisation of an oil refinery in Macedonia
- International arbitration regarding a dispute between Russian and Ukrainian joint stock companies for energy supplies in CIS states.
- *Warenhandelsgeselschaft Corinth MbH v Liffe:* Commercial Court: acting for Liffe in the Commercial Court in the first commercial action to challenge its rules and its rights to exercise emergency powers to regulate the market.
- Acting for the London Clearing House in LME arbitration which challenged its rules under the Unfair Contract Terms Act.
- *Anton Durbeck GmbH v. Den Norske Bank* [2003] 2 WLR 1296: jurisdiction dispute arising out of branch agency of international banks.