UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------X
OCEAN LINE HOLDINGS LIMITED             :
                                        :
        Plaintiff,                      :    07 Civ. 8123 (DC)
                                        :
    - against -                         :
                                        :
CHINA NATIONAL CHARTERING               :
CORP. a/k/a SINOCHART,                  :
                                        :
        Defendant,                      :
---------------------------------------------------X

## DECLARATION OF WANG BAOSHU
## IN SUPPORT OF DEFENDANT'S
## MOTION TO VACATE MARITIME ATTACHMENT

I, Wang Baoshu, declare under penalty of perjury under the laws of the United States of America as follows:

1. I am a Professor of Law and a Supervisor of Ph.D. in Law candidates at Tsinghua University, Beijing, China. I am the director of Tsinghua University Commercial Law Research Centre, the Standing Fellow of China Law Society, the Vice Chairman of Association of Research on Commercial Law of China Law Society,, the Vice Chairman of Social Sciences Association of Beijing, the Vice Chairman of Beijing Law Society, the specially invited Consultant to the Supreme Peoples' Court of the People's Republic of China and a visiting professor to National Judges College, China National School of Administration and National Prosecutors College, etc.. I am the author and co-author of 17 books and have over 100 papers published. My Curriculum Vitae and the list of my main publications can be found at Exhibit 1.

2. I have been asked by Lennon, Murphy & Lennon via the Hong Kong lawyers, Richards Butler, for the Defendant in this case, i.e., China National Chartering Corporation ("Sinochart") to offer an opinion on whether Sinochart is owned by the People's Republic of China. I have also been requested to comment on the opinions in respect of the above issue given by Mr. Song Dihuang, Professor Jiang Ping and the experts appointed by the Plaintiff, Ocean Lines.

3. I have read copies of the following documents which have been provided to me:

    i.  the Declaration of Mr. Chen Weidong with exhibits;
    ii. the Declaration of Mr. Peter Gutowski;

    iii. the Declaration of Mr. Donald Clarke with exhibits;
    iv. the Declaration of Mr. Jacques Delisle with exhibits;
    v. the Declaration of Mr. Luke Parsons with exhibits;
    vi. the Declaration of Mr. Song Dihuang with exhibits;
    vii. the Declaration of Ms. Xing Naiqun with exhibits;
    viii. the final draft Declaration of Prof. Jiang Ping with exhibits;
    ix. the Business License of Sinochart of 1964 (Exhibit 2); and
    x. Sinotrans' Business License (Exhibit 3) and Sinotrans Ltd's Business License (Exhibit 4)

4. Firstly, I would like to advise that I fully agree with the opinions offered in the declarations of Professor Jiang Ping and Mr. Song Dihuang, also submitted by Sinochart in this case, that Sinochart is wholly owned by People's Republic of China. In my view, their opinions accurately reflect the true legal status of Sinochart and the relation with its property under the current applicable laws of the People's Republic of China.

5. With due respect, I am of the view that Mr Chen Weidong, Mr Donald Clarke and Mr Jacques Delisle's conclusion that Sinochart is owned by China National Foreign Trade Transportation Corp ("Sinotrans") is incorrect and that their opinions are not based on current, applicable Chinese laws. I wish to express further opinions according to Chinese law and the documents provided to me:

**Relevant provisions concerning enterprises, and state-owned enterprises and state-owned assets under Chinese Law and Regulations**

6. Article 7 of the Constitution of the People's Republic of China provides that the state-owned economy, i.e., the socialist economy under ownership by the whole people is the leading force of national economy and the State ensures the consolidation and growth of the state-owned economy (Exhibit 5). It follows that the term of "state-owned" is identical to the ownership by the whole people.

7. The General Principles of the Civil Law of the People's Republic of China ("the Civil Law"- Exhibit 6) which was adopted by the National People's Congress of the People's Republic of China ("the NPC") in 1986 divide the enterprise legal persons into five types, i.e. enterprises owned by the whole people ("EOWPs"), enterprises under collective ownership, Chinese-foreign equity joint ventures, Chinese-foreign contractual joint ventures and foreign-capital enterprises. Among them, EOWPs are actually state-owned enterprises. Article 48 of the Civil Law states inter alia:

"An enterprise owned by the whole people, as legal person, shall bear civil liability with the property that the state authorizes it to manage."

       This provision connotes that all the properties of EOWPs belong to the State, and the State authorizes EOWPs only to operate and manage the assets as legal persons.

