UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
OCEAN LINE HOLDINGS LIMITED,

                Plaintiff,

        - against –

CHINA NATIONAL CHARTERING CORP.
a/k/a SINOCHART,

                Defendant.
-----------------------------------------------------------------x

**ECF CASE**

**07-CV- 8213 (DC)**

**SECOND DECLARATION OF DONALD CLARKE**

I, DONALD CLARKE, declare as follows:

1. Having previously submitted a declaration in this case, I make this second declaration in order to respond to certain declarations submitted by Defendant after my original declaration ("Clarke Declaration") was made.

2. The declarations I shall address are the following (collectively, the "New Defense Declarations"):

    i. Second Declaration of Song Dihuang ("Second Song Declaration");

    ii. Declaration of Si Yuzhuo ("Si Declaration");

    iii. Declaration of Wang Baoshu ("Wang Declaration"); and

    iv. Declaration of Jiang Ping ("Jiang Declaration").

3. In addition to the declarations listed above, I have also reviewed the following declarations:

    i. Second Declaration of Weidong Chen ("Second Chen Declaration"); and

    ii. Declaration of Jacques DeLisle ("DeLisle Declaration").

4. In this declaration, I shall make two points. First, the New Defense Declarations do not offer convincing reasons in support of their argument that Sinochart is not a subsidiary of Sinotrans, and fail to address important points made in the original declarations submitted

1

by Plaintiff in this case. I see no reason to revise the view stated in my original declaration. Second, I find the Second Chen Declaration convincing in its argument that the Sinochart established in 1955 is not the Sinochart that is the defendant in this case. More importantly, however, I believe that this issue is ultimately a red herring and need not be resolved. The issue is not Sinochart's history. The issue is what, after various corporate reorganizations, it is today. As I shall show, whatever it was in the past, it is today a subsidiary of Sinotrans.

### I. Sinochart Is, Under Any Realistic Definition of "Subsidiary," a Subsidiary of Sinotrans

5.  The arguments of the New Defense Declarations essentially boil down to one critical assertion: that all we need to know is how the enterprise is labeled on its business license, and that if it is labeled "state-owned" or "enterprise owned by the whole people" ("EOWP"), we need not inquire into the actual facts of the relationship between Sinochart and Sinotrans.[1] I believe that the issue in this case cannot be so easily disposed of. Whether Sinochart is an EOWP is not in dispute.[2] What is in dispute is what, for practical purposes, that means in this case.

6.  We are told that anything labeled an EOWP is for that very reason incapable of being a subsidiary of another enterprise.[3] This assertion, as I shall show below, is incorrect because it relies on abstract formalisms instead of a practical understanding of what it means to "own" something or to be in a parent-subsidiary relationship. It is also contradicted by numerous real-life examples where Chinese law specifically contemplates parent-subsidiary relationships among EOWPs and the parties to such relationships describe themselves in those terms. As is shown in my first declaration, the two declarations by Weidong Chen, and the DeLisle Declaration, it is also contradicted by the substance of the relationship between Sinochart and Sinotrans. The New Defense Declarations fail to address the specific arguments made in these declarations, instead simply repeating that something labeled "state-owned" or "EOWP" is for that reason alone incapable of being a subsidiary.

### I.A. The Argument that Sinochart's Assets Are Owned by the Chinese State Relies on Formalisms and Ignores How Chinese Law Actually Treats Such Assets

7.  The New Defense Declarations assert that Sinochart cannot be a subsidiary because all its *assets* are owned directly by the Chinese state. This argument fails for two reasons. **First, it relies on a formalistic definition of "ownership."** The Wang Declaration concedes that EOWPs have the right to possess, utilize, and dispose of according to law" the assets that are in their name.[4] The Wang Declaration calls these rights "limited"; I do not agree. These are extensive rights that look very much like ownership. The Si Declaration

