both assets owned by a State-owned juridical entity and assets owned by the State in the custody of another entity, whether or not that other entity itself may invoke immunity. *See e.g. Karaha Bodas Co., LLC v. Perusahaan Perambangan Minyak Dan Gas Bumi Negara*, 313 F. 3d 79, 92 (2d Cir. 2002) (immunity extended to State-owned funds that were held in trust in the name of another State-owned entity that had waived immunity for its own assets).

Both Defendant and its assets are State-owned. Each of these immunities can stand on its own, and each is covered by the FSIA and the LEOWP. The specific discussion in Defendant's Reply Memorandum of a stand-alone asset-immunity was a direct and necessary response to Plaintiff's affirmative argument in its opposition papers that the LEOWP assigned the "attributes of ownership" to EOWPs. Plaintiff has since distilled this into its "looks like a duck" theory of ownership. *Plaintiff's. Sur-Reply Mem.* at 6 n. 5.

Article 2 of the LEOWP is emphatic in separating ownership of assets from management of assets. The property of an EOWP is owned by the State, and merely "operated and managed" by the EOWP "with the authorization of the state in line with the **principle of the separation of ownership and managerial authority**." ***Jiang Decl., Ex. 5.*** The 1992 EOWP Transformation Regulations are even clearer, if possible: "Assets of enterprises are owned by the whole people, namely, owned by the State. . . ." (Art. 41). ***Second Song Decl. ¶ 15.*** Similarly, the 1993 Interim Measures provide: "The differentiation and variation on the administrative subjects at different levels and divisions is not the separation or transfer of the state-owned property right." ***Third Song Decl., Ex. 1.***

Article 5 of the Rules on the Management of Property Right Registration of State-Owned Assets of Enterprises provides the "Certificate(s) of Registry of Ownership of State-owned Assets of Enterprises of the People's Republic of China issued by all the levels property

registration administrations ("the Certificate of Registration") is the legal evidence confirming the status of the enterprise property and it is also the evidence of the financial ability of an enterprise." ***See First Si Decl. ¶ 31, Ex. 5.*** Defendant's assets are registered as State-owned capital which Defendant "may lawfully possess [and] utilize," and as to which Defendant "shall assume the responsibility with respect to the value maintenance and increment of the state-owned assets." ***First Si Decl., Ex. 1.*** Plaintiff's experts may argue that the LEOWP's description of Defendant's assets as State-owned is archaic, but they cannot deny that its assets are described as State-owned in a current registration document that must be renewed every year upon the government's "inspection" of those State-owned assets. ***First Si Decl., Ex. 1; Second Song Decl. ¶ 11.***

Prof. de Lisle recognizes Defendant's point that "it is possible in Chinese law, as under other legal systems, for an enterprise to be formally and functionally a separate legal entity that operates with assets that it does not itself own." ***Second de Lisle Decl. ¶ 42.***[5] As previously mentioned, his First Declaration repeatedly refers to assets "managed and operated" by Defendant.

Nevertheless, Prof. de Lisle argues, contradictorily, that the LEOWP's explicit provisions regarding State ownership and the separation of ownership and management functions do not mean what they say. He bases this argument upon the LEOWP's allocation of specified "attributes of ownership" to the EOWP (***Second de Lisle Decl.*** ¶ 43), and what "looks like"

[5] Messrs. de Lisle and Clarke misconstrue Defendant's position when they suggest Defendant argues that operating with State-owned assets "makes an enterprise 'owned by the state'. . . ." ***Second de Lisle Decl. ¶ 47; Second Clarke Decl. ¶¶ 7, 13.*** What makes an enterprise owned by the State is the fact that it is formed and registered as such under the LEOWP, not the act of managing the State's assets. The fact that an entity cannot own assets, but only manages State-owned assets, is an attribute, not a cause, of being an EOWP. Paragraph 17 of Prof. Wang's Declaration, cited by Clarke, states ". . . Sinochart itself possesses only the operational and managerial authority over the property, but does not have any ownership rights. Since Sinochart is owned by the whole people or the State, it is impossible that its properties are owned by any other enterprises or entities as there is no provision under Chinese law, i.e. IEOWP, allowing for such ownership." ***Wang Decl. ¶ 17.***

