UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------X
OCEAN LINE HOLDINGS LIMITED       :
                                  :
            Plaintiff,            :    07 Civ. 8123 (DC)
                                  :
    - against -                   :
                                  :
CHINA NATIONAL CHARTERING         :
CORP. a/k/a SINOCHART,            :
                                  :
            Defendant.            :
-------------------------------------------------------X

**THIRD DECLARATION OF SONG DIHUANG
IN SUPPORT OF DEFENDANT'S
MOTION TO VACATE MARITIME ATTACHMENT**

I, Song Dihuang, declare under penalty of perjury of the laws of the United States of America as follows:

1. I am a partner of Commerce & Finance Law Offices, of 6th Floor, A12 Jianguomenwai Avenue, Beijing 100022, the People's Republic of China, the Chinese Counsel to the Defendant in this action, China National Chartering Corp. ("**Sinochart**") and I make this declaration based upon my own personal knowledge and upon documents that I believe to be true and accurate.

2. I submitted my first and second Declaration on the subject case on October 12 and November 30, 2007 respectively. I now submit my 3rd Declaration on the subject case.

3. I have read and considered the following documents which were provided to me:

(1) Second Declaration of Weidong Chen submitted by the Plaintiff together with its exhibits;

(2) Second Declaration of Jacques deLisle;

(3) Second Declaration of Donald Clarke.

- 1 -

4. First of all, it appears that all experts for the Plaintiff have agreed that Sinochart is an Enterprise Owned by the Whole People ("EOWP") under People's Republic of China ("PRC") law, and particularly under the PRC Law on EOWP which is still in effect and applicable to this very dispute. As can also be seen in paragraph 6 below, the PRC "Company Law" has application with regard to enterprise groups on the "parent/subsidiary" corporate legal model, whereas different terms of "group company/subordinate enterprise" may be used in the EOWP system and the Law on EOWP does not fit neatly in the Company Law framework, and hence there is a gap in PRC law. Further, as mentioned in my Second Declaration (*see Second Song Declaration paragraph 15*), according to the Transformation of the Business System of Industrial Enterprises Owned by the Whole People 1992, it is clearly provided that with respect to an EOWP, assets of such an enterprise are owned by the whole people, namely owned by the State. Thus, despite the gap in the PRC law, when it concerns ownership of an EOWP such as Sinochart, there is no ambiguity or room for debate – it is wholly owned by the Chinese State.

5. To further remove any doubt, I attach another piece of PRC regulations – the Interim Measures on Ascertainment of Property Rights of State-owned Assets and Resolution of Property Right Dispute 1993. *See "Interim Measures 1993," annexed hereto as Exhibit 1.* Firstly, it has a clear definition of "property right" and one will easily appreciate the difference between a property right and ownership. Thus, whilst the ownership of state-owned assets in an EOWP always lies with the whole people (provided it is so registered with SASAC), an EOWP may be authorized to possess other rights associated with the ownership so as to operate and manage the enterprise as an independent "enterprise legal entity" (as opposed to the "company legal entity" under PRC Company Law). Article 6 of the Interim Measures 1993 reads: "The People's Republic of China is the sole subject of the ownership right of the state-owned assets.

The State Council exercises the ownership right of the State-owned assets on behalf of the State. The State adopts the method of administration of the State-owned assets by different levels and different divisions. The differentiation and variation on the administrative subjects at different levels and divisions is not the separation or transfer of the State-owned property right."

6.   I have read Prof. Clarke's Second Declaration, and he relies upon a document on the State Tax Administration website to support the assertion that "This document . . . and lists Sinochart as a wholly-owned subsidiary (*quanzi zigongsi*) of Sinotrans" (see paragraph 15 of Clarke 2nd Declaration). I have checked the website and do not find anything that has specifically listed Sinochart as "*quanzi zigongsi*" of Sinotrans. I agree that "*quanzi zigongsi*" can be translated as "wholly-owned subsidiary." However, I only found ONE reference to "*quanzi zigongsi*" in paragraph 1 of the document, which I quote below:

> "Sinotrans Group and all its *quanzi zigongsi*, shall, before end of 2001, still pay enterprise income tax on a consolidated basis according to the Notice on Uniform Calculation of Tax, Administration According to Different Level, Prepayment of Tax at Local Area, and Consolidation in Settlement of Income Tax (guo sui fa 2001 No. 13)"

