UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
OCEAN LINE HOLDINGS LIMITED,   :   07 Civ. 08123 (DC)

               Plaintiff,   :   **MEMORANDUM OF LAW
IN SUPPORT OF MOTION FOR**
- against -   :   **SECURITY FOR COSTS PURSUANT
TO SUPPLEMENTAL RULE E(2)(b)**

                                          :

CHINA NATIONAL CHARTERING
CORPORATION,   :

             Defendant.   :
------------------------------------------------------X

      Defendant, CHINA NATIONAL CHARTERING CORPORATION (hereinafter "Sinochart" or "Defendant"), by its undersigned counsel, Lennon, Murphy & Lennon, LLC, submits the within Memorandum of Law in Support of its Motion for Security for Costs pursuant to Rule E(2)(b) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rule E(2)(b)"). For the reasons set forth herein, and in the accompanying Declaration of Patrick F. Lennon (hereinafter referred to as "LennonDeclaration"), the Defendant's Motion should be granted.

## PRELIMINARY STATEMENT

      Sinochart's Motion should be granted as its request for security falls squarely within the meaning and purpose of Supplemental Rule (E)(2)(b). Pursuant to Supplemental Rule E(2)(b), a plaintiff may be ordered to post security for a defendant's costs, <u>including the premium for bonds obtained to release an attachment</u>. Here, the Plaintiff obtained security for its alleged claims via maritime attachment of Sinochart's property in the Southern District of New York pursuant to Supplemental Rule B. In order to procure the release of its property under attachment within the District, Defendant made extraordinary efforts to reach agreement with Plaintiff on alternative

substitute security in lieu of the posting of costly surety bonds. However, Plaintiff ultimately refused Sinochart's proposals and Sinochart was left with no alternative but to post the surety bonds in the respective amounts of $127,520.838 and $50,000.00 in order to ensure the release of its property. In so doing, it incurred and will continue to incur substantial costs in relation to the posting and maintenance of the bonds during the pending substantive dispute between the parties.

Plaintiff was given the option of accepting as substitute security a bank guarantee and a letter of undertaking from an internationally respected marine insurer, which would have been less costly than the posting of the surety bonds and would have provided an equivalent assurance of satisfaction of any eventual judgment in Plaintiff's favor. However, Plaintiff rejected each and every one of Plaintiff's proposals and, ultimately – after literally months of negotiations, rejected Sinochart's final proposal which was a proposal that was tailor made to meet all of Plaintiff's terms and conditions! It would be inequitable to deny Sinochart security for its recoverable costs in these circumstances where Plaintiff: (1) has already obtained full security for its alleged claims in excess of $177 million; (2) denied Sinochart's reasonable offers to post alternative, less costly substitute security; (3) caused Sinochart to incur substantial costs in posting the surety bonds; and (4) left Sinochart entirely unsecured for both its substantive counterclaims and costs. Plaintiff's conduct is quintessentially "all take and no give," but the Supplemental Rules require equality of security. Hence, Sinochart's motion must be granted, and especially because Plaintiff had numerous opportunities to avoid putting Sinochart in the position of incurring the costs of the surety bonds in the first place.

When Sinochart prevails in the underlying substantive dispute, its costs for obtaining/maintaining the bond in this action will be granted. Thus, Sinochart requests that this

Court order Plaintiff to post security for its costs as set forth herein within ten days from such Order pursuant to Supplemental Rule E(2)(b).

## FACTS

The Plaintiff, OCEAN LINE HOLDINGS LIMITED (hereinafter "Ocean Line" or "Plaintiff") commenced this action sounding in admiralty seeking process of maritime attachment and garnishment (hereinafter "PMAG") pursuant to Supplemental Admiralty Rule B on September 17, 2007. Plaintiff's Complaint prayed for the issuance of an ex parte Order authorizing the issuance of a PMAG against Sinochart's property located in this District in the amount of $177,520,838.00 inclusive of estimated interest, costs and attorneys fees. *See a copy of Plaintiff's Complaint (without exhibits) attached as Exhibit "1" to the Declaration of Patrick F. Lennon.* Pursuant to service of the PMAG, various garnishee banks restrained Sinochart's property in the approximate amount of $24,564,993.12 in the Southern District of New York.

