# EXHIBIT "4"

## Patrick F. Lennon

**From:** GUTOWSKI, PETER [GUTOWSKI@FREEHILL.COM]
**Sent:** Tuesday, February 05, 2008 3:58 PM
**To:** Patrick F. Lennon
**Subject:** Ocean Victory

Dear Pat

Thanks your further email today, submitting what you describe as an "unequivocal and unconditional" offer of substitute security. With respect, that is not a fair characterization of your proposal, which seems somewhat more designed to become an exhibit in a motion down the road than a meaningful change in the position which has plagued these negotiations for months.

Indeed, are we really not right back to where our counterparts in the UK/Hong Kong have been for the past several months – that is, a request for confirmation of a deal which is not concrete because we do not have the terms. As with every negotiation for substitute security, especially in relation to a deal as unusual as this one is (I've never been involved in a proposal for split security), the devil is in the details, and how can we ask our client to commit to something which is not spelled out?

In any event, we have conferred with Ince and have the following specific points in reply:

1.    **"Unequivocal and unconditional"**

As noted above, we simply do not see the proposal that has been suggested as being "unequivocal and unconditional", for a variety of reasons which will be familiar to you from our previous correspondence and which include:

- Precise terms and wordings of the "offer" have not been put forward. As you no doubt have seen, we were earlier sent a specimen wording which was plainly unsuitable. Ince explained this to Richards Butler but we have heard nothing more. The indication from Richards Butler (i.e. that the "wordings etc…" can be dealt with after Chinese New Year) is, with respect, both too vague and inconsistent with the making of a so-called unequivocal and unconditional offer. An offer of security in principle but without saying what terms are being proposed, is meaningless. On what terms is any security being offered? We need the proposed language.
- 
- Despite *Ocean Victory* interests' previous requests for confirmation from the bank, there is nothing to suggest that the Bank of China has actually agreed to provide a guarantee, or as to what stage in its internal procedures any request for approval of the issuance of any security (if that request has been made) has reached. Ince have asked for confirmation about the authority of those who might issue and sign any bank guarantee and inquired about foreign exchange approval (known as SAFE), but no definite and transparent reply has ever come back. This is no small issue when you are asking us to take two forms of security where, as we all know, the standard route is by way of a single P and I Club letter.
- 
- Again, despite repeated requests, no firm statement as to the time frame within which any security might be provided has been given. When might any security actually be put in place, if the terms were acceptable?
-

- The terms of the proposed reservation of Sinochart's rights remain unclear to us. You are aware that a cumbersome and overcomplicated "side agreement" was tabled by Sinochart. A request was made for confirmation that it had been dropped. There has been no reply to that. As matters stand, the basis and extent of any additional terms sought by Sinochart are unclear and for those reasons alone, the "unequivocal and unconditional" description is inaccurate. Indeed, the reservations mentioned in your email last evening do not mirror the ones included in the last version sent by RB.

2.  **The costs**

To the extent Sinochart are concerned with the costs of their posting a surety bond in New York, we note:

- Ocean Victory interests indicated at an early stage they would accept a Skuld LOU for the full claim amount. The costs of providing and maintaining this would be zero. It remains our client's position that this "no cost" form of security for the full claim would be acceptable. To the extent that your clients are asking our clients to accept a Bank of China guarantee for part of the claim, we know of no reason why Skuld could not be counter-secured by Bank of China for any uninsured portion of the claim, and hence provide a Club LOU for the full sum. We of course reserve the right to argue, in the context of any future arguments about the costs of a bond and their recoverability, that this option for a "no cost" substitute security was offered by our clients but rejected by your side.
- Richards Butler alluded to the possibility of a single Bank of China guarantee being proposed for the full security amount. We asked if this was being offered and no clear response to that question was received. What would the costs of providing a single BOC guarantee for this amount be as compared with a surety bond?

### 3. What is being "proposed" is not equivalent security

Even if a firm, immediate and binding offer were being made to provide substitute security in the form of two split instruments - a Club LOU and Bank Guarantee – which clearly it is not, this would not be equivalent to either security in cash or by way of a surety bond in New York, in circumstances where:

- The Club and the Bank of China are in separate jurisdictions both of which are outside London (the seat of the arbitration) and outside New York (the seat of the Rule B attachment).
- Security from two overseas entities would require two further sets of enforcement proceedings if payment were not voluntarily made under the security instruments.
- The requirement to draw down on two separate security instruments for a single indivisible claim creates legal uncertainty, which is not present in the case of a single security instrument.

As we both know, there is no authority that mandates the acceptance of substitute security in the form being offered, and the rules are clear on what must be offered if the parties cannot come to terms on some alternative form of security. Thus I do not agree with nor do I accept that you have no choice other than to incur the bond costs. Just place what you are proposing in a concrete format and we will respond promptly. Demands for pre-proposal approvals of security in language yet to be agreed upon in the circumstances of this situation is not going to advance the ball, and is certainly not an unequivocal and unconditional offer.

In summary, therefore, and in response to the positions you are seeking to maintain, if your clients elect to post a surety bond, that decision (and the costs of it) is a matter for them. Our client's position

5/12/2008

remains that the various uncertain and ill defined "proposals" made from time to time with various strings attached in respect of a possible Skuld LOU and possible BOC guarantee, lack any detail and do not amount to an offer which is made on clear terms and which is capable of acceptance. This is not "a mantra", to quote from your email. It is a simple and inescapable truth.

In closing, we stand ready, as we have all along, to work with you on resolving this situation, but if we are to move forward, can we suggest that RB send the draft wordings of what is being proposed and respond to the other points mentioned last evening, so that we can make some progress here.

Kind regards,
Pete

PLEASE NOTE: The information contained in this message is privileged and confidential, and is intended only for the use of the individual named above and others who have been specifically authorized to receive such. If you are not the intended recipient, you are hereby notified that any dissemination, distribution or copy of this communication is strictly prohibited. If you received this communication in error, or if any problems occur with transmission, please notify us immediately by telephone - (212) 425-1900. Thank you.