# EXHIBIT "5"

# Patrick F. Lennon

| | |
|---|---|
| **From:** | Patrick F. Lennon |
| **Sent:** | Tuesday, February 05, 2008 5:07 PM |
| **To:** | 'GUTOWSKI, PETER' |
| **Subject:** | RE: Ocean Victory - LML ref: 1212A |
| **Importance:** | High |
| **TimeMattersID:** | MFDD49A5465EA756 |
| **TM Matter No:** | 1212a-07 |

**TM Matter Reference:** Ocean Line v. China National Chartering Corp.

Dear Pete,

Thank you for getting back to me today. I have the following responses to your (Inces's) comments to Sinochart's security offer:

1. Ocean Line may rest assured that our correspondence with regard to the security offers and Ocean Line's patent refusal to accept it will be exhibits to Sinochart's motion for countersecurity to cover the bond premium if Sinochart must resort to utilizing surety bonds. We have no reservation in saying that, nor in reassuring Ocean Line that Sinochart's offer of the bank guarantee and P&I Club LOU has been made in a good faith attempt to resolve the security issues and to avoid having to post the surety bond. I say this because I cannot think of one good reason, nor have you or Ince suggested any, why Sinochart would make the offer of security if it did not intend to provide it. Nor is there any reason why Sinochart would prefer to post the surety bonds and incur the associated costs thereof, whether or not it ultimately obtains countersecurity from Ocean Line. If I've missed something in our correspondence in this regard I'm sure you will bring it to my attention.

2. An offer of $177 million + of unconditional security in the form of a $50 million Skuld LOU, with the balance in the form of a bank guarantee from Bank of China head office (one of the biggest banks in the world) with the only caveats being Sinochart's right to continues its challenge to the wrongful attachment and in the alternative to seek countersecurity quite plainly cover the MAIN terms of a security agreement, even if the parties would have to reduce the agreement to particular writings. In our view, Ocean Line's requiring the "precise" wordings of the bank guarantee and LOU are, with respect, nothing more than a pretext for its refusal to accept the bank guarantee and Skuld LOU as security.

3. With regard to Ocean Line's demand for assurance that the bank guarantee would be issued by Bank of China, quite frankly, this is a ridiculous issue for Ocean Line to be concerned about. Either Bank of China issues the bank guarantee or it does not. I have no doubt that Ocean Line will refuse to vacate the attachment order and to stop serving it daily on the banks until it receives the bank guarantee. Thus, it is an issue of concern solely for Sinochart and not for Ocean Lines. Either Ocean Line is amenable to accepting the offered bank guarantee or it is not. Which is it? The time for these word games is over and we need to hear from Ocean Line whether it is willing in principle to accept the bank guarantee. If it is, I assure you that Sinochart will deliver the bank guarantee from Bank of China head office. If it fails to deliver, then Ocean Line will still have the attachment order in place. In addition to this, once the bank guarantee is issued, proper authorizations and proof thereof can be provided. To use this issue to hold up an agreement in principle is absurd.

4. The fact that Sinochart cannot issue one P&I Club LOU for the amount of Ocean Line's claim should come as no surprise to you or Ince & Co. since both firms are intimately familiar with P&I Club cover. The fact that there will be two forms of security is the equivalent to Ocean Line's objecting because it has attached Sinochart's property interests at more than one garnishee bank. Again, with respect, this is nonsense.

5. With regard to timing, if this is an issue, Ocean Line can express its agreement in principle, subject to the LOU and bank guarantee being provided by a date certain. As stated above, since the

attachment order will remain in place until the substitute security is provided, why is this important? As an attempt to knock down this straw man, Sinochart invites Ocean Line to suggest a time frame deadline together with its agreement in principle to accept the offered forms of security.

