<u>**SUBJECT TO CONTRACT**</u>

Ocean Line Holdings Limited
Suite 2101  21/Fl
Two International Finance Centre
8 Finance Street
Central
Hong Kong

[DATE]

Bank of China GUARANTEE

Dear Sirs,

| | | |
|---|---|---|
| Vessel | : | Ocean Victory |
| Charterparty | : | Between Ocean Line Holdings Limited as disponent owners and China National Chartering Corp ("Sinochart") as time charterers, dated 2 August 2006. |
| Casualty | : | The vessel was damaged and ran aground whilst attempting to leave the port of Kashima, Japan on 24th October 2006. Salvage assistance was obtained but the vessel ultimately became a total loss. Thereafter operations were undertaken to remove the wreck of the vessel and to reinstate local infrastructure damaged or removed in the course of the casualty and the subsequent salvage and wreck removal operations. |
| Claim | : | All the disponent owners' claims against Sinochart whatsoever and howsoever arising out of and/or in connection with the charterparty and/or the casualty and whether sounding in damages or indemnity or otherwise. |
| Security | : | The total sum secured by and on behalf Sinochart in aggregate is US$ 177,520.838 – made up of two guarantees, (a) this guarantee in the sum of US$ 127,520,838 provided by the Bank of China ("Bank of China Guarantee") and (b) a further guarantee in the sum of US$50,000,000 provided by Assuranceforeningen Skuld ("Skuld") ("Skuld Guarantee") |

In consideration of your discontinuing your proceedings brought under Supplemental Rule B in New York and your consenting to the release of funds belonging to Sinochart which have been restrained pursuant to those proceedings and in consideration of your releasing and/or refraining from arresting or otherwise detaining any other assets or property belonging to Sinochart or in the same or associated ownership, management, possession or control, for the purpose of obtaining security in respect of your above claims, we, the Bank of China hereby irrevocably undertake, as primary debtor and not merely as surety only, to pay to you on your first and any subsequent written demand(s) such sum or sums as may be due to you from Sinochart in respect of your said claims, whether by written agreement between the disponent owners and Sinochart or by final or interim final Arbitration Award(s) in London in respect of which any right of appeal shall have lapsed or been exhausted and/or, in the case of any appeal, final judgment of the High Court of Justice in London or a higher appellate court (or, for the avoidance of doubt, any combination of agreement, Award and/or judgement), whether in respect of the said claims, interest and/or costs (which expression includes Court fees and the fees and other costs and/or expenses of any arbitration tribunal) PROVIDED ALWAYS that:

(a) our total liability hereunder shall not exceed the sum of US$127,520,838 (United States Dollars one hundred and twenty seven million five hundred and twenty thousand eight hundred and thirty eight); and

(b) each such demand is supported and accompanied by a copy of the agreement, Award and/or judgment in question; and

(c) the amount of each such demand does not exceed the amount agreed and/or awarded and/or adjudged to be due.

And for the consideration aforesaid we hereby irrevocably confirm:-

(i) We will not be released from our obligations at any time by reason of forbearance, waiver or other indulgence granted to or by Sinochart or any legal limitations on, or disability or incapacity of Sinochart, or the liquidation, dissolution, bankruptcy or similar of either Sinochart or yourselves, or any intermediate performance by Sinochart of any of their obligations arising out of or in relation to the casualty or any act, omission, defence or counterclaim which might otherwise impair or discharge our liability, under this Bank of China Guarantee.

(ii) Any payment by us under this Bank of China Guarantee shall be made without any set-off, counter-claim, deduction or withholding for or on account of any taxes, duties or charges of whatsoever nature.

(iii) We shall have no liability hereunder in respect of any sum or sums demanded which has or have been otherwise satisfied, whether that sum or those sums were satisfied by means of payment under the Skuld Guarantee or otherwise. To the extent that we pay

any sums to you which have already been satisfied, whether under the Skuld guarantee or otherwise, you shall immediately repay to us upon our written demand that sum or those sums, together with interest thereon from the date(s) of payment by us.

(iv)   We hereby confirm that any payment by us under this Bank of China Guarantee will be made within 14 days of receipt of notice in writing of your demand for payment.

