**United States District Court**
**Southern District of New York**
-------------------------------------------------X
**Ocean Line Holdings Limited**

                **Plaintiff,**

      **-against-**

**China National Chartering Corp.**
**a/k/a/ Sinochart,**

                **Defendant.**
-------------------------------------------------X

                    **ECF CASE**

                    **07-CV-8123 (DC)**

                    **DECLARATION OF LIANJUN LI**

I, **Lianjun Li,** declare as follows:

1.    I am a partner at the firm of Richards Butler in association with Reed Smith LLP in Hong Kong. I am duly authorised by the Defendant, China National Chartering Corp. a/k/a "Sinochart," to make this declaration in response to the declaration of Mr Matthew Stephen Moore dated 12 June 2008 (the "Declaration of Matthew Moore"). My firm has been instructed by Sinochart to assist them in dealing with this matter together with Winter Scott, their London based solicitors.  I was instructed by Sinochart to handle negotiations in Hong Kong with Plaintiff's solicitors in respect of for Plaintiff's claims. I have read the Declaration of Matthew Moore and I find that many Mr. Moore's assertions do not correctly reflect what happened. I do not wish to respond point by point in this Declaration, but will highlight what I view as the key points relating to Sinochart's Motion for Security for its costs incurred in posting surety bonds to secure Plaintiff's claims..

2.      At Paragraph 12 of his Declaration, Mr. Moore states that the lengthy discussions took place in London, Hong Kong and Shanghai. I attended the negotiations in Hong Kong and Shanghai. There is no doubt that Sinochart acted in good faith to negotiate the security arrangement.  For such a large amount security it would take much longer period of time for the parties to negotiate and agree on the relevant security wordings and arrangements.  As Mr. Moore points out, as Sinochart is in the middle of the charter party  chain, Sinochart was also negotiating with security arrangements with its sub-charterer, Daiichi,  Mr. Moore's cricism of Sinochart's approach to the security negotiations over Plaintiff's claims is belied by the fact that it took about one year for the parties in the Daiichi matter to negotiate and agree on security.

3.      As to Paragraphs 13-16 of Mr. Moore's Declaration, I was not involved in the discussions with the Plaintiff on the security prior to the Rule B attachment against Sinochart by the Plaintiff.  I understand that at that time Glenn Winter of Winter Scott, Sinochart's London based solicitor, had been dealing with Plaintiff's London based solicitors, Ince & Co. in respect of the security issues. For such a large security demand as mentioned above, it was reasonable for Sinochart to request a breakdown of the claims and to have a reasonable period of time for Sinochart to consider the Plaintiff's request and to negotiate security

4.      At Paragraphs 17 to 30 of his Declaration, Mr. Moore appears to suggest that Sinochart should have simply provided the requested security and waive any

rights which it had in respect of the validity of the Rule B attachment order. As I understand it, Sinochart was rightfully entitled to apply to the Court to vacate Rule B attachment under the US law. Therefore, it was not improper for Sinochart to suggest to Plaintiff a condition that the interim security should be released if Sinochart succeeds in its motion to vacate the Rule B attachment. Therefore, in a good faith, Sinochart proposed a side agreement to deal with the interim security arrangement and the outcome of the Court's ruling on the motion to vacate. The regime proposed in the side agreement was in no way intended to complicate the issues but to address the issues properly.

5.    Despite Sinochart's repeated attempts to reach an agreement in principle on the form of security to be provided for Plaintiff's claims, Plaintiff and its attorneys refused to respond to Sincochart in respect of

    (a)    whether Plaintiff would accept a single bank guarantee to be issued by Bank of China for the full sum of the security demanded. Please see our emails of 17th, 21st and 22 January 2008 (see the Exhibit to this Declaration); and

    (b)    whether Plaintiff would accept two guarantees, one from Bank of China for US$127,520,838 and another from Sinochart's insurer, the P&I Club Skuld for US$50,000.