8. Law of the People's Republic of China on Industrial Enterprises Owned by the Whole People ("the Law of IEOWP" - Exhibit 7) which was adopted and promulgated by the NPC in 1988 stipulates on the ownership of property in an EOWP and the operational and managerial authority of an EOWP. Article 2 of the Law of IEOWP states inter alia:

    "The property of the enterprise shall be owned by the whole people, and shall be operated and managed by the enterprises with the authorization of the State in line with the principle of the separation of ownership and managerial authority. The enterprises shall enjoy the rights to possess, utilize and dispose of, according to law, the property which the state has authorized it to operate and manage. The enterprises shall obtain the status of a legal person in accordance with law and bear civil liability with the property which the state has authorized it to operate and manage."

9. Under the abovementioned provisions, an EOWP will enjoy the qualifications of separate legal personality upon its formation in accordance with the law, and will independently assume civil liability with the property which the State has authorized it to operate and manage.

10. The abovementioned provisions also indicate that under Chinese law all the property in an EOWP belongs to the whole people of the People's Republic of China. This means that any property in an EOWP, in fact belongs to and is 100% owned by the People's Republic of China. The State authorizes the EOWP to operate and manage its property, but the EOWP does not own those assets. The operational and managerial authority enjoyed by an EOWP is limited to "the rights to possess, utilize and dispose of according to law" under Article 2 of the Law of IEOWP.

11. The Law of IEOWP makes clear that an EOWP does not enjoy any ownership rights in property and most definitely does not "grant the majority of the ownership rights" in the EOWP, as incorrectly expressed in the Declaration of Mr. Chen Weidong. (See the 16th paragraph of his declaration).

12. Under Chinese law, the core authority of the property ownership is "the right to dispose of". The right of the EOWP according to the Law of IEOWP is not an entire right to dispose of, but a limited right to dispose of, i.e. the enterprise must dispose of its property **according to law**. Such disposal according to law mainly includes two aspects: firstly, any disposal of the property must comply with the conditions and/or restrictions provided by laws and regulations. For example, Article 29 of Law of IEOWP stipulates on the restrictions for disposing of the fixed assets. It states inter alia:

"The enterprise shall have the right, in accordance with the provisions of the State Council to lease out or transfer against compensation the fixed assets that the state has authorized it to operate and manage, and the proceeds therefrom must be used for the renewal of equipment and technical transformation."

Secondly, disposal of its property by an enterprise must comply with the legal procedures. For example, Article 15 of Regulations on Transformation of Management System of Enterprises Owned by the Whole People promulgated by the State Council (Exhibit 8) in 1992 and states inter alia:

"Enterprises have the right to dispose of assets. Based on requirements of production and operation, enterprises may at their own discretion, lease, mortgage or transfer with consideration the assets; the enterprises may lease the key equipments, sets of equipments or important structures, and the enterprises may, upon being approved by the competent government authorities, mortgage or transfer with consideration the above assets."

In another words, if an enterprise disposes of key equipments, whole-set equipments or important buildings by the way of transferring for value, it must first submit to the competent department of the government for an approval. In conclusion, the reason that the law confers a right of disposal on an EOWP is not to provide the EOWP with proprietary ownership of such property, but for the convenience of operation and management of the enterprise.

13. Some other provisions in the Law of the IEOWP also make it clear that the EOWP only has operational and managerial authority in respect of its assets, but not ownership. For example, Article 6 of this Law states inter alia:

"The enterprise must effectively utilize the property which the State has authorized it to operate and manage and realize the multiplication of its assets; an enterprise must, according to law, pay taxes and fees and hand in profits." Article 58 also provides that no State Organ or Unit shall be permitted to encroach on the right which the enterprise enjoys according to law in making its own decisions in operation and management."

14. On 27th May 2003, the State Council of the People's Republic of China adopted Supervision and Administration of State-owned Assets of Enterprises (Please see Exhibit 9). It provides that State-owned property in an enterprise means any State's investments in enterprises in any firms, any interests accruing from such investments and other interests recognized as state-owned according to law. The property owned by the State belongs to the State and the State Council or the local governments perform the obligations as investors on behalf of the State, while the State enjoys the ownership. These are stipulations on the relationship between the EOWP and the property it manages and administers.

15. In 1993 China enacted the Company Law of the People's Republic of China ("the Company Law"), which has since been revised a few times. Particularly, the revision in 2005 (Exhibit 10) made many amendments. The Company Law regulates enterprise legal persons of limited liability companies or joint stock limited companies. Therefore, under Chinese law, enterprises can be classified into two main categories according to forms of enterprises: incorporated enterprise legal persons under the Company Law and non-incorporated enterprise legal persons. Sinochart falls into the non-incorporated enterprise legal persons category, and therefore, it is not subject to the Company Law, but rather is subject to Law of IEOWP as discussed above. Even in respect of the wholly state-owned company under the Company Law, the only investor is either the state council or the local people's government or the state-owned assets supervision and administration authority. The investor shall not be the wholly state-owned company.