---

[1] See, e.g., Wang Declaration, paras. 24, 30.
[2] The New Defense Declarations state insistently in several places that neither Sinochart nor Sinotrans is organized under the Company Law, as if this somehow refuted the points made by Plaintiff's experts. None of Mr. Chen, Prof. DeLisle, or myself have asserted that Sinochart or Sinotrans is organized under the Company Law, and our views in no way depend on that being so.
[3] See, e.g., Jiang Declaration, para. 33.
[4] Wang Declaration, para. 10.

      concedes that EOWPs are entitled to "possess, use or dispose of" their assets[5] according to law.[6] It then states that "this should not be interpreted as ownership of such assets by an EOWP." Why not? It certainly looks like ownership.

8. **Second, it proves too much.** Sinochart's expert witnesses assert that Sinochart's status as an EOWP means that the assets it operates are all owned directly by the Chinese state and not by Sinochart itself. The implications of this argument, if accepted, are profound and in my opinion unacceptable. *If the physical and financial assets in question are in a realistic sense directly owned by the Chinese state, such assets would not be available to creditors*—not for reasons of sovereign immunity, but simply because creditors cannot take what a debtor does not own. To accept this argument means accepting that one could never collect on a judgment against a Chinese EOWP, even in China, *regardless of its status under the Foreign Sovereign Immunities Act*, because it owns no assets of its own. This is not an argument that Chinese law or courts have found compelling—as Defendant's experts concede, the assets operated by EOWPs in their name are routinely available to creditors.[7]

9. The untenability of Sinochart's assertions about asset ownership are clear from its own filings in this case. Plaintiff has attached certain property. Who has the right to challenge this attachment? According to Sinochart and its experts, Sinochart *does not own this property*; it belongs instead to the Chinese state. Yet it is Sinochart, not the Chinese state, that has appeared in court alleging that the attached property is "the property of Sinochart" and challenging the attachment.[8] Given that Sinochart does not appear to accept its experts' reasoning, there is no reason for this Court to do so. If Sinochart's experts are correct, then Sinochart should have no standing to challenge the attachment.

10. In short, whatever words one wishes to use, the Chinese legal system—and Sinochart itself by its actions—treats the assets of EOWPs for all practical purposes as if they were owned by the EOWP.

11. The gap between occasional confusing statements in Chinese law and the reality of economic relationships can, I believe, be easily explained. China's ruling party, the Communist Party, relies for its ideological legitimacy on a version of Marxism-Leninism that prizes state ownership. Furthermore, its political leaders and law drafters are not well versed in the subtleties in corporate organizational law. Thus, despite decades of substantial economic reform in the post-Mao era, political leaders still view it as critical to maintain the language of state ownership, and the law in its language has not traditionally made a rigorous distinction between ownership of enterprises as such and ownership of physical assets. In an earlier era, it was a distinction without a difference. (I note, incidentally, that the most commonly cited language in the New Defense Declarations comes from the Law on Industrial Enterprises Owned by the Whole People,

---

[5] The Si Declaration calls these "state assets," but that is the very question under debate here.
[6] Si Declaration, para. 17.
[7] See Wang Declaration, para. 9; Jiang Declaration, para. 23.
[8] See Defendant's Memorandum of Law in Support of Motion to Vacate Maritime Attachment or in the Alternative for Countersecurity, Oct. 18, 2007. I do not see anywhere a claim by Sinochart to be acting as the agent of the true owner.

a statute passed in 1988, when economic reform had been underway for less than a decade and ideas about state ownership were very different.) As a result, we find that while the law states that EOWPs can possess, use, and sell (and have seized by creditors) certain assets, it is still insisted in some quarters that the word "ownership" must not be applied to those rights. While one can understand the ideological needs of the Chinese legal system, I do not believe that an American court is required to cater to them. If it looks like ownership, we should call it ownership.

*I.B.  The New Defense Declarations Fail to Address the Substance of the Relationship Between Sinochart and Sinotrans and the Differences Between Them*

12. The New Defense Declarations assert that anything called an EOWP must always be directly owned by the Chinese state because that is simply in the nature of EOWPs. There are several flaws in this argument.