ownership "in a U.S. law sense." ***Second de Lisle Decl. ¶ 25; Second Clarke Decl. ¶¶ 7, 11.*** It appears not to concern him that the LEOWP explicitly reserves ownership to the State in the very sentence preceding the one assigning the management of those assets to the EOWP. Nor is he bothered by the inconsistency between his argument that the LEOWP gave away the attributes comprising ownership, and his repeated acknowledgment that the LEOWP's original intent was that the State retained ownership of its assets and merely delegated management to the EOWPs.

The near-nadir of Plaintiff's legal reasoning about ownership is that if it looks like a duck, it's a duck. *Plaintiff's Sur-Reply Mem.* at 6, n. 5. To heck with what the law actually says.

Contrary to all of Plaintiff's arguments, however, the fact is that what counts is what the law actually says, and that is particularly true in a civil law country. ***Second Si Decl. ¶ 15.*** Article 2 of the LEOWP first makes clear that the assets are owned by the State, and only then, in the next sentence, delegates specified functions regarding those assets <u>expressly</u> as management – not ownership - functions. ***See First Si. Decl. ¶ 16; Jiang Decl. ¶¶ 22, 25; Wang Decl. ¶¶ 11, 13.***

There is simply no rational basis for an argument that the intent or effect of the statute is to give away ownership, when it so deliberately reserves that ownership to the State, and the <u>Transformation Regulations</u> and <u>Interim Measures</u> four and five years later reconfirm that reservation of property ownership exclusively in the State.

From its "looks like a duck" near-nadir of reasoning, Plaintiff's remaining arguments sink lower. Plaintiff's experts overlook the obvious in arguing that Defendant lacks standing to challenge the attachment because it does not own the EFTs. ***Second Clarke Decl. ¶ 8; Second de Lisle Decl. at ¶9;*** *Plaintiff's Sur-Reply Mem.* at 10. On the contrary, Defendant has standing as the authorized manager of those assets, statutorily entrusted with their care and the duty to

avoid their waste. It is Defendant's affirmative responsibility to challenge the attachment on behalf of the assets' owner, the State. ***Third Song Decl. ¶ 14; Second Si Decl. ¶ 10.***

Picking up further downhill momentum, Plaintiff ludicrously argues that, since Defendant owns nothing, it may defy a judgment and the Court should immediately grant a declaratory judgment that all EOWPs' assets may be subjected to execution on a judgment against Defendant. ***Second Clarke Decl. ¶ 8***; *Plaintiff's Sur-Reply Mem.* at 19. To the contrary, the parties herein agree that the State has made the assets managed by each EOWP available to each respective EOWP's creditors. ***Second Clarke Decl. at ¶ 8; First de Lisle Decl. ¶¶ 25, 26; Jiang Decl. ¶¶ 14, 23; Second Si Decl. ¶ 9.*** Article 48 of the Civil Law provides:

> An enterprise owned by the whole people, as legal person, shall bear civil liability with the property that the state authorizes it to manage. An enterprise under collective ownership, as legal person, shall bear civil liability with the property it owns. A Chinese-foreign equity joint venture, Chinese-foreign contractual joint venture or foreign-capital enterprise as legal person shall bear civil liability with the property it owns, except as stipulated otherwise by law.

***Jiang Decl., Ex. 1.***

Notably, Chinese legislators say "manage" when they mean manage, and say "own" when they mean own. There is no ambiguity in any aspect of Chinese law about the fact that EOWPs manage assets, but do not own them. The State owns those assets.

Prof. de Lisle recognizes that EOWPs "bear civil liability with assets they are authorized to manage and operate," not own. ***First de Lisle Decl. at ¶ 26.*** There is no basis for suggesting that the assets Defendant manages would not be applied to pay a judgment in this case, or would be immune from post-judgment execution. *See* 28 U.S.C. § 1610(b) and (c).