In paragraph 2 of the same document together with the attachment, it is clear that Sinochart was listed as one of the 23 *"jituan chengyuan"* which are *"quanzi konggu"* of the Sinotrans Group. If this was the source of his conclusion, firstly, I do not think it correct to translate *"jituan chengyuan"* as "subsidiary," as Mr. Clarke may have impliedly done in his Second Declaration. It simply means "member enterprise of a group". Secondly, "*quanzi konggu*" shall mean "wholly holding shares" literally translated. However, there is no such legal term under Company Law, let alone the PRC Law on EOWP. It is only liberally or casually used

by the State Tax Administration in this document and/or a number of other documents. Strictly speaking, it does not make any legal sense if these two words are put together, though it could be liberally used to mean a group company/subordinate enterprise as well as "parent/wholly-owned subsidiary" relationship. Indeed, under PRC company laws, there are legal terms like "wholly State-owned company," "State-owned company with holding shares" (including of absolute holding share and relative holding shares), as well as company with minor shares by the State. However, it should be emphasized that these terms employed in the Company Law have absolutely no application to Sinochart because, as accepted by all of the Plaintiff's experts, Sinochart is an EOWP that is not subject to the Company Law, which has no application to it. In addition, Sinochart is not a company owned by shareholding, but rather is an "enterprise legal person" that is "owned by the whole people" that is the State. Thus, use of terminology such as "shareholding" or "holding shares" is incongruous with regard to Sinochart

Thirdly, "Sinotrans Group" is NOT a legal entity at all. It is clear that the State Tax Administration actually refers to Sinotrans – the core enterprise of the Sinotrans Group.

Thus, I could only say that the terms were liberally or casually used by State Tax Administration in this document, and Sinochart should best be described/interpreted as one of the "*ziqiye*" (English: "subordinate enterprise") of Sinotrans.

7. I refer to Exhibit 19 of Mr. Chen's first Declaration, the 1996 PRC Guidelines on the Authorized Operation of State-Owned Assets of Enterprise Group. However, I submit that Mr. Chen has mis-translated the Guidelines. Firstly, his translation of "*chanquan guanxi*" in Chinese to "ownership relationship" in English is not accurate. The proper English translation is: "property right relationship." Secondly, he translated "*jituan gongsi*" in Chinese to "parent company" in English. The proper English translation is simply "group company." According to

the Interim Measures 1993, property right shall "refer to assets ownership and any such rights associated with the assets ownership as management right, right of utilization, excluding right of obligation." Therefore, the Guidelines were not intended to transfer the ownership of any State-owned assets to any enterprises who actually invest - on behalf of the State.

8. There are some other examples of inaccurate translation, which further demonstrate the Plaintiff's failure to explain the difference between certain legal terms. For instance, China National Foreign Trade Transportation (Group) Corporation ("Sinotrans") is an EOWP. ***See Sinotrans Business License, Exhibit 5 to 1st Chen Declaration***. "Sinotrans Group" is registered as an enterprise group in accordance with the relevant regulations. In the letter of 26 August 1993 from the SAIC, the SAIC approved the application from Sinotrans (the EOWP) as a core enterprise to set up Sinotrans Group. The core enterprise used in this letter has been wrongfully translated by Mr. Chen as the "parent enterprise." ***See 1st Chen Declaration, Exhibit 16***. For avoidance of any ambiguity, as a matter of PRC laws, an "enterprise group" is not a legal entity, however, it requires one "core enterprise" and at least five member enterprises as "*ziqiye*" which is properly translated as "subordinate enterprise" in this context. In case of companies set up under Company Law, the core enterprise can be referred to as "*mugongsi*" i.e. "parent company," and its member enterprises as "*zigongsi*" i.e. "subsidiary." Obviously, "*ziqiye*" was often translated by plaintiff as "subsidiary" which is inaccurate or otherwise misleading.