Sinochart subsequently offered to post security for the full amount of Plaintiff's claims ($177,520,838.00) in order to procure the release of its property. Particularly, Sinochart offered to secure Plaintiff's claims by way of two guarantees (one Letter of Undertaking from the internationally well-respected marine insurer SKULD for the sum of $50,000,000.00 and one guarantee from the Bank of China for the balance, *i.e.* $127,520,838.00). *See Letter from Patrick F. Lennon dated February 4, 2008 annexed to Lennon Declaration as Exhibit "2."* However, Plaintiff unreasonably declined to accept them. *See E-mail from Patrick F. Lennon confirming open and unconditional offer for security dated February 5, 2008 and E-mail from Plaintiff's counsel, Peter Gutowski, failing to accept offer dated February 4, 2008 annexed to Lennon Declaration as Exhibits "3" and "4" respectively.*

3

In fact, Sinochart also made numerous attempts to address Plaintiff's alleged issues/concerns with the offers of security, but to no avail. Plaintiff simply refused to negotiate substitute security with Defendant in good faith as is exemplified by the correspondence between the parties' counsel. *See E-mail from Patrick F. Lennon dated February 5, 2008 annexed to Lennon Declaration as Exhibit "5."* Oddly enough, Plaintiff's main objection to the security seemed not to be based on the *form* of that security, but instead on the *number* of guarantees offered. *See E-mail from Plaintiff's counsel dated February 6, 2008 annexed to Lennon Declaration as Exhibit "6."* Plaintiff took issue with the fact that two guarantees were being offered, not one, but expressed no concern whatsoever that Sinochart posted two surety bonds, not one.

The number of bonds or guarantees to be used as security is not by itself a valid reason to refuse security proffered by a defendant. This is exemplified by the fact that in this case, the Court ultimately ordered Plaintiff to accept two bonds as security for its claims and in fact Plaintiff stipulated that both bonds were acceptable.

In light of the foregoing, Sinochart submits that Plaintiff's refusal to negotiate alternative substitute security in good faith and its insistence that Sinochart offer one single guaranty or letter of undertaking was a thinly veiled pretext to avoid the resolution of this issue, allowing Plaintiff to continue to serve the attachment and disrupt Sinochart's business activities, all the while steadfastly resisting providing Sinochart with countersecurity, when Sinochart was offering perfectly acceptable forms of security. *See E-mail from Patrick F. Lennon dated February 6, 2008, E-mail from Patrick F. Lennon dated February 7, 2008, Response from Plaintiff's Counsel dated February 11, 2008 and E-mail from Patrick F. Lennon dated February 11, 2008 annexed to Lennon Declaration as Exhibits "7," "8," "9," and "10" respectively.*

Plaintiff's true motives in refusing the security proffered by Sinochart were made evident by its continued efforts to amend the Order of Attachment while at the same time refusing to accept valid substitute security being offered to it. *See E-mail from Plaintiff's counsel dated February 11, 2008 annexed to Lennon Declaration as Exhibit "11."* As revealed by Exhibit "11," Plaintiff remained intent on obtaining further leverage over Sinochart when it had the opportunity to resolve the security issue amicably. Supplemental Rule E(2)(b) was undoubtedly put in place to provide redress for such behavior. If a plaintiff wants to deny an offer of perfectly valid security, it must accept the consequences of counter securing the defendant for the incident costs which it incurs in posting bonds.

As Plaintiff refused to accept the guarantees Sinochart offered on the exact terms and conditions Plaintiff demanded, on or about March 7, 2008 Sinochart was left with no alternative but to post two surety bonds in order to ameliorate the continued interruptions to its business as a result of the attachment order. Plaintiff thus became fully secured on its claims. If Plaintiff succeeds in the underlying matter, it will be made whole. In stark contrast, while Sinochart has made a Motion for Countersecurity on its substantive counterclaims, it currently remains entirely unsecured for such counterclaims and the costs of posting the surety bonds. Unlike with the Plaintiff, if Sinochart succeeds in the underlying matter, it has no security for its claims and no assurance whatsoever that it will be made whole. Such a discrepancy in security is inequitable and not countenanced by the Supplemental Rules.

As a result of posting the bond, Defendant incurred and/or will incur the following costs:

Bond costs (at 1% of the total amount of the bond for five years):   $8,876,041.90

6% interest on bond costs over five years (estimated time to
resolve claims):   $1,597,687.64

5

|  |  |
|---|---|
| Bank charges for providing undertaking/collateral required by Surety company over five years: | $2,231,614.66 |
| 6% interest on bank charges over five years: | $   401,690.64 |
| **Total:** | **$13,107,034.84** |

Had Plaintiff accepted Sinochart's offer to provide guarantees in lieu of the bonds, as described above, Sinochart would not have been forced to incur the substantial cost of posting the bonds to procure the release of its property. However, Plaintiff did refuse, and pursuant to Supplemental Rule E(2)(b) Sinochart is clearly entitled to obtain security for those costs so that it remains on "equal footing" with Plaintiff in respect of security.