6. The caveats, or reservations of Sinochart's rights, are as expressed in my email and that of Reed Smith Richards Butler of yesterday and today. To be clear, and for the avoidance of any further doubt (real or imagined) the security offer is made with the reservation of Sinochart's right to maintain its motion to vacate the NY Rule B attachment order on sovereign immunity grounds and to have the bank guarantee and LOU returned if it prevails on that motion, after appeal, as well as its right to obtain countersecurity for its own claims, which are the subject its pending motion for countersecurity.

7. With regard to the costs issue, I am advised that Skuld cannot provide a single LOU for the entire amount of the claim, whether or not it is counter-secured by Sinochart of the Bank of China or any other bank or surety. Thus, further discussion on this point serves no purpose. The maximum amount of a Skuld LOU is $50 million. Thus, despite your/Ince's surmise, there is no "no-cost" security alternative. There is only a choice of costly alternatives.

8. If by your email you intend to suggest that Ocean Line is willing to accept a single Bank of China head office guarantee for the amount claimed, please send an unequivocal offer in this regard. In any event, it is quite likely too late to act upon this possible alternative because of the Chinese New Year (during which time Sinochart and we understand Bank of China head office are closed), which you, Ince & Co. and presumably Ocean Line have been repeatedly advised would be the deadline by which a deal on security must be reached, failing which the surety bonds would be posted. Today was the deadline for an agreement, failing which Sinochart has repeatedly advised it would post the surety bonds in order to protect its interests.

9. As I have repeatedly advised you, all arrangements have been made and are in place for the issuance of the bonds as early as tomorrow.

10. Your comments regarding the "seat" of arbitration and the "seat" of the NY Rule B attachment proceeding are irrelevant to such a degree that they do not merit serious reply. As it stands, Ocean Line is secured to the approximate amount of $30 million on a $177 + million claim. The math is simple – in order to avoid further damage to Sinochart's business being created by the wrongful attachment, it has offered to voluntarily secure Ocean Line's claim by providing approximately $147 million of security to Ocean Line that it does not presently enjoy. If matters were to stay status quo in terms of security, *if* Ocean Line were to later obtain an enforceable judgment against Sinochart, it would be required to seek to enforce that judgment in multiple jurisdictions. Thus, arguing that Ocean Line would be required to enforce the LOU and bank guarantee in two jurisdictions is hardly a meritorious objection to accepting $177 million of voluntary security being offered by Sinochart. In any event, do you, Ince or Ocean Line seriously believe that Skuld and the Bank of China would default on their obligations under such security instruments?

11. Finally, without intending to rise to the bait of your baseless and self serving comments at the conclusion of your email, let me simply say that Sinochart is quite comfortable with its position having made every effort to reach an agreement on alternate security, having even invited Ocean Line's representatives (i.e. Ince & Co.) on multiple occasions to meet to confer on the wording of the bank guarantee and LOU only to be rebuffed on each such occasion - - is such behavior consistent with your representation that you/Ince/Ocean Line "stand ready, as we have all along, to work with you on resolving this situation?" – I think not. It seems clear that Ocean Line is stonewalling and we are very confident that upon presenting ALL correspondence to the court concerning Sinochart's efforts to come to terms with Ocean Line that Sinochart will obtain an order granting it countersecurity for the bond premium costs.

**FOR THE AVOIDANCE OF ANY DOUBT, SINOCHART WILL PROCEED WITH POSTING OF THE SURETY BOND(S) UNLESS OCEAN LINE EXPRESS AN AGREMENT IN PRINCIPLE TO ACCEPT THE BANK OF CHINA BANK GUARANTEE AND SKULD P&I LOU. IF OCEAN LINE WISHES TO EXPRESS SUCH AGREEMENT IN PRINCIPLE, PLEASE NOTIFY US BY TOMORROW MORNING.** If Ocean Line expresses its agreement in principle by tomorrow morning, we confirm that the attachment order would remain in place until the parties agree on final wording of the bank guarantee and LOU. Once these securities are delivered to Ocean Line, the attachment order would then have to be vacated and Sinochart's property presently under attachment released.

5/12/2008