(v)   We hereby confirm that you are entitled to draw down on this Bank of China Guarantee prior to, concurrently with, or after, any demand upon or payment received under the Skuld Guarantee. We hereby confirm that payment under this Bank of China Guarantee is not subject to any payment first having been made under the Skuld Guarantee. Further the maximum amount payable under this Bank of China Guarantee will not be reduced by any payment made under the Skuld Guarantee. We accept that we are jointly and severally liable as primary debtors for all sums due to you from Sinochart in respect of your claims, subject only to the maximum liability that we have under the Bank of China Guarantee.

(vi)   We hereby confirm that we have received irrevocable authority from Sinochart to give this Bank of China Guarantee in these terms.

(vii)   We hereby confirm and warrant that: (i) this Bank of China Guarantee is in full compliance with all foreign exchange and other regulatory requirements of the PRC ; (ii) we have taken all appropriate and necessary actions to be authorized to issue and maintain this Bank of China Guarantee and to perform our obligations hereunder; (iii) we have obtained all necessary consents, licences, approvals, authorizations and registrations or declarations required from any governmental authority in connection with the validity and enforceability of this Bank of China Guarantee; (iv) we will duly register this Bank of China Guarantee with the relevant State Administration of Foreign Exchange (SAFE) of the PRC and promptly (in any event not later than 40 calendar days after issuance of this Bank of China Guarantee) provide you with a copy (certified by the signatories hereto) of the monthly SAFE filing form relevant to this Bank of China Guarantee and duly stamped by SAFE evidencing the due registration of this Bank of China Guarantee with SAFE; and (v) we have and shall maintain the necessary authorization to transfer funds out of the PRC in the currency of this Bank of China Guarantee.

(viii)   We are duly permitted by the laws of the People's Republic of China to issue a Bank of China Guarantee in this wording and especially to designate English law as its governing law and to agree to the High Court of Justice in London as the exclusive forum for the resolution of any dispute arising in relation to this Bank of China Guarantee.

Any demand under this Bank of China Guarantee shall be in writing marked for the attention of [*insert details*] and shall be deemed to be duly served and received if left at our registered office at ------------------, or if received via registered first class mail (or by airmail if overseas) or if received by email (Mail Address:--------) or if received in legible form by fax (Fax No: --------------).

15.

This Guarantee is given without prejudice to all rights and defences which may be available to Sinochart including, but not limited to, any rights of limitation of liability.

This Bank of China Guarantee shall be governed by and construed in accordance with English law and we agree to submit to the exclusive jurisdiction of the High Court of Justice in London for the enforcement hereof. We confirm that our registered or principal office is situated at [insert details]. We further undertake that within 7 days of receipt of a request to do so, we shall instruct and authorise English solicitors to accept and acknowledge service of any proceedings brought in the High Court of Justice in London in connection with this Bank of China Guarantee.

_____
Authorised signature(s)

<u>SUBJECT TO CONTRACT</u>

Ocean Line Holdings Limited
Suite 2101   21/Fl
Two International Finance Centre
8 Finance Street
Central
Hong Kong

[DATE]

Bank of China GUARANTEE

Dear Sirs,

| | | |
|---|---|---|
| Vessel | : | Ocean Victory |
| Charterparty | : | Between Ocean Line Holdings Limited as disponent owners and China National Chartering Corp ("Sinochart") as time charterers, dated 2 August 2006. |
| Casualty | : | The vessel was damaged and ran aground whilst attempting to leave the port of Kashima, Japan on 24th October 2006. Salvage assistance was obtained but the vessel ultimately became a total loss. Thereafter operations were undertaken to remove the wreck of the vessel and to reinstate local infrastructure damaged or removed in the course of the casualty and the subsequent salvage and wreck removal operations. |
| Claim | : | All the disponent owners' claims against Sinochart whatsoever and howsoever arising out of and/or in connection with the charterparty and/or the casualty and whether sounding in damages or indemnity or otherwise. |
| Security | : | The total sum secured by and on behalf Sinochart in aggregate is US$ 177,520.838 – made up of two guarantees, (a) this guarantee in the sum of US$ 127,520,838 provided by the Bank of China ("Bank of China Guarantee") and (b) a further guarantee in the sum of US$50,000,000 provided by Assuranceforeningen Skuld ("Skuld") ("Skuld Guarantee") |