6.    At Paragraphs 31-33 of his Declaration, Mr. Moore says that he had not received

a satisfactory answer to their questions concerning the form and wording of the

securities Sinochart offered before posting the surety bonds. As one can see, their

refusal to accept the alternative forms of security outlined in Paragraph 5(a) and

(b) above was based on relatively minor issues. We offered to meet with them to

address and resolve these issues, but without offering any explanation whatsoever,

they simply refused.  I thus do not accept any of Mr. Moore's suggestions that

Sinochart did not attempt to provide alternative security in good faith, and I reject

entirely his contention that Sinochart always intended to post surety bonds.

Sinochart had no reason to incur the extreme costs associated with posting the

surety bonds.  To the contrary, this was the very reason why Sinochart, throught

us, Winter Scott and Lennon, Murphy & Lennon, went to extraordinary lengths to

try and resolve Plaintiff's concerns.  In the end, Plaintiff's unreasonable approach

to the negotiations was made clear by its refusal to accept the unconditional

security Sinochart offered or to meet to resolve their concerns.

7.    China is one of the major shipping and shipbuilding countries in the world.  I have

been dealing with shipping matters involved in China for over 15 years in Hong

Kong. Chinese banks including Bank of China have provided an enormous

amount of securities in the shipping and shipbuilding industries to foreign owners

and claimants. As I understand it, Ince & Co.'s Shanghai office has extensive

experience in this regard. This was partly the reason why Ince & Co.'s Shanghai

office was involved in this matter. I believe that the questions raised at paragraph

32 of Mr. Moore's Declaration such as SAFE's approval, authority of Bank of China, and internal approvals were not real issues and would have been easily resolved if Inces Shanghai Office had been instructed to deal with these issues. The Plaintiff simply refused to accept a guarantee to be issued by BOC (see my email to Inces on 21st January 2008 at the Exhibit to this Declaration). It follows that the Plaintiff did not serously consider in good fiath Sinochart's offer of alternative security. Thus, Sinochart was left with no choice but to proceed to incur the costs of posting surety bonds in order to eliminate the interruption of its business caused by Plaintiff's continued service of the Rule B attachment order and the escalating attachment of its property, which by that time exceed US$24 million.

8.   At Paragraphs 34-40 of his Declaraiton, Mr. Moore states that Sinochart did not make extraordinary efforts to reach agreement. This is simply not correct. Sinochart and its representatives repeatedly offered to meet with Plaintiff and its solicitors, Ince & Co., to address all their concerns (see for example, my email to Inces on 21 January 2008) but they refused to meet with us, as I've mentioned above.

9.   In respect of the surety bonds Sinochart posted, I understand that the first year surety bond premium is non-refundable. However, in order to avoid the future costs for Sinochart to maintain the surety bonds, I have been instructed by Sinochart that they are still prepared to offer a Bank of China guarantee for

US$127,520,838 and a Skuld letter of undertaking (for the sum of USD$50 million) in exchange for the Plaintiff's return/surrender of the surety bonds. Of course, the parties would still need to reach a suitable agreement providing for the return of the Bank of China guarantee and Skuld letter of undertaking if the Court rules in Sinochart's favour on its Motion to Vacate the attachment. The draft side agreement (at pages 7 to 11 at Exhibit of Mr. Moore's Declaration) fairly dealt with these issues issues. One additional issue that would need to be addressed in the side agreement would be security for Sinochart's non-refundable costs incurred for the first year surety bond premium.

10.    I cannot understand why Mr. Moore alleged that Sinochart acted in bad faith. Sinochart has made genuine attempts to resolve the securities issues. If the Plaintiff acted in a reasonable manner and in good faith, the security issues would have been resolved without Sinochart having been forced to incur the unreasonable costs associated with posting the surety bonds.

I declare under penalty of perjury and the laws of the United States of America pursuant to 28 USC Section 1746 that the foregoing is true and accurate.

---------------------------------
**Lianjun Li**

**Dated: 2nd July 2008**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
OCEAN LINE HOLDINGS LIMITED

                    Plaintiff,

                                  ECF CASE

      -against-

                                  07-CV-8123 (DC)

CHINA NATIONAL CHARTERING CORP.
a/k/a/ SINOCHART,

                               DECLARATION OF LIANJUN LI

             Defendant.