**Is Sinochart owned by the People's Republic of China?**

16. Based on the documents provided to me and my understanding of Chinese laws, I am firmly of the view that as a matter of Chinese law, Sinochart is a Chinese State owned enterprise and is owned by the People's Republic of China.

17. Firstly, Sinochart's business license for enterprise legal person clearly states the economic nature of Sinochart as "ownership by the whole people" ("EOWP"). In accordance with the Civil Law, the Law of IEOWP and the Provisional Regulations for Supervision of the State-owned Assets in Enterprises that, all of Sinochart's property is owned by the whole people of the People's Republic of China, i.e., it is owned by the State; Sinochart itself possesses only the operational and managerial authority over the property, but does not have any ownership rights. Since Sinochart is owned by the whole people or the State, it is impossible that its properties are owned by any other enterprises or entities as there is no provision under Chinese law, i.e. IEOWP, allowing for such ownership.

18. Secondly, I can also see from the documents provided to me that Sinochart as a separate legal entity was established in 1955. At that time Sinochart and Sinotrans possessed the same organizational structure (i.e. two enterprises managed by one set of personnel); both companies were State enterprises owned by the whole people, and directly under the former Ministry of Foreign Trade and Economic Cooperation (i.e. "MOFTEC", currently the Ministry of Commerce, PRC). The respective registered capital of the two companies were RMB 60 million yuan for Sinotrans and RMB 20 million yuan for Sinochart. (See Exhibit 3 to the declaration of Mr. Song Dihuang, copy of document of the MOFTEC). The business license issued by the Beijing Administration for Industry and Commerce to Sinochart (see Exhibit 2) in 1964, also shows that Sinochart has long been a separate enterprise legal person since the 1960's. On December 23, 1983, MOFTEC presented a document (Exhibit 3 to Mr Song's Declaration) to the State Administration for Industry and Commerce (the "SAIC") for registration and

enrollment of Sinotrans and Sinochart, SAIC issued business licenses and business certificates for both Sinotrans and Sinochart. It appears that this was because the original business documents were lost at SAIC during the period from the mid 1960s and the mid 1970s when China underwent ten years' culture revolution. Therefore, the superior government department in charge of both Sinochart and Sinotrans, i.e., MOFTEC, applied for registration and enrollment of both companies again. On 9th June 1984, the SAIC completed the re-registration for Sinochart, and issued business license to Sinochart. The business license currently held by Sinochart was dated 20th January, 2001. It can be seen from the business registration license that the enterprise was originally established on 9th June 1984. The Sinochart now (i.e. the defendant in this case) is the above mentioned Sinochart at that time, which was established in 1955, and was re-registered again with the SAIC in 1984.

19. Based on the above, I am of the view that, Sinochart has the same status with Sinotrans. Both Sinotrans and Sinochart were initially directly invested and established by the Chinese government, and are indeed 100% owned by the whole people of the People's Republic of China. They are also called an enterprise operated by the State (in Chinese "国营企业"). In the past, this is also an usual name of a state-owned enterprise in the PRC. At Exhibit 3 to declaration of Song Dihuang, the MOFTEC also adopted this name. They are now called as state-owned enterprises (the usually adopted description). This conclusion, is identical with the enterprise nature of "ownership of the whole people" indicated on the business license of Sinochart.

20. I note that the description expressed by Ocean Line's experts in their declarations differs in respect of Sinochart's formation from the opinions I have expressed above. The Ocean Line experts take the view that the former Sinochart had been deregistered and Sinochart as the defendant in this case was then established in about 1993 and was invested by Sinotrans. They further allege that Sinochart was not invested directly by the State and that Sinochart was originally named "Sino-Foreign Transportation Ship Chartering Corporation", and was subsequently changed into "China National Chartering Corporation". In addition, I also notice that they allege that the Articles of Association of Sinochart and some other documents indicate that Sinochart was wholly invested in and established by Sinotrans, and operates under the supervision and management of Sinotrans. Based on these alleged facts, with which I completely disagree, Ocean Line's experts take the view that Sinochart is a subsidiary of Sinotrans, and thus is not owned by the PRC.

21. These experts, however, did not refer to or provide the evidence that the former Sinochart had been deregistered. Neither have they provided any evidence to support that their contention that the current Sinochart was formed only in 1993. Therefore, in my view, their conclusion is not factually supported. In fact, from the Sinochart Business License (Exhibit 1 to Mr. Song Dihuang's Declaration), Sinochart, the Defendant in this case, has been existing at least since 9th June

1984 and it is not possibly correct to conclude that it was only established after 1993.