13. First, it assumes that if Sinochart's assets are directly owned by the Chinese state, then Sinochart cannot be a subsidiary of another enterprise.[9] This is a non sequitur, and stems from a confusion between ownership of assets and ownership of an enterprise.[10] Although, as I argue above, I believe that the so-called "state" ownership of EOWP assets is at most a formal label without economic substance, even if it did have substance, it would not resolve the key issue of whether Sinochart itself is directly owned by the state and whether its assets are available to creditors—surely the issues with which with the Supreme Court was concerned in *Dole Food Company v. Patrickson*, 538 U.S. 468 (2003).

14. Second, it ignores the actual substance of the relationship between Sinochart and Sinotrans. The substance of this relationship—Sinotrans's power to appoint Sinochart's management, its right to receive profits from Sinochart, Sinochart's obligation to provide reports to Sinotrans, etc.—has been amply set forth in other declarations in this case[11] and I will not repeat the details here. The New Defense Declarations do not deny any of these facts; their response, where they have one, has simply been to say that they don't matter; that all that matters is the label found on the business license.

15. In addition to the documents cited in my original declaration that clearly show a parent-subsidiary relationship,[12] I have discovered yet another document to the same effect. This document was issued by the State Tax Administration, and lists Sinochart as a wholly-owned subsidiary (*quanzi zigongsi*) of Sinotrans.[13]

---

[9] See, e.g., Wang Declaration, para. 17.
[10] See, e.g., Wang Declaration, para. 17 which cites a regulation stating that an EOWP's assets are owned by the state in support of a conclusion that Sinochart, as an EOWP, is owned by the state.
[11] See, e.g., DeLisle Declaration, para. 45; Clarke Declaration, para. 18.
[12] See Clarke Declaration, paras. 16-20.
[13] See *Guojia Shuiwu Zongju Guanyu Zhongguo Waiyun Jituan Jiaona Qiye Suodeshui Wenti de Tongzhi* (Notice of the State Tax Administration on the Payment of Income Tax by the Sinotrans Group), Guo Shui Han No. 851, 2001, available at http://www.chinatax.gov.cn/viewlaw.jsp?code=200309241005512425.

16. Third, the assertion ignores the evidence in Chinese law and practice that it is by no means impossible for one EOWP to be a subsidiary of another.

17. In my original declaration, I cited several regulations that clearly contemplated that one EOWP could be the subsidiary of another.[14] The New Defense Declarations make no response to this evidence, instead simply asserting that something about the "nature" of anything labeled an EOWP means it cannot be a subsidiary.

18. One can also find real-life examples of other enterprises that identify themselves as EOWPs while at the same time clearly acknowledging their status as subsidiaries of parent enterprises. Take, for example, the Beijing Jinyu Gold Materials Storage and Shipping Company ("Beijing Jinyu"). According to its web site, it is a second-tier (*erji*) EOWP under the China Jinyu Gold Materials Company ("China Jinyu").[15] China Jinyu in turn describes itself on its web site as a "subsidiary" (*zigongsi*) of yet another company, China Gold Group Company ("China Gold").[16] China Gold, for its part, describes itself as a "state-owned enterprise" under the central government.[17] In short, Beijing Jinyu is an enterprise twice removed from direct state ownership, yet calling itself an EOWP.

19. Finally, the assertion of the Wang Declaration that Sinotrans and Sinochart have the same status in Chinese law[18] is contradicted by the simple fact of where their respective profits go. From 1994 until 2007, "the Chinese government [did] not receive profits from state firms, only taxes."[19] To be more precise, the document expressing this policy actually states that "most old wholly state-owned enterprises registered before 1993" shall not be required to deliver profits upward.[20] If, as the Defendant and its experts claim, Sinochart was established and registered prior to 1993, it should be allowed to keep its profits. But as we know from its Articles of Association (dated 1996), it is contemplated that some profits will not be retained, and will instead be delivered to Sinotrans. To the best of my knowledge, Sinotrans for its part is covered by the policy in question, and at least until 2007 had no obligation to deliver profits upward to SASAC, its owner.