Because Defendant is the authorized manager of the assets with which it operates, it is even more far-fetched for Plaintiff to argue that Defendant is guilty of fraud every time it signs a

charter party that grants a lien on sub-freights. *Plaintiff's Sur-Reply Mem.* at 18. This case is about immunity from pre-judgment attachment under Rule B. It is not about an argued waiver of immunity with respect to specific sub-freights by the express grant of a lien.

## C. Sinotrans supervises Defendant, but does not own it

Prof. Clarke opines that confusion arises between Chinese law and the "reality of economic relationships" because China's "political leaders and law drafters are not well versed in the subtleties in corporate organizational law." ***Clarke Second Decl. ¶ 11***. In the same breath, he acknowledges that China's government "prizes state ownership," and indeed deems it "critical." *Id.*

It may be that Chinese law, or perhaps only the Chinese language, lacks the refinement to appreciate the subtleties of western style corporate structure. More likely, it is only Chinese business persons and bureaucrats who fail to grasp western law's nuances. That explains the occasional usage -- by bureaucrats and business persons -- of the word "subsidiary" to describe an EOWP that is merely subordinate to another EOWP in a management hierarchy, but is not owned by the "head" company.[6] The word "subsidiary" may appear in filings and on web sites prepared by non-lawyer business persons and civil servants, but it does not appear in any statute governing EOWPs. As Prof. Si stated, the reference to "subsidiary" "is only for the matter of convenience or a misuse in a legal sense." ***First Si Decl. ¶ 32***.

[6] In his First Declaration, Prof. de Lisle cites a number of documents that refer to Sinotrans as the "head" or "general" company and to Defendant as the "subordinate" company. ***First de Lisle Declaration ¶¶ 37-40***. He argues that Defendant became fully a subsidiary of Sinotrans by virtue of a 1996 document. ***Id. ¶ 37***. But that document, like the ones before it, merely referred to Defendant as "subordinate" to the "head" or "general" company, not a "subsidiary." "Subordinate," of course, is consistent with a management or administrative hierarchy, without any ownership. The first use of the (translated) word "subsidiary" appears in a 2001 application by Sinotrans to form an "enterprise group," which referred to a long list of companies, including Defendant, as "group members (subsidiaries)." ***Id. ¶ 41***. This appears to be the earliest and clearest example of the ambiguous thinking linking the word "subsidiary" with "group member" or a subordinate entity.

Some instances of the confusion perceived by Prof. Clarke are the results of erroneous or biased translations. For example, in Ex. 19 to Mr. Chen's first Declaration, he translated "*chanquan guanxi*" to mean "ownership relationship," whereas it actually means "property right relationship." ***Third Song Decl. ¶ 7.*** As repeatedly stated in the statutes, regulations, and Defendant's memoranda, an EOWP exercises some property rights in assets as a management function, but does not own the assets. In the same Chen document, "*jituan gongsi*" is mistranslated as "parent company," whereas it actually means "group company." *Id.*

In Ex. 16 to Mr. Chen's First Declaration, "parent enterprise" is used instead of the more accurate "core enterprise," and "subsidiary" is used instead of the more accurate "subordinate" enterprise." ***Third Song Decl. ¶ 8.***

In his Second Declaration, Prof. Clarke states that a Tax Administration document on a web site calls Sinochart a "wholly-owned subsidiary" of Sinotrans. ***Second Clarke Decl. ¶ 15.*** However, that expression was used in the opening paragraph of the document, without reference to any particular company. Later in the document, a number of entities were named and collectively referred to as "member enterprise of a group" and "wholly holding shares." However, the latter is not a legal term under Chinese statutes and doesn't make literal sense. The term was used casually by the State Tax Administration. ***Third Song Decl. ¶ 6.*** "Wholly holding shares" is particularly nonsensical with respect to Defendant, because Defendant does not issue shares. ***Id.; Second Song Decl. ¶ 19.*** This is a good example of a bureaucrat's lack of sophistication in company structure, leading to the kind of confusion discussed above.