9. The Exhibit to the 2nd Declaration of Peter Gutowski can very well illustrate such difference. This Exhibit is an extract from Sinotrans Shipping Ltd's public disclosure. Sinotrans Shipping Ltd. is a Hong Kong company that is completely dissimilar to Sinochart in that it is not an EOWP, but rather a Hong Kong publicly traded company. Sinotrans Group Corporation is an

authorized institution to invest on behalf of the State. *See Exhibit 2 annexed hereto*(which is publicly available at SAIC). Therefore, the use of the phrase "parent/subsidiary" with respect to the relationship between Sinotrans Group Corporation and Sinotrans Shipping Ltd. *does* refer to legal ownership, whereas the use of "parent/subsidiary" in respect of the relationship between Sinotrans Group and Sinochart, because they are both EOWPs, properly refers to "group company/subordinate enterprise" and *does not* refer to legal ownership as Plaintiff has misleadingly implied.

10.     I should also discuss paragraph 14 on pages 4 and 5 of Prof. Clarke's first Declaration. *See Clarke 1st Declaration paragraph 14.* It refers to three documents at footnote number 4 to support his proposition that an <u>investor</u> in a State-owned enterprise can be another State-owned enterprise, and I wish to comment on these documents as follows: while it is correct that an investor in a State owned enterprise can be another State owned enterprise, such investment is subject to prior approval by the government. Further, any such assets to be invested must firstly be registered as State-owned assets with appropriate level of SASAC under Registration of Property Right of State Owned Assets before such a new EOWP could possibly be established or registered with the local Administration for Industry and Commerce ("AIC"). Thus, although the actual capital or assets may come from a specific State-owned enterprise, legally, it is deemed to be an investment on behalf of the State, because all these capitals or assets must be registered as State-owned assets and that was the condition for registration of an EOWP according to the cited document. Finally, the cited documents contradict with Plaintiff's experts' views that EOWP form is outdated, since even in 2007, the Beijing AIC still publicizes the formalities on how to register an EOWP with the Beijing AIC (which even Plaintiff's experts acknowledge).

11. I have read the criticism by Plaintiff's experts that Sinochart failed to respond to the Plaintiff's argument that an EOWP must be "owned" by a particular government entity or council. In other words, they contend that an EOWP is not simply owned abstractly by the Chinese government, but rather by a particular government agency, council, etc. This is manifestly wrong. In a number of legislations (including the Interim Measures 1993 above), it is clearly provided that all assets are owned by the People's Republic of China, NOT by any particular government entity or council. However, State Council exercises the ownership right on behalf of the State. In turn, such right is either exercised by the SASAC under the State Council and/or different levels of similar authority (provincial level, municipal level etc). This is exactly the legal frame work of how the State-owned assets are managed and supervised through different level by different divisions. Plaintiff's experts have made obvious mistakes and wrongfully thought that those assets administrated and supervised by a different government entity or council were owned by those different government entity or council.

12. Therefore, I believe it is clear and unambiguous that an EOWP is owned by the People's Republic of China (the State), no matter whether the EOWP is a so-called "first-tier" or "second tier" or even "third-tier enterprise" of an enterprise group. Such tiered mechanism under corporate structure in China is merely for purpose of administration through different levels and in no way affects or divests the ownership of the EOWP by the whole people, that is to say the PRC or Chinese State. In any event, the use of the designations "first tier" or "second tier" in relation to EOWPs does not support the argument made by Plaintiff's experts that the PRC's ownership of Sinochart is somehow "indirect." To the contrary, as an EOWP, Sinochart can only be owned by the State and such ownership is direct and complete.

13. In other words, there is no doubt that all assets of Sinochart have been ascertained according to the PRC laws and regulations as "State-owned assets," and have also been properly registered as such. The fact that Sinotrans is the "department in charge" of Sinochart merely indicates such level of administration over Sinochart in line with the regulations I have discussed above. Sinotrans exercises the right (and also an obligation towards the State) to supervise the management and utilization of these State-owned assets. It is therefore entirely incorrect for Plaintiff and its experts to suggest that the assets of Sinochart or Sinochart itself are owned by Sinotrans, or that Sinochart is only "indirectly" owned by the Chinese government, which is an assertion they have failed to support with anything other than their personal views.