## ARGUMENT

### POINT I

**PURSUANT TO SUPPLEMENTAL RULE E(2)(b) SINOCHART IS ENTITLED TO SECURITY IN THE AMOUNT OF $13,107,034.84 FOR ITS COSTS IN RELATION TO POSTING SURETY BONDS**

Supplemental Admiralty Rule E(2)(b) provides in relevant part as follows:

> The court may. . .require the plaintiff, defendant, claimant, or other party to give security, or additional security, in such sum as the court shall direct to pay all costs and expenses that shall be awarded against the party by any interlocutory order or by the final judgment, or on appeal by any appellate court.

*See* Supplemental Admiralty Rule E(2)(b).

The Second Circuit Court of Appeals has confirmed that a trial court has broad discretion to order a party to post security for costs pursuant to Supplemental Rule E(2)(b). Further, the Court clarified that such costs may include the premium for bonds obtained to release an attachment. *See Result Shipping Co. v. Ferruzzi Trading USA*, 56 F.3d 394, 401 (2d Cir.1995).

The case of *Rolls Royce Indus. Power (India) v. M.V. Fratzis M.*, 1996 U.S. Dist. LEXIS 4907 (S.D.N.Y. Apr. 15, 1996) takes this holding further and finds that where the security posted by defendant is not being held in an escrow account, a court can and should order a plaintiff to post security for defendant's costs relating thereto under Supplemental Rule E(2)(b). Particularly, in *Rolls Royce*, the defendant posted a letter of credit in order to procure the release of its funds. In addressing Defendant's motion under Supplemental Rule E(2)(b), the Court found that it was only fair to direct the plaintiff to provide security for the costs relating to posting of the letter of credit so defendant may be made whole should it prevail.

Here, as a result of Plaintiff's unreasonable refusal to accept reasonable and far less costly substitute security, Sinochart posted two bonds in the total amount of $177,520,838.00 in order to lift the attachment. As Sinochart was forced to post bonds to procure the release of its funds, and the provision of security would be equitable, it is entitled to the security it seeks herein.

## POINT II

### PLAINTIFF'S ATTACHMENT SHOULD BE VACATED IF IT FAILS TO PROVIDE SECURITY FOR SINOCHART'S RECOVERABLE COSTS

The failure of a party to post security where such party is already benefiting from security on its claim would violate the goal of establishing 'equal footing' of the parties *vis-à-vis* reciprocal security. *See Result Shipping, supra.* An acknowledged remedy for such a failure is to vacate the underlying attachment. *See Verton Navigation, Inc. v. Caribica Shipping Ltd.*, 1992 U.S. Dist. LEXIS 517, *5 (S.D.N.Y. 1992).

Thus, in the event that Plaintiff fails to provide security to Sinochart for its costs within 10 days, as ordered by this Court, the Court's Order should provide that Plaintiff's underlying attachment will be summarily vacated and its action dismissed. Failure to provide for such an

equitable remedy would permit the injustice of Plaintiff retaining full security for its alleged claims whereas Sinochart would left without any security for the <u>very costs of posting that same security.</u>

## CONCLUSION

WHEREFORE, for all of the foregoing reasons, and those reasons set out in the Declaration of Patrick F. Lennon, Plaintiff should be ordered to provide security for Sinochart's costs in relation to posting the bonds in the sum of $13,107,034.84, in the form of cash or bond, within ten (10) calendar days following issuance of an Order from this Court compelling Plaintiff to provide such security.

Should Plaintiff fail to provide such security then Plaintiff's attachment over Sinochart's property should be vacated and its action dismissed.

Dated: May 14, 2008
       Southport, CT

By: _____
CHINA NATIONAL CHARTERING CORPORATION

Patrick F. Lennon
Nancy R. Peterson
LENNON, MURPHY & LENNON, LLC
The Gray Bar Building
420 Lexington Ave., Suite 300
New York, NY 10170
(212) 490-6050 - phone
(212) 490-6070 - facsimile
pfl@lenmur.com
nrp@lenmur.com

TO:    Freehill, Hogan & Mahar, LLP
        Attorneys for Plaintiff
        80 Pine Street, New York, NY 10005
        Attn: Mr. Peter Gutowski

## AFFIRMATION OF SERVICE

I hereby certify that on May 14, 2008, a copy of the foregoing Memorandum of Law was filed electronically and served by FedEx, return receipt mail and/or facsimile on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's CM/ECF system.

By: _____
Patrick F. Lennon