In consideration of your discontinuing your proceedings brought under Supplemental Rule B in New York and your consenting to the release of funds belonging to Sinochart which have been restrained pursuant to those proceedings and in consideration of your releasing and/or refraining from arresting or otherwise detaining any other assets or property belonging to Sinochart or in the same or associated ownership, management, possession or control, for the purpose of obtaining security in respect of your above claims, we, the Bank of China hereby irrevocably undertake, as primary debtor and not merely as surety only, to pay to you on your first and any subsequent written demand(s) such sum or sums as may be due to you from Sinochart in respect of your said claims, whether by written agreement between the disponent owners and Sinochart or by final or interim final Arbitration Award(s) in London in respect of which any right of appeal shall have lapsed or been exhausted and/or, in the case of any appeal, final judgment of the High Court of Justice in London or a higher appellate court (or, for the avoidance of doubt, any combination of agreement, Award and/or judgement), whether in respect of the said claims, interest and/or costs (which expression includes Court fees and the fees and other costs and/or expenses of any arbitration tribunal) PROVIDED ALWAYS that:

(a) our total liability hereunder shall not exceed the sum of US$127,520,838 (United States Dollars one hundred and twenty seven million five hundred and twenty thousand eight hundred and thirty eight); and
(b) each such demand is supported and accompanied by a copy of the agreement, Award and/or judgment in question; and
(c) the amount of each such demand does not exceed the amount agreed and/or awarded and/or adjudged to be due.

And for the consideration aforesaid we hereby irrevocably confirm:-

(i) We will not be released from our obligations at any time by reason of forbearance, waiver or other indulgence granted to or by Sinochart or any legal limitations on, or disability or incapacity of Sinochart, or the liquidation, dissolution, bankruptcy or similar of either Sinochart or yourselves, or any intermediate performance by Sinochart of any of their obligations arising out of or in relation to the casualty or any act, omission, defence or counterclaim which might otherwise impair or discharge our liability, under this Bank of China Guarantee.

(ii) Any payment by us under this Bank of China Guarantee shall be made without any set-off, counter-claim, deduction or withholding for or on account of any taxes, duties or charges of whatsoever nature.

(iii) We shall have no liability hereunder in respect of any sum or sums demanded which has or have been otherwise satisfied, whether that sum or those sums were satisfied by means of payment under the Skuld Guarantee or otherwise. To the extent that we pay

    any sums to you which have already been satisfied, whether under the Skuld guarantee or otherwise, you shall immediately repay to us upon our written demand that sum or those sums, together with interest thereon from the date(s) of payment by us.

(iv)   We hereby confirm that any payment by us under this Bank of China Guarantee will be made within 14 days of receipt of notice in writing of your demand for payment.

(v)   We hereby confirm that you are entitled to draw down on this Bank of China Guarantee prior to, concurrently with, or after, any demand upon or payment received under the Skuld Guarantee. We hereby confirm that payment under this Bank of China Guarantee is not subject to any payment first having been made under the Skuld Guarantee. Further the maximum amount payable under this Bank of China Guarantee will not be reduced by any payment made under the Skuld Guarantee. We accept that we are jointly and severally liable as primary debtors for all sums due to you from Sinochart in respect of your claims, subject only to the maximum liability that we have under the Bank of China Guarantee.

(vi)   We hereby confirm that we have received irrevocable authority from Sinochart to give this Bank of China Guarantee in these terms.

(vii)   We hereby confirm and warrant that: (i) this Bank of China Guarantee is in full compliance with all foreign exchange and other regulatory requirements of the PRC; (ii) we have taken all appropriate and necessary actions to be authorized to issue and maintain this Bank of China Guarantee and to perform our obligations hereunder; (iii) we have obtained all necessary consents, licences, approvals, authorizations and registrations or declarations required from any governmental authority in connection with the validity and enforceability of this Bank of China Guarantee; (iv) we will duly register this Bank of China Guarantee with the relevant State Administration of Foreign Exchange (SAFE) of the PRC and promptly (in any event not later than 40 calendar days after issuance of this Bank of China Guarantee) provide you with a copy (certified by the signatories hereto) of the monthly SAFE filing form relevant to this Bank of China Guarantee and duly stamped by SAFE evidencing the due registration of this Bank of China Guarantee with SAFE; and (v) we have and shall maintain the necessary authorization to transfer funds out of the PRC in the currency of this Bank of China Guarantee.

(viii)   We are duly permitted by the laws of the People's Republic of China to issue a Bank of China Guarantee in this wording and especially to designate English law as its governing law and to agree to the High Court of Justice in London as the exclusive forum for the resolution of any dispute arising in relation to this Bank of China Guarantee.