---

## EXHIBIT TO THE STATEMENT OF LIANJUN LI

## DATED 2ND JULY 2008

---

**Wan, Janice**

| | |
|---|---|
| **From:** | Li, Lianjun |
| **Sent:** | 17 January 2008 01:33 |
| **To:** | 'peter.murray@incelaw.com' |
| **Cc:** | 'ian.chetwood@incelaw.com'; 'matthew.moore@incelaw.com'; 'gwinter@winterscott.co.uk' |
| **Subject:** | RE: "OCEAN VICTORY" -Subject to Contract |
| **Attachments:** | Skuld LOU.doc |

Dear Mattew,

We have checked with the attachments to our previous email. It appears that the Skuld LOU is not attached to our previous email. Please see the attached draft.


**Kind regards**

**Lianjun Li**
**Partner**
**Richards Butler**
**in association with Reed Smith LLP**
**20F Alexandra House, 16-20 Chater Road, Central, Hong Kong**
**Telephone:   (852) 2810 8008**
**Direct Line: (852) 2507 9857**
**Mobile phone: (852) 9452 7791**
**Fax Number:    (852) 2810 1607**
**Email:        lli@rsrbhk.com**


---

**From:** Li, Lianjun
**Sent:** Wed 1/16/2008 12:16
**To:** 'peter.murray@incelaw.com'
**Cc:** 'ian.chetwood@incelaw.com'; 'matthew.moore@incelaw.com'; 'gwinter@winterscott.co.uk'
**Subject:** RE: "OCEAN VICTORY" -Subject to Contract


to:    Mr. Peter Murray - Ince & Co International Law Firm, Shanghai
email:  peter.murray@incelaw.com

cc:    Mr. Ian Chetwood / Mr. Matthew Moore - Ince & Co International Law Firm, London

email:  ian.chetwood@incelaw.com; matthew.moore@incelaw.com

your ref: IAC/MSM.8295/8718

cc:    Mr. Glenn Winter - Winter Scott
email:  gwinter@winterscott.co.uk
your ref: DGW/In/82/139

<<image-1161219-0001.pdf>>  <<image-1161220-0001.pdf>>  <<image-1161221-0001.pdf>>

**Subject to Contract**

30/06/2008

Dear Peter,

We refer to the above matter and write in this open message in respect of the security arrangement.

We write to advise that our clients are prepared to provide two guarantees' (drafts attached: one Bank of China Guarantee and one Skuld Guarantee) for your clients' alleged claims subject to the parties' agreement on the Side Agreement (draft attached).

Please let us know whether your clients' P and I club is willing to provide a LOU for our clients' counter-claims (subject to agreement on the wording). Our clients would be prepared to accept your clients' P and I club's LOU.

Please advise by return whether your clients agree in principle that we can proceed with the security arrangement as outlined in the attached draft Side Agreement.

**Best Regards**

**Lianjun Li**
**Partner**
**Richards Butler in association with Reed Smith LLP**
**20F Alexandra House, 16-20 Chater Road, Central, Hong Kong**
**Telephone:   (852) 2810 8008**
**Direct Line: (852) 2507 9857**
**Mobile phone: (852) 9452 7791**
**Fax Number:    (852) 2810 1607**
**Email:        lli@rsrbhk.com**

30/06/2008

**<u>SUBJECT TO CONTRACT</u>**

Ocean Line Holdings Limited
Suite 2101  21/Fl
Two International Finance Centre
8 Finance Street
Central
Hong Kong


**[DATE]**


**SKULD GUARANTEE**


Dear Sirs,

| | | |
|---|---|---|
| **Vessel** | : | Ocean Victory |

**Charterparty**          :          Between Ocean Line Holdings Limited as disponent owners and China National Chartering Corp ("Sinochart") as time charterers, dated 2 August 2006.


Casualty          :          The vessel was damaged and ran aground whilst attempting to leave the port of Kashima, Japan on 24th October 2006. Salvage assistance was obtained but the vessel ultimately became a total loss. Thereafter operations were undertaken to remove the wreck of the vessel and to reinstate local infrastructure damaged or removed in the course of the casualty and the subsequent salvage and wreck removal operations.

**Claim**          :          All the disponent owners' claims against Sinochart whatsoever and howsoever arising out of and/or in connection with the charterparty and/or the casualty and whether sounding in damages or indemnity or otherwise.