22. Mr. Chen provided some evidence to support that Sinotrans resumed to use the name of Sinochart (Exhibits 11 and 12 to Mr. Chen Weidong's declaration), but in my view, this evidence does not directly prove that Sinochart was not established in 1955 (see Exhibit 3 to the declaration of Mr. Song Dihuang, copy of document of the MOFTEC).

23. I note that some documents refer to Sinotrans as the "investor" of Sinochart. In my view, these do not affect the legal status of Sinochart as an EOWP whose assets belong to the State. This is because, as mentioned above, as a matter of law under the Provisional Regulations for Supervision and Administration of State Owned Properties in Enterprise, all the interests in the state-owned enterprises belong to the State, and the State alone.

24. The economic nature of an enterprise depends solely on its business registration. If it is an EOWP, the assets of such EOWP are wholly owned by the State.

25. I should mention that any description in an enterprise's Articles of Association as a "subsidiary" or an "associate" does not change the legal status of its Ownership by the State (PRC) if such an enterprise is registered as an EOWP.

26. In conclusion, as a matter of Chinese law, based on the foregoing analysis, there is no doubt in my professional opinion that Sinochart is owned by the whole people of the PRC (i.e. state owned), and all its assets and property are owned by the People's Republic of China.

## The status of enterprises as legal persons and ownership of enterprises are two different legal concepts

27. As mentioned above, under Chinese law, an "enterprise legal person" possesses separate legal personality and is able to independently bear civil liability with regard to its property. Sinochart is a separate legal person and it assumes civil liability independently. However, the ownership of a state-owned enterprise's property and the separate personality of a state-owned enterprise legal person are obviously two totally different legal issues. Accordingly, one cannot deny the state-owned nature of Sinochart simply based on the fact that it is a separate legal personality.

## Comments on the declarations of the experts entrusted by the plaintiff

28. I read carefully the declarations of all the experts engaged by the Plaintiff, Ocean Line, concerning the nature of Sinochart. I summarize the main points raised by those experts as follows:

    a)    Sinochart as the defendant in the present case is not that Sinochart established in 1955; the former Sinochart has been deregistered and Sinochart as the defendant in this case was invested in and established by Sinotrans in around 1993, and later changed its name into Sinochart (see paragraphs 34 to 39 of the declaration of Mr. Chen Weidong and paragraphs 24 and 25 of Mr. Clarke's declaration);

    b)    Sinochart's Articles of Association and other documents show that Sinochart was invested and established by Sinotrans and Sinochart operates under the supervision and control of Sinotrans; hence, it is a subsidiary of Sinotrans (see paragraphs 41 to 44 and 53 to 62 of Mr. Chen Weidong's declaration and paragraphs 24 and 25 of Mr. Clarke's declaration);

    c)    Since Sinochart is a subsidiary of Sinotrans, it is directly owned by Sinotrans and not the Chinese government or the state (see paragraph 8 of Mr. Chen's declaration and paragraph 25 of Mr. Clarke's declaration).

29. As to the points set out in paragraph 28(a), above, I have already given my opinions at paragraphs 15-19. Based on the documents available, it is not correct for Ocean Line's experts to conclude that the Sinochart in this case was established only in about 1993. Instead, the documents show that Sinochart was originally established by the Chinese government in 1955. In my view, there is no way this can be contradicted.

30. As to the points set out in paragraph 28(b), above, as I have discussed in this Declaration, the only criteria to assess the nature of the ownership of an enterprise under Chinese law is the nature of the ownership registered officially with the SAIC. Regardless of whether Sinochart is described as a subsidiary of Sinotrans in its Articles of Associations, given that Sinochart is registered as an EOWP, Sinochart is indisputably 100% owned by the People's Republic of China.

31. As to the points set out in paragraph 28(c), above, in my opinion, even if Sinotrans invested in Sinochart, it did so on behalf of the state, i.e. the PRC. Moreover, even though Sinochart operates under the supervision of Sinotrans, because Sinochart is registered as an EOWP, as a matter of Chinese law Sinochart is 100% owned by the whole people of the PRC, i.e., by the State. I thus submit that the Ocean Line experts have misinterpreted Chinese law, ignored key evidence and controlling documentation regarding Sinochart's legal nature and wrongly concluded that Sinochart is owned by Sinotrans.

32. I make this declaration based upon my own personal knowledge and upon reviewing the documents available to me.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on     November, 2007 in Shenzhen, China.

_____
Wang Baoshu