*I.C. The New Defense Declarations Fail to Answer the Question: Who <u>Specifically</u> Owns Sinochart, if Not Sinotrans?*

20. I note that none of the New Defense Declarations answers a key question that I posed in my original declaration: if Sinochart is really directly owned by the state and not by Sinotrans, which state entity owns it? As I stated in my original declaration, EOWPs are not abstractly owned by "the Chinese government."[21] *There is always a specific,*

---

[14] See Clarke Declaration, para. 14.
[15] See http://www.chinajinyugold.com/huairou.html.
[16] See http://www.chinagoldgroup.com/Intro/Sub/26.htm.
[17] See http://www.chinagoldgroup.com/Intro/Intro.htm.
[18] See Wang Declaration, para. 19.
[19] Barry Naughton, "Claiming Profit for the State: SASAC and the Capital Management Budget," *China Leadership Monitor*, No. 18, 2006, p. 3, available at http://media.hoover.org/documents/clm18_bn.pdf.
[20] *Guowuyuan Guanyu Shixing Fenshuizhi Caizheng Guanli Tizhi de Jueding* (Decision of the State Council on Implementing the Split Tax System in the Financial Administration System), Dec. 15, 1993, available at http://www.law-lib.com/law/law_view.asp?id=57216.
[21] See Clarke Declaration, para. 21.

*identifiable state institution that exercises ownership power.* In the case of Sinotrans, it is the State Asset Supervision and Administration Commission ("SASAC"). But SASAC does not assert ownership over Sinochart. If Sinochart is indeed directly owned by some other Chinese government institution, surely it is fair to ask Sinochart and its experts to identify that institution. And yet despite the specific question in my original declaration, which all the authors of the New Defense Declarations have seen, *no answer has been forthcoming*. The reason, I believe, is simple: Sinochart is owned by Sinotrans, and its status as "EOWP" is in no way inconsistent with that fact.

## II. Whether the Sinochart of 1955 Is the Same Company as the Sinochart of Today Is Not Important

21. There has been much confusing testimony on the history of Sinochart. Ultimately, however, I believe the issue is something of a red herring. Even if the Sinochart of today was established as a directly-owned EOWP in 1955, that does not tell us whether it is a subsidiary of Sinotrans today. Corporate reorganizations happen in China as elsewhere. Sinochart's relationship to Sinotrans today is what matters, and that can be understood only through a detailed examination of specific facts regarding their relationship today. Recent documents tell a consistent story: that Sinochart is a subsidiary of Sinotrans.

## III. Summary and Conclusion

22. The New Defense Declarations rely strongly on abstract formal statements instead of examining the substance of Sinochart's legal status and its relationship to Sinotrans. I cannot agree that simply looking at Sinochart's business license tells us everything we need to know in this case. The Chinese state does not own Sinochart's assets in any practical sense of the word—Sinochart itself views the attached property as sufficiently its own to give it standing to challenge the attachment—and whether it does or does not still would not tell us whether Sinochart should be viewed as a subsidiary of Sinotrans. All the facts about the relationship between Sinotrans and Sinochart suggest a parent-subsidiary relationship, and the two companies characterize their relationship that way in documents predating this litigation. Official government documents also treat the two companies as parent and subsidiary respectively. Finally, Defendant and its experts have been unable to answer the question: if Sinotrans does not own Sinochart, then who does? Because all EOWPs have a specific state institution as owner, a vague reference to "the government of China" is insufficient. For the above reasons, I believe it is clear that Sinochart is a subsidiary of Sinotrans and thus fits squarely within the holding of *Dole*.

I declare under penalty of perjury under the laws of the United States of America pursuant to 28 U.S.C. §1746 that the foregoing is true and accurate.

DONALD CLARKE

Dated:  January 30, 2008