Plaintiff argues that the phrase "State-owned" is merely a figure of speech. ***First Clarke Decl. ¶ 23(b).*** In fact, it is the word "subsidiary" that is a figure of speech. "State-owned" and far more definitive statements that EOWPs and their assets are owned by the State are found in

the LEOWP and administrative regulations. If any bureaucrats or administrative regulations use the word subsidiary in an "ownership" context, they are superseded by the LEOWP, because it is a national statute. ***First Si Decl. ¶ 29***. Therefore, to give effect to the LEOWP's clear dictate, any conflict must be resolved by deeming "subsidiary," not "State-owned," to be an imprecise idiom.

There is no subtlety or inarticulateness whatsoever in Chinese policy or statutory law about who owns EOWPs and the assets they manage: the State does. There is just no room for a different conclusion and no legitimate reason not to take the LEOWP at "face value." ***Second Si Decl. ¶¶ 3, 6***.

Plaintiff previously argued that Defendant is only indirectly owned by the State (***First de Lisle Decl. ¶ 15***), but Prof. de Lisle's admits there is no concept of indirect ownership in Chinese law. ***Second de Lisle Declaration ¶ 21***. Rather, he says, the argument was offered for an American audience to suit an American mindset. ***Id.*** But State ownership of an EOWP and its assets does not derive from an American context and is not governed by American concepts. It is governed by Chinese statutes, not to mention China's Constitution.

Plaintiff's effort to alter the plain meaning of the LEOWP by arguing the existence of an occidental style "parent-subsidiary" ownership relationship between Sinotrans and Defendant is unavailing. The legal relationship between these entities is managerial only. ***Second Si Decl. ¶¶ 12, 36***. Sinotrans must approve any changes in Defendant's Articles of Association, approve appointments of Defendant's General Manager, and receive Defendant's accounting and statistical reports. ***Second Clarke Decl. ¶¶ 14; First de Lisle Decl. ¶¶ 44, 45***. None of these functions are necessarily ownership, as opposed to management, functions. Given the clarity of the LEOWP, the exercise of these functions must be construed consistently with the statute as management functions exclusively.

In his Second Declaration Prof. de Lisle asserts the LEOWP "says nothing specific either way about an EOWP's authority to own another enterprise." ***Second de Lisle Decl. ¶ 20.*** This is disingenuous. The statute says that an EOWP does not own anything, but only manages the State's property, and, further, all EOWPs are owned by the State. Therefore, one EOWP cannot own another EOWP. ***First Si Decl. ¶ 32; Second Si Decl. ¶ 16; Second Song Decl. ¶ 9.*** As Mr. Song put it: "It would either be an enterprise owned by the whole people, i.e. by the State, or it would not be an EOWP at all." ***Second Song Decl. ¶ 23.*** There is nothing ambiguous about that. As pointed out by Prof. Si, there simply is no doubt under the LEOWP that, as Plaintiff's witnesses admit Defendant is an EOWP, it is owned by the State, and all its property is owned by the State. ***First Si Decl. ¶ 29.***

Plaintiff's witnesses suggest that Defendant's witnesses are incorrect in saying that the government can reassign the administration of one EOWP to another EOWP without compensation, and note that Defendant did not submit a supporting statute. ***Second Chen Decl. ¶ 38.*** Defendant submitted no statute because the proposition should have been inarguable. In light of Mr. Chen's surprising challenge, Mr. Song's Third Declaration submits SASAC's Notice on Printing and Distributing the Interim Measures for the Administration of **Gratuitous Transfer** of State-owned Property Rights of Enterprises, and some examples of gratuitous transfers of EOWPs to other EOWPs. ***Third Song Decl. ¶¶ 17-18, Exs. 2-3; Second Si Decl. ¶ 17.***

Prof. Clarke asserts that Defendant's history is not relevant to this motion; its current status is what is relevant, and Defendant agrees in large part. ***Second Clarke Decl. ¶¶ 4, 21***; *Plaintiff's Sur-Reply Mem.* at 6. If, as Plaintiff now asserts, this subject is a "red herring," it is Plaintiff's red herring. Mr. Chen's First Declaration devoted five pages to it (pages 8-12), compared to two sentences in paragraph 7 of Mr. Song's First Declaration and one sentence in

paragraph 3 of Ms. Xing's Declaration. Mr. Chen's Second Declaration also spent nine pages on Defendant's history and financing, and Mr. de Lisle's Second Declaration devoted three single-spaced pages to it. Even Plaintiff's Sur-Reply Memorandum devotes the better part of five pages to it while simultaneously claiming it is irrelevant. *Plaintiff's Sur-Reply Mem.* at 3-8.