14. I was very surprised at the Plaintiff's suggestion in its supplemental papers that merely because the ownership of the assets lies with the PRC the EOWP that is empowered to possess and administer the enterprise is not entitled to sue in its own name and/or otherwise defend any lawsuit whenever a commercial dispute arises. This clearly indicates their misunderstanding regarding Chinese laws in respect of separation of ownership of property rights and other rights with regard to property. An EOWP is certainly empowered to deal with the State-owned assets which it has been authorized by the State to operate and manage as such. An example involving the ownership of the land in China, which is always owned by the State (except for the lands in the rural areas which are "collectively owned"), will help illustrate this point. Ownership of land in China can never be changed. However, after amendment to the PRC Constitution and other relevant laws, land _use_ rights can be assigned ("*churang*") against payment, on which a factory or other kind of structures can be built and/or sold. Such land _use_ right can also be mortgaged, even though any particular enterprise or individual does not own the

land at all. The land _use_ right can even be auctioned in case such enterprise or individual cannot repay the indebtedness.

15. In any event, both Mr. Chen and the Plaintiff's other experts agree that according to the _Law of EOWP_, the EOWP and its assets are owned by the whole people, but suggest the issue is not as simple as the written law states it to be. *See 2nd Chen Declaration paragraph 34.* It is notable that whereas Sinochart's experts, including myself, have relied on the PRC Law on EOWP (which shall prevail over any administrative rules and regulations by State Council and/or other government authorities in case of any conflict), whereas Plaintiff's experts fail to offer any actual legal authority to support their notion that a more "complicated" or "realistic" construction is required to truly understand Sinochart's ownership.

16. Although Plaintiff's experts all deny this, I still find that they are arguing as if the PRC Company Law or even U.S. corporate laws apply. In any event, they conceded that the only PRC law to apply to an EOWP is the PRC Law on EOWP. Nonetheless, it appears that they have thought that only their conclusion is logical and correct, as they either refuse or otherwise have difficulties to adhere to the plain application of the PRC Law on EOWP for determination of the ownership of an EOWP.

17. I was also astonished that Mr. Chen complained about my failure to provide any law or authority to support my view on gratuitous transfer of property rights of state-owned assets, as referred to in paragraph 19 of my Second Declaration. *See 2nd Chen Declaration paragraph 38.* Mr. Chen further asserted that it was only "in extremely unusual circumstances, e.g. in case of war or other emergency, the government may order transfer or otherwise dispose of any property rights of a subsidiary by administrative order". *See 2nd Song Declaration paragraph 19 and 2nd Chen Declaration paragraph 40.* Again, here the "subsidiary"

presumably refers to "subordinate enterprise" or "*ziqiye*," since "subsidiary" does not exist in the context of the Law on EOWP. Since it is quite common to see such gratuitous transfer among EOWPs or wholly State-owned companies, I had thought there was no need to identify either of the laws. I now attach a copy of the Interim Measures on Gratuitous Transfer of Property Rights of State-owned Assets. ***See Exhibit 3 annexed hereto.***

18. I also attach a copy of a summary of some examples of such gratuitous transfers. ***See Exhibit 4 annexed hereto***. This information can be obtained on the website of the SASAC.

19. I do not understand what Mr. Chen meant by describing the term "economic nature" as "outdated" in paragraph 25 of his Second Declaration. ***See Chen 2nd Declaration paragraph 25.*** It is still an effective legal term under PRC laws. Each and every EOWP would still have to be so described as to its economic nature. Given the documents cited by Prof. Clarke, any EOWP setup and registered with Beijing AIC will necessarily have to be so described too (even in 2007).

20. For the sake of good order, I also confirm that all the documents as attached to my Second Declaration, except for the Certificate of Registration of the Property Rights of the State Assets of Sinochart (*see 2nd Song Declaration, Exhibit 8*) and the business licence of Sinotrans Chartering Corporation (*see 2nd Song Declaration, Exhibit 4*), which were provided to me by Sinochart, are publicly available and any Chinese licensed lawyers can obtain a copy of the documents against payment of a search fee plus the photocopying charges from State Administration for Industry and Commerce ("SAIC") and Beijing Administration for Industry and Commerce ("Beijing AIC"). The file of Sinotrans Chartering Corporation had been kept at Haidian office of Beijing AIC after its de-registration. Therefore, it is a surprise that Plaintiff's Beijing lawyer was unable to obtain documents of Sinotrans Chartering Corporation.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct.

Executed on 14th March, 2008 in Beijing, China.

_____
SONG DIHUANG