Any demand under this Bank of China Guarantee shall be in writing marked for the attention of [*insert details*] and shall be deemed to be duly served and received if left at our registered office at ------------------, or if received via registered first class mail (or by airmail if overseas) or if received by email (Mail Address:--------) or if received in legible form by fax (Fax No: ------------).

- 3 -

This Guarantee is given without prejudice to all rights and defences which may be available to Sinochart including, but not limited to, any rights of limitation of liability.

This Bank of China Guarantee shall be governed by and construed in accordance with English law and we agree to submit to the exclusive jurisdiction of the High Court of Justice in London for the enforcement hereof. We confirm that our registered or principal office is situated at [insert details]. We further undertake that within 7 days of receipt of a request to do so, we shall instruct and authorise English solicitors to accept and acknowledge service of any proceedings brought in the High Court of Justice in London in connection with this Bank of China Guarantee.

_____
Authorised signature(s)

Christopher Crane

From: Ian Chetwood
Sent: 16 January 2008 18:47
To: 'lli@rsrbhk.com'
Cc: Matthew Moore; Peter Murray
Subject: Ocean Victory

Attachments: Document.pdf

Please see the attached.

Regards
Ian Chetwood / Ince & Co

Document.pdf
(89 KB)

# Email



INTERNATIONAL
LAW FIRM

International House
1 St Katharine's Way
London E1W 1AY
DX 1070 London City

Tel +44 20 7481 0010
Fax +44 20 7481 4968
www.incelaw.com

Ince & Co is a partnership of solicitors and registered foreign lawyers and is regulated by the Solicitors Regulation Authority. A list of partners is open to inspection at the office shown.

Please contact us immediately if any part of this email is incorrectly received.

| From | Our Ref | Date |
|---|---|---|
| Ian Chetwood | IAC/MM/8295/8718 | |
| To | Attention | Your Ref |
| Richards Butler in association with Reed Smith LLP | Mr Lianjun Li | |
| Total number of pages | | Email address |
| 3 | | lli@rsrbhk.com |
| Copies to | Attention | Email address |
| Ince & Co Shanghai | Peter Murray | |
| Matter | | |
| Ocean Victory - unsafe port claim | | |

Dear Mr. Li,

Thank you for your open e-mail, marked "subject to contract", sent to us this morning and received by us at 0417 hours London time today.

All recent discussions and exchanges about possible substitute security to be provided by your clients, Sinochart, for the Rule B attachment in New York, have been conducted on a "without prejudice" basis. As we have remarked to you before, "without prejudice" means what it says, namely that the parties expressly undertake that their exchanges are to remain private. Your message of this morning, however, is written on an open basis for the first time. We will therefore respond in kind.

It is apparent to us that efforts are being made on your side to try to create an impression that your clients have offered substitute security for our clients' claims and that such security is close to being agreed. At the same time, and though this is clearly inconsistent, it seems to us that there is an undertone (for example, various references in letters to the Court that we or our clients are being "intransigent") that our clients are somehow unreasonably refusing to accept a firm and unfettered security offer.

The impression that you are seeking to create is entirely false and misleading.

For the avoidance of doubt, we make the following points:-

1. Your proposal today is marked "subject to contract". That phrase has a very well known meaning: that the content of the message marked "subject to contract" gives rise to no legal



liability and is not binding in any way, until further conditions have been fulfilled. The "proposal" does not therefore bind Sinochart. Nor is it capable of acceptance by Ocean Line. It is not a firm and binding offer.

2. The proposal makes no firm commitment as to when the security will be provided. It is relevant that security was first requested by our clients in February 2007 and it is still not in place. Further, Sinochart made a representation to the Court in New York on 8 January that they were "within days if not weeks" of posting a bond. This has not happened.

3. No proposal is being made for a single security instrument - for example an International Group P& I Club letter of undertaking, covering the full claim. Ocean Line has only a single claim (for breach of contract), which will be determined in London arbitration. Despite this, you are "proposing" on particular conditions that your clients may provide interim split security from two security providers in different jurisdictions, not located either at where the arbitration has been agreed to be held or where the Rule B attachment has been made. (Assuranceforeningen Skuld are of course a P & I Club located in Norway. Bank of China speaks for itself).