**Security**          :          The total sum secured by and on behalf Sinochart in aggregate is US$ 177,520.838 – made up of two guarantees, (a) this guarantee in the sum of US$ 50,000,000 provided by Assuranceforeningen Skuld ("Skuld")    ("Skuld Guarantee") and (b) a further guarantee in the sum of US$ 127,520,838 provided by the Bank of China ("the Bank of China Guarantee").

In consideration of your discontinuing your proceedings brought under Supplemental Rule B in New York and your consenting to the release of funds belonging to Sinochart which have been restrained pursuant to those proceedings and in consideration of your releasing and/or refraining from arresting or otherwise detaining any other assets or property belonging to Sinochart or in the same or associated ownership, management, possession or control, for the purpose of obtaining security in respect of your above claims, we, Assuranceforeningen Skuld hereby irrevocably undertake, as primary debtor and not merely as surety only, to pay to you on your first and any subsequent written demand(s) such sum or sums as may be due to you from Sinochart in respect of your said claims, whether by written agreement between the disponent owners and Sinochart or by final or interim final Arbitration Award(s) in London in respect of which any right of appeal shall have lapsed or been exhausted and/or, in the case of any appeal, final judgment of the High Court of Justice in London or a higher appellate court (or, for the avoidance of doubt, any combination of agreement, Award and/or judgement), whether in respect of the said claims, interest and/or costs (which expression includes Court fees and the fees and other costs and/or expenses of any arbitration tribunal) **PROVIDED ALWAYS** that:

    (a)   our total liability hereunder shall not exceed the sum of US$ 50 million (United States Dollars fifty million only); and

    (b)   each such demand is supported and accompanied by a copy of the agreement, Award and/or judgment in question; and

    (c)   the amount of each such demand does not exceed the amount agreed and/or awarded and/or adjudged to be due.

And for the consideration aforesaid we hereby irrevocably confirm:-

(i)    We will not be released from our obligations at any time by reason of forbearance, waiver or other indulgence granted to or by Sinochart or any legal limitations on, or disability or incapacity of Sinochart, or the liquidation, dissolution, bankruptcy or similar of either Sinochart or yourselves, or any intermediate performance by Sinochart of any of their obligations arising out of or in relation to the casualty or any act, omission, defence or counterclaim which might otherwise impair or discharge our liability, under this Skuld Guarantee.

(ii)    Any payment by us under this Skuld Guarantee shall be made without any set-off, counter-claim, deduction or withholding for or on account of any taxes, duties or charges of whatsoever nature.

(iii)    We shall have no liability hereunder in respect of any sum or sums demanded which has or have been otherwise satisfied, whether that sum or those sums were satisfied by means of payment under the Bank of China Guarantee or otherwise. To the extent that we pay any sums to you which have already been satisfied, whether under the Bank of China Guarantee or otherwise, you shall immediately repay to us upon our written

demand that sum or those sums, together with interest thereon from the date(s) of payment by us.

(iv)    We hereby confirm that any payment by us under this Skuld Guarantee will be made within 14 days of receipt of notice in writing of your demand for payment.

(v)    We hereby confirm that you are entitled to draw down on this Skuld Guarantee prior to, concurrently with, or after, any demand upon or payment received under the [Bank] Guarantee. We hereby confirm that payment under this Skuld Guarantee is not subject to any payment first having been made under the [Bank] Guarantee. Further the maximum amount payable under this Skuld Guarantee will not be reduced by any payment made under the [Bank] Guarantee. We accept that we are jointly and severally liable as primary debtors for all sums due to you from Sinochart in respect of your claims, subject only to the maximum liability that we have under the Skuld Guarantee.

(vi)    We hereby confirm that we have received irrevocable authority from Sinochart to give this Skuld Guarantee in these terms.

Any demand under this Skuld Guarantee shall be in writing marked for the attention of [*insert details*] and shall be deemed to be duly served and received if left at our registered office at --------------------, or if received via registered first class mail (or by airmail if overseas) or if received by email (Mail Address:---------) or if received in legible form by fax (Fax No: ------------------).