"Red herring" or not, Defendant could not afford to stand mute in the face of Plaintiff's erroneous recitation of the facts and then be accused of admitting Plaintiff's version and whatever conclusions Plaintiff argues should be drawn from that. Prof. Si has clearly set forth Sinochart's history, step by step, as it appears from the documents. ***Second Si. Decl. ¶¶ 18-36***. Whether Sinochart was created in 1955, 1993, or some time in between, the undisputed fact is that it always was and currently is State-owned. Plaintiff merely argues, fallaciously, that "State-owned" doesn't mean what it says, but refers to some sort of indirect ownership that is not adverted to in any Chinese statute or regulation (that argument has now been disowned by Prof. de Lisle at ¶ 21 of his Second Declaration), or some "reality" that exists only in the minds of Plaintiff's witnesses and would be inconsistent with Chinese law.

The reason for Plaintiff's concern about when Sinochart was created seems to be centered on whether its capital came from a government ministry in 1955 or from Sinotrans in 1993. In truth, it makes no difference. Any capital invested in Defendant by Sinotrans was the State's property, required the State's prior approval, and was invested on behalf of the State. ***Second Song Decl. ¶¶ 9, 11, Ex. 8; First Si Decl. ¶ 29; Wang Decl. ¶¶ 23, 31; Second Si Decl. ¶¶ 33-36***. Additionally, contrary to Prof. de Lisle's intimation, retained earnings are not the private property of an EOWP, but are the property of the State. ***Second de Lisle Decl. ¶ 29; see also Wang Decl. ¶ 14***. Further, Sinochart's capital, including its retained earnings, is registered as

State-owned property, and that is the final determinant of the legal status of those assets. ***Third Song Decl. ¶ 10; Second Song Decl. ¶ 15.***

Finally, as with any EOWP in a core group of EOWPs, Sinochart's earnings are accounted for in a consolidated accounting by the core company of the group to the State Council or its designated government agency, accompanied by each individual EOWP's financial statements. ***Third Song Decl. ¶ 29.***

Plaintiff is trying to "prove" by argument what it cannot prove by evidentiary facts. Plaintiff's conclusions cannot overcome the clear language of the applicable statutes and regulations, and the registration documents establishing the State-owned status of both Sinochart as a juridical entity and of its assets.

**POINT II**

**PLAINTIFF MISCONSTRUES DEFENDANT'S "INSTRUMENTALITY" ARGUMENT UNDER THE FSIA ORGAN PRONG**

Plaintiff misconstrues Defendant's argument that it qualifies as an '*instrumentality*' under the "organ" prong of 1603(b)(2). Sinochart was created for a national purpose and to engage in public activity. Sinochart qualifies as an organ of the PRC, and is its agency or instrumentality.

"Section 1603(b)(2) is two-pronged as it specifies that an entity may be an 'agency' or 'instrumentality' by reason of being owned by a foreign state or being its organ." *USX Corp. v. Adriatic Ins. Co.*, 345 F. 3d 190, 199 (3d Cir. 2003).

> Under the organ prong, as opposed to the majority ownership prong of section 1603(b)(2), a foreign state might only own 10% of an entity; it might own directly 50% of the entity; or it might own even 100% of a holding company that owns 100% of the entity.

*Id.* at 209. For an entity to qualify as an organ of a foreign state, it must engage in a public activity on behalf of the foreign government. *Murphy v. Korea Asset Management Corp.*, 421

F.Supp.2d 627, 645-646 (2d Cir. 2005); *USX Corp.*, 345 F.3d at 208; *EOTT Energy Operating Ltd. P'Ship v. Winterthur Swiss Ins. Co.*, 257 F.3d 992, 997 (9th Cir. 2001).