4. Under the scheme in your message today, Ocean Line would have to commence two separate enforcement actions in those different jurisdictions to draw down on these security instruments, if payment was not made voluntarily. These additional steps would not be necessary if a surety bond were to be posted in New York. This scheme arises, we understand, because your clients were under-insured. Our clients are being asked to bear possible risks from split security when for example it would be possible, we believe, for the Club to be counter secured by Bank of China for any uninsured portion of the claim, to avoid those risks to our clients and enable a single letter of undertaking to be given.

5. Instead, the possible provision of the split securities from security providers in Norway and China is said by you to be further subject to a complicated side agreement which is to be governed by the law of a third jurisdiction (England). The insistence on this side agreement again makes the proposal conditional and not unfettered. It offers considerable scope for argument about its impact.

6. The side agreement proposed includes specific conditions which are not relevant to the provision of security. One example is the suggestion in para 7 that Ince & Co be provided with authority to accept service of High Court proceedings in London not just under the side agreement but in connection with "any claims under the charterparty". No explanation has been offered for this condition. It appears to be a back door attempt to undermine the agreed resolution provisions. The head charterparty provides (as you and Sinochart are well aware) that any disputes between the parties are to be referred to London arbitration, not to the High Court. The fact that Sinochart's sub-charter is not on the same terms as regards dispute resolution as the head charter, offers no justifiable excuse for the inclusion of this condition.

23.

Christopher Crane

| | |
|---|---|
| From: | Li, Lianjun [lli@rsrbhk.com] |
| Sent: | 22 January 2008 11:06 |
| To: | Matthew Moore |
| Cc: | Ian Chetwood; Peter Murray; gwinter@winterscott.co.uk |
| Subject: | Re: "OCEAN VICTORY" (Our ref: LJL/jw/C923-070) |
| Attachments: | img-1221816-0001.pdf |

to:   Mr. Matthew Moore - Ince & Co International Law Firm, London

email: matthew.moore@incelaw.com

your ref: IAC/MSM.8295/8718

cc:   Mr. Ian Chetwood - Ince & Co International Law Firm, London

email: ian.chetwood@incelaw.com

your ref: IAC/MSM.8295/8718

cc:   Mr. Peter Murray - Ince & Co International Law Firm, Shanghai
email: peter.murray@incelaw.com

cc:   Mr. Glenn Winter - Winter Scott
email: gwinter@winterscott.co.uk
your ref: DGW/In/82/139


Dear Matthew,

Thank you for your email of 21st January 2008 and respond (adopting your paragraph numbers) as follows:-

(1)   Our clients prefer to provide two guarantees, namely a Skuld LOU for the sum of US$50 million and a bank guarantee for the balance amount.

Our clients have hoped and are hoping that your clients will accept the arrangement of the two guarantees. As you were advised, Skuld will not be able to issue a single LOU to cover all the claims amount because the alleged claims amount exceeds the club cover of US$50 million. As we mentioned in our previous emails, our clients believe that there is no reason for the two securities not to work hand in hand.

If your clients do not accept two guarantees, our clients will have little choice but to put up bonds or offer a single BOC guarantee.

If your clients accept the two guarantees arrangement, our clients will immediately process the BOC guarantee and the Skuld LOU. Please let us know whether you have any comments on the draft BOC guarantee and Skuld LOU wording attached to our email of 17th January 2008.

If your clients insist in a single BOC guarantee, please let us have the draft wording so that our clients will approach the bank for their approval. In the meantime, we attach the sample draft

25

Re: "OCEAN VICTORY" (Our ref: LJL/jw/C923-070)

provided by the BOC. We understand that the BOC will be able to issue the guarantee in the current form within 10 working days.

(2) As discussed previously, we understand from our clients that the bank has advised our clients that there is no requirement for BOC to have a prior approval from SAFE. The bank is only required to file with SAFE after the bank has issued the bank of guarantee. The draft BOC guarantee sent to you on 17th January 2008 has reflected this. We understand that Inces Shanghai office has experience to deal with the formalities given BOC guarantees are widely acceptable.

(3) Our clients' offer to provide security is an interim security.

(4) The conditions for our clients' offer are to reserve their rights in the US proceedings (including the challenging of the attachment and the request for the counter claims from the Owners) and to release all the attached funds upon provision of the agreed security.

As you may recall, we have proposed an agreement to deal with all the relevant issues. Our clients would prefer these issues to be dealt by a single agreement. However, our clients are prepared to put up the agreed security first for the releasing of the funds and to deal with the challenge of the proceedings and the counter claim security issues in the US in due course.