**This Guarantee is given without prejudice to all rights and defences which may be available to Sinochart including, but not limited to, any rights of limitation of liability.**

This Skuld Guarantee shall be governed by and construed in accordance with English law and we agree to submit to the exclusive jurisdiction of the High Court of Justice in London for the enforcement hereof.   We confirm that our registered or principal office is situated at [**insert details**]. We further undertake that within 7 days of receipt of a request to do so, we shall instruct and authorise English solicitors to accept and acknowledge service of any proceedings brought in the High Court of Justice in London in connection with this Skuld Guarantee.

_____

Authorised signature(s)

**Wan, Janice**

| | |
|---|---|
| **From:** | Li, Lianjun |
| **Sent:** | 17 January 2008 21:00 |
| **To:** | Ian Chetwood Inces London |
| **Cc:** | Matthew Moore; Peter Murray; Glenn Winter |
| **Subject:** | Ocean Victory Alleged Unsafe Port Claim |

Dear Ian,

We thank you for your fax of 16 January and comment as follows:

1. Sinochart made their open offer to provide two securities in October 2007 through Winter Scott but the offer was declined;

2. Sinochart has been attempting to provide the securities. As Owners are aware, Sinochart has a P&I cover of US$ 50 million and therefore, Sinochart's offer of two securities are reasonable in the circumstances. Sinochart is of course to accommodate the Owners' requirements in respect of the issues relating to two securities. We cannot see that those issues cannot be resolved legally and practically. To avoid any doubt and for the record, please advise whether the Owners will accept a single bank guarantee to be issued by Bank of China Head office.

3. We note your comments on the Side Agreement. We have recommended the clients considering your comments. Please advise whether your clients have any other comments. This is the exact reason why the parties will need to negotiate the terms given that this matter is of a nature of complexity. Naturally, there is nothing wrong to mark the correspondence on a subject to contract basis because the different jurisdictions are involved and the parties need to agree on various arrangement;

4. Sinochart has been and will be in a genuine attempt to provide security for the owners' alleged unsafe port claim. Sinochart is also willing to accept a club LOU for their counter-claims from the Owners and to offer the two guarantees in order to avoid the expensive bond fees to be incurred by both parties. As you are aware, the bond company will charge a fee of 1-2% of the amount per year.

5. Please advise whether your clients are in principle to accept two securities or a single BOC bank guarantee. Please also advise whether your clients wish to put up a security for Sinochart's counter claims.

Look forward to hearing from you. In the meantime, needless to say that all our clients' rights are fully reserved.

Kind regards
Lianjun Li
Partner
Richards Butler in association with Reed Smith LLP 20F Alexandra House, 16-20 Chater Road, Central, Hong Kong
Telephone:   (852) 2810 8008
Direct Line: (852) 2507 9857
Mobile phone: (852) 9452 7791
Fax Number:    (852) 2810 1607
Email:      lli@rsrbhk.com

PS: Please use my new email address.

李连君
合伙人
齐伯礼律师行
礼德律师行联营行
香港中环遮打道16-20号历山大厦20楼
电话：（852）2810 8008
直线：（852）2507 9857
手提：（852）9452 7791
传真：（852）2810 1607
電郵：   lli@rsrbhk.com

备注：请使用我新的电邮地址

1

**Wan, Janice**

| | |
|---|---|
| **From:** | Li, Lianjun |
| **Sent:** | 21 January 2008 19:14 |
| **To:** | 'ian.chetwood@incelaw.com' |
| **Cc:** | 'matthew.moore@incelaw.com'; 'peter.murray@incelaw.com'; 'gwinter@winterscott.co.uk' |
| **Subject:** | Re: "OCEAN VICTORY" (Our ref: LJL/jw/C923-070) |
| | |
| **Attachments:** | img-1211859-0001.pdf |

to:    Mr. Ian Chetwood - Ince & Co International Law Firm, London
your ref: IAC/MSM.8295/8718

cc:    Mr. Matthew Moore - Ince & Co International Law Firm, London
your ref: IAC/MSM.8295/8718

cc:    Mr. Peter Murray - Ince & Co International Law Firm, Shanghai

cc:    Mr. Glenn Winter - Winter Scott
your ref: DGW/In/82/139


Dear Ian,

We refer to our email of 17th January 2008 to which we have yet received your response, in particular, the BOC guarantee issue.