In *USX Corp.* the court held that although the defendant entity was operating "solely as a runoff company," it did so only because the government positioned it to do so and only under the supervision of the government. *USX Corp.*, 345 F.3d 190. at 211. The court held that the defendant entity was an organ of the Irish government even though Ireland's ownership of the defendant entity was through a tiered arrangement. *Id.* at 213. The court considered several factors in determining whether the defendant entity qualified as an organ. One of these factors was that because the government's acquisition of the entity fulfilled an important government interest; the defendant entity was therefore engaging in a public activity on behalf of the government. *Id.* at 211. Further, although the government did not directly fund the defendant entity, the government "had arranged and provided financial support" for the entity. *Id.* at 212.

Similarly, Defendant was created for a national purpose, i.e. national transportation. As Prof. Si shows in his Second Declaration, in the early 1950's, the Chinese Government set up "China Overseas Transportation" and "China Land Transportation Company" to break the transportation block imposed by western counties. ***Second Si Decl. ¶ 19.*** These entities undertook the responsibilities of transporting strategic materials and resources. ***Second Si Decl. ¶ 19.*** In April, 1955, China Land Transportation Company was restructured to "China National Foreign Trade Transportation Company" ("Sinotrans") and "China Overseas Transportation Company" was restructured to "Sinochart." ***Second Si Decl. ¶ 19.*** In May of 1955, Sinochart and Sinotrans were one institution with two name boards. But, Sinochart still remained an independent legal entity and carried out its independent business. ***Second Si Decl. ¶ 19.***

Sinochart has played an important role in China's history of sea transportation and ship chartering. ***Second Si Decl.* ¶ *19*.** Sinochart was created to serve the public interest in the government, including national transportation and ship chartering.

Plaintiff cites to several cases about what it considers to be "the appropriate analysis" for determining whether an entity qualifies as an organ under 1603(b)(2). *Plaintiff's Sur-Reply Mem.* at 12. However, as the Second Circuit has held, there is no clear-cut test for determining whether an entity qualifies as an "organ." See *Murphy*, 421 F.Supp.2d at 641.

> There is no definitive test for determining whether an entity is an 'organ' for purposes of Section 1603(b)(2); to the contrary, because entities that are within reach of 1603(b)(2) are likely to be quasi-governmental in character – in other words, they are likely to share characteristics both with governments or their agencies and non-governmental entities- the analysis is necessarily *ad hoc.*

*Id.* Moreover, the *Murphy* court held: "[t]he term 'organ' should be interpreted broadly to reflect Congress' intent that it be difficult for private litigants to bring foreign governments into Court, thereby affronting them." *Id.* at 640.

"[The] ultimate question for purpose of FSIA 'organ' status is whether the entity engages in a public activity on behalf of the foreign government". *Murphy*, 421 F. Supp. at 646. As Plaintiff's expert, Mr. Chen, points in his First Declaration, Sinochart was created by Sinotrans for the purpose of carrying out its chartering business. ***First Chen Decl.* ¶¶ *36, 62, 71*.** There is no dispute that Sinotrans is directly and wholly owned by the PRC government. Therefore, Sinochart qualifies as an "organ" under 1603(b)(2), regardless of any "tiered ownership" which Sinochart denies in any event for all of the reasons set forth above.

**CONCLUSION**

For all of the foregoing reasons, and those set forth in Defendant's Main and Reply Memoranda of Law and supporting Declarations, it is clear that Defendant is an "agency or

instrumentality" under the United States Foreign Sovereign Immunities Act, 28 U.S.C. section 1603(b). Thus, Defendant and its property are entitled to immunity in this action. Accordingly, the September 20, 2007 Ex Parte Order must be vacated.

Respectfully submitted,

The Defendant,
CHINA NATIONAL CHARTERING CORPORATION

By:______________________

Patrick F. Lennon, Esq.
Anne C. LeVasseur, Esq.
LENNON MURPHY & LENNON, LLC
The GrayBar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 (phone)
(212) 490-6070 (fax)
pfl@lenmur.com
acl@lenmur.com

**AFFIRMATION OF SERVICE**

I hereby certify that on March 14, 2008, a copy of the foregoing Supplemental Memorandum of Law was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

______________________
Patrick F. Lennon