(5) We understand that if the BOC wording is agreed, it will take no more than 10 working days for the BOC to issue the guarantee. If your clients accept the BOC guarantee and let us have the revised wording, our clients can then immediately approach the BOC.

(6) We understand from our clients that if the BOC guarantee is issued by their overseas correspondent banks, the costs will be much more than the fees to be paid to the bond companies and further, the process will take much longer time. Therefore, we have been advised that if your clients do not accept the BOC guarantee, our clients will have no other choice but to arrange the bond companies to issue the bonds next week.

We should be grateful if you could take your clients' urgent instructions and let us know within this week your clients' position, based on our clients' reservation in the US, as to the following:

1. whether your clients accept the above mentioned two guarantees arrangement: Skuld LOU and the BOC Guarantee; or

2. if your clients reject the above offer, whether your clients accept a single BOC guarantee.

As mentioned in Glenn's fax, he is ready to meet with you to discuss the guarantee wordings in London if necessary. As we also mentioned in our previous emails, we are also ready and willing to meet and discuss with you or your office in this region as soon as possible so that we can finalize the security arrangements without any delay.

<<img-1221816-0001.pdf>>
Best regards,

Lianjun Li
Partner
Richards Butler
in association with Reed Smith LLP
20F Alexandra House, 16-20 Chater Road, Central, Hong Kong
Telephone: (852) 2810 8008

26

Re: "OCEAN VICTORY" (Our ref: LJL/jw/C923-070)

Direct Line: (852) 2507 9857
Mobile phone: (852) 9452 7791
Fax Number:   (852) 2810 1607
Email:        llj@rsrbhk.com
Website:      www.reedsmith.com
(att.)

This message and any attachment are confidential and may be privileged or otherwise protected from disclosure. If you are not the intended recipient, please telephone or email the sender and delete this message and any attachment from your system. If you are not the intended recipient you must not copy this message or attachment or disclose the contents to any other person.

For further information about Richards Butler in association with Reed Smith please see our website at http://www.reedsmith.com
or refer to any Richards Butler or Reed Smith office. A list of the firm's principals will be provided upon request.

27.

TO:

DEAR SIRS,

VESSEL:
CHARTERPARTY:
CLAIM:

IN CONSIDERATION OF _____
WE, _____BANK, AT REQUEST OF SINOCHART HEREBY ISSUE OUR IRREVOCABLE LETTER OF GUARANTEE NO _____ FOR SUM NOT EXCEEDING USD _____ (SAY UNITED STATES DOLLARS _____ONLY) IN RESPECT OF THE ABOVE CLAIM TO BE DUE TO YOU FORM SINOCHART AND UNDERTAKE TO PAY YOU UPON OUR RECEIPT OF YOUR WRITTEN DEMAND STATING _____ACCOMPANIED EITHER BY A COPY OF NON-APPEALABLE JUDGMENT OF _____(OR ARBITRATION AWARD FORM_____) OR A BINDING AMICABLE SETTLEMENT SIGNED BETWEEN _____AND _____(HEREINAFTER COLLECTIVELY CALLED THE "FINAL JUDGEMENT") THE AMOUNT THE FINAL JUDGEMENT ORDER THE SINOCHART TO MAKE PAYMENT TO YOU. BUT OUR LIABILITY UNDER THIS GUARANTEE SHALL NOT EXCEED AGGREGATE AMOUNT OF USD_____ (SAY UNITED STATES DOLLARS _____ONLY) INCLUSIVE OF LEGAL INTEREST AND COSTS.

THIS GUARANTEE SHALL BE VALID FOR A PERIOD OF TWELVE MONTHS FROM THE DATE OF ITS ISSUE AND SHALL BE AUTOMATICALLY RENEWABLE FOR FURTHER CONSECUTIVE PERIODS OF TWELVE MONTHS EACH AND WILL AUTOMATICALLY AND IMMEDIATELY EXPIRE UPON THE FULFILMENT OF OUR UNDERTAKING HEREUNDER DURING THE FIRST PERIOD OR DURING ANY SUBSEQUENT PERIOD OF TWELVE MONTHS.

THIS GUARANTEE IS GIVEN WITHOUT PREJUDICE TO ALL RIGHTS AND DEFENCES WHICH MAY BE AVAILABLE TO SINOCHART INCLUDING, BUT NOT LIMITED TO, ANY RIGHTS OF LIMITATION OF LIABILITY.

THIS GUARANTEE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH ENGLISH LAW AND _____

28