As your clients may be aware, Bank of China has now ranked as the second largest bank in the world according to its market value reported by Hong Kong Economic Times on 19th January 2008. A copy of the report and its English translation is **attached** for your ease of reference. Our clients believe that your clients will accept the BOC guarantee but please let us have your confirmation.

In order to sort out the security issues without any further delay, our clients have also instructed their legal advisers to meet you either in London or in Hong Kong or in Mainland China as soon as possible so that the parties can address and respond to their concerns on the securities arrangement. If you wish the meeting to take place in London, please contact Glenn. If the meeting is to take place between your/your Shanghai/Hong Kong office and us in this region, please let us know so that we can contact your Shanghai/Hong Kong office.

We look forward to hearing from you at your earliest convenience.



img-1211859-0
)01.pdf (138 KB

Best regards,

**Lianjun Li**
**Partner**
**Richards Butler**
**in association with Reed Smith LLP**
**20F Alexandra House, 16-20 Chater Road, Central, Hong Kong**
**Telephone:  (852) 2810 8008**
**Direct Line: (852) 2507 9857**
**Mobile phone: (852) 9452 7791**

**Fax Number: (852) 2810 1607**
**Email:**        **lli@rsrbhk.com**
**Website:**     <u>**www.reedsmith.com**</u>
(att.)

(translation)

## Sub-prime shake-ups ICBC ranks world No. 1 in assets

Hong Kong Economic Times
Key News
2008-01-19

While the shares of many financial institutions in Europe and the United States plummeted under the influence of the sub-prime crisis and the resulting heavy losses, there is a major shift in the global ranking of the market value of banks.

The ranking of European and the US banks who used to be among the top three of the world dropped significantly.  Based on market value, the top 3 banks in the world are all Chinese banks. The ranking is headed by Industrial and Commercial Bank of China  (1398), followed by Bank of China (3988) and China Construction Bank (0393).

...

香港經濟日報網上新聞庫 www.hket.com　　　　　　　　　　　Page 1 of 2



| 集團網站 | HKET Group Website | 集團成員網站 |

要聞　金融　投資　工商　港聞　政治　地產　中國　國際　副刊.影視樂　行



要聞

2008年01月19日 星期六

次按大執位 工行市值冠全球

# 次按大執位　工行市值冠全球



　　【本報訊】歐美眾多金融機構因為陷入抵押貸款信用危機而損失慘重，股價亦應聲急挫，令全球銀行的市值排名出現「大執位」。過去一直雄踞三甲位置的歐美銀行排名大降，目前按市值計算全球最大的三間銀行均為中資銀行，依次為工商銀行（1398）、中國銀行（3988）及建設銀行（0939）。

## 花旗第1滑落至第7

　　在眾多銀行及券商中，花旗承受的次按的打擊無疑是最大的，第四季度需作出高達180億美元的減值規模，遠遠超過了瑞士銀行的100億美元，和摩根士丹利的94億美元，亦令到其排名大幅滑落。這間去年還是全球最大的金融機構，目前在金融機構中的市值排名中已跌至第七位，亦落後於同業美國金融股份的美國銀行及摩根大通。

　　至於港人熟悉的滙豐控股（0005），在股價持續下滑之下，市值已跌至1,803億美元，跌出三甲之列，按市值計算為全球第四大金融機構。

　　分析員指出，雖然市場仍在評估滙豐需為次按及相關資產所作出的撥備，但滙豐畢竟仍有亞洲業務作支持，相信股價的跌幅應不如美國銀行股嚴重。

　　自工商銀行上市後，其市值一直攀升，但在排名上仍與滙豐、美銀及花旗等大行相若。然而，隨着次按風暴惡化，其市值亦開始大幅拋離歐美銀行。中國銀監會主席劉明康便指出，按照2007年12月末市值計算，工行、中行、建行已躋身全球銀行前三甲。

## 中行建行佔二三位

　　雖然工商銀行的股價，亦由高位的7.49元下滑至目前的5.27元，幅度幾達3成，但以其市值3,251.96億美元計算，已大幅拋離第二、三名的中行及建行，而花旗的股價急跌，其現值只有餘下1,246.65億美元，即將滙豐及花旗的市值相加，才等於一間工行。

　　劉明康在出席中銀監2008年工作會議時指出，截至2007年12月末，銀行業金融機構總資產從2002年末23.7萬億元增加到52.6萬億元，翻了一番，而銀行業的利潤，亦從364億元增加到2,987億元（稅前未經審計）。

香港經濟日報網上新聞庫 www.hket.com

從各銀行的市帳率及市盈利，可見投資者對中資銀行的信心遠較歐美銀行為高。一美資對沖基金經理指出，隨着美國經濟陷入衰退，銀行的收入亦會受到影響，即使不以市值計算，相信未來幾年全球銀行的排名亦會「大執位」，進一步反映中資銀行在國際市場上的地位。

私隱條例 | 內容授權 | 免責聲明 豁免條款 | 廣告查詢 | 聯絡我們

香港經濟日報版權所有    © 2007

**Wan, Janice**

| | |
|---|---|
| **From:** | Li, Lianjun |
| **Sent:** | 22 January 2008 19:06 |
| **To:** | 'matthew.moore@incelaw.com' |
| **Cc:** | 'ian.chetwood@incelaw.com'; 'peter.murray@incelaw.com'; 'gwinter@winterscott.co.uk' |
| **Subject:** | Re: "OCEAN VICTORY" (Our ref: LJL/jw/C923-070) |
| | |
| **Attachments:** | img-1221816-0001.pdf |

to:     Mr. Matthew Moore - Ince & Co International Law Firm, London
email: matthew.moore@incelaw.com
your ref: IAC/MSM.8295/8718

cc:     Mr. Ian Chetwood - Ince & Co International Law Firm, London
email: ian.chetwood@incelaw.com
your ref: IAC/MSM.8295/8718

cc:     Mr. Peter Murray - Ince & Co International Law Firm, Shanghai
email: peter.murray@incelaw.com

cc:     Mr. Glenn Winter - Winter Scott
email: gwinter@winterscott.co.uk
your ref: DGW/In/82/139


Dear Matthew,

Thank you for your email of 21st January 2008 and respond (adopting your paragraph numbers) as follows:-

(1)     Our clients prefer to provide two guarantees, namely a Skuld LOU for the sum of US$50 million and a bank guarantee for the balance amount.

Our clients have hoped and are hoping that your clients will accept the arrangement of the two guarantees. As you were advised, Skuld will not be able to issue a single LOU to cover all the claims amount because the alleged claims amount exceeds the club cover of US$50 million. As we mentioned in our previous emails, our clients believe that there is no reason for the two securities not to work hand in hand.

If your clients do not accept two guarantees, our clients will have little choice but to put up bonds or offer a single BOC guarantee.

If your clients accept the two guarantees arrangement, our clients will immediately process the BOC guarantee and the Skuld LOU. Please let us know whether you have any comments on the draft BOC guarantee and Skuld LOU wording attached to our email of 17th January 2008.

If your clients insist in a single BOC guarantee, please let us have the draft wording so that our clients will approach the bank for their approval. In the meantime, we **attach** the sample draft provided by the BOC. We understand that the BOC will be able to issue the guarantee in the current form within 10 working days.

(2)     As discussed previously, we understand from our clients that the bank has advised our clients that there is no requirement for BOC to have a prior approval from SAFE. The bank is only required to file with SAFE after the bank has issued the bank of guarantee. The draft BOC guarantee sent to you on 17th January 2008 has reflected this. We understand that Inces Shanghai office has experience to

deal with the formalities given BOC guarantees are widely acceptable.

(3)   Our clients' offer to provide security is an interim security.

(4)   The conditions for our clients' offer are to reserve their rights in the US proceedings (including the challenging of the attachment and the request for the counter claims from the Owners) and to release all the attached funds upon provision of the agreed security.

As you may recall, we have proposed an agreement to deal with all the relevant issues. Our clients would prefer these issues to be dealt by a single agreement. However, our clients are prepared to put up the agreed security first for the releasing of the funds and to deal with the challenge of the proceedings and the counter claim security issues in the US in due course.

(5)   We understand that if the BOC wording is agreed, it will take no more than 10 working days for the BOC to issue the guarantee. If your clients accept the BOC guarantee and let us have the revised wording, our clients can then immediately approach the BOC.

(6)   We understand from our clients that if the BOC guarantee is issued by their overseas correspondent banks, the costs will be much more than the fees to be paid to the bond companies and further, the process will take much longer time. Therefore, we have been advised that if your clients do not accept the BOC guarantee, our clients will have no other choice but to arrange the bond companies to issue the bonds next week.

We should be grateful if you could take your clients' urgent instructions and let us know within this week your clients' position, based on our clients' reservation in the US, as to the following:

1.   whether your clients accept the above mentioned two guarantees arrangement: Skuld LOU and the BOC Guarantee; or

2.   if your clients reject the above offer, whether your clients accept a single BOC guarantee.

As mentioned in Glenn's fax, he is ready to meet with you to discuss the guarantee wordings in London if necessary. As we also mentioned in our previous emails, we are also ready and willing to meet and discuss with you or your office in this region as soon as possible so that we can finalize the security arrangements without any delay.


img-1221816-0
001.pdf (31 KB)

Best regards,

**Lianjun Li**
**Partner**
**Richards Butler**
**in association with Reed Smith LLP**
**20F Alexandra House, 16-20 Chater Road, Central, Hong Kong**
**Telephone:   (852) 2810 8008**
**Direct Line: (852) 2507 9857**
**Mobile phone: (852) 9452 7791**
**Fax Number: (852) 2810 1607**
**Email:       lli@rsrbhk.com**
**Website:     www.reedsmith.com**
(att.)

TO:

DEAR SIRS,

VESSEL:
CHARTERPARTY:
CLAIM:

IN CONSIDERATION OF _____
WE, _____BANK, AT REQUEST OF SINOCHART HEREBY ISSUE OUR
IRREVOCABLE LETTER OF GUARANTEE NO _____ FOR SUM NOT
EXCEEDING USD _____ (SAY UNITED STATES
DOLLARS _____ONLY) IN RESPECT OF THE ABOVE CLAIM
TO BE DUE TO YOU FORM SINOCHART AND UNDERTAKE TO PAY YOU UPON
OUR RECEIPT OF YOUR WRITTEN DEMAND STATING
_____ACCOMPANIED EITHER BY A COPY OF NON-APPEALABLE
JUDGMENT OF _____(OR ARBITRATION AWARD FORM_____) OR A
BINDING AMICABLE SETTLEMENT SIGNED BETWEEN _____AND
_____(HEREINAFTER COLLECTIVELY CALLED THE "FINAL
JUDGEMENT") THE AMOUNT THE FINAL JUDGEMENT ORDER THE SINOCHART
TO MAKE PAYMENT TO YOU.  BUT OUR LIABILITY UNDER THIS GUARANTEE
SHALL NOT EXCEED AGGREGATE AMOUNT OF USD_____ (SAY
UNITED STATES DOLLARS _____ONLY) INCLUSIVE OF LEGAL
INTEREST AND COSTS.

THIS GUARANTEE SHALL BE VALID FOR A PERIOD OF TWELVE MONTHS FROM
THE DATE OF ITS ISSUE AND SHALL BE AUTOMATICALLY RENEWABLE FOR
FURTHER CONSECUTIVE PERIODS OF TWELVE MONTHS EACH AND WILL
AUTOMATICALLY AND IMMEDIATELY EXPIRE UPON THE FULFILMENT OF
OUR UNDERTAKING HEREUNDER DURING THE FIRST PERIOD OR DURING ANY
SUBSEQUENT PERIOD OF TWELVE MONTHS.

THIS GUARANTEE IS GIVEN WITHOUT PREJUDICE TO ALL RIGHTS AND
DEFENCES WHICH MAY BE AVAILABLE TO SINOCHART INCLUDING, BUT NOT
LIMITED TO, ANY RIGHTS OF LIMITATION OF LIABILITY.

THIS GUARANTEE SHALL BE GOVERNED BY AND CONSTRUED IN
ACCORDANCE WITH ENGLISH LAW AND _____