UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————X
OCEAN LINE HOLDINGS LIMITED,

                    Plaintiff,

          -   against –                                   ECF CASE

                                                          07-CV-8123 (DC)
CHINA NATIONAL CHARTERING CORP.
a/k/a SINOCHART                                           DECLARATION OF
                                                          GLENN DANIEL WINTER
                    Defendant.
————————————————X

I, **GLENN DANIEL WINTER** declare under penalty of perjury under the laws of the United States of America as follows:

1        I am a Solicitor of the Supreme Court of England and Wales and the Senior Partner of the firm Winter Scott, in London.  I am duly authorised to make this declaration on behalf of the Defendant, China National Chartering Corp., a/k/a Sinochart, whom my firm represents in London, in support of their motion for the provision of security for costs by the Plaintiffs, pursuant to Supplemental Rule E(2)(b) and in response to the Declaration of Mathew Stephen Moore, dated 12 June 2008 filed by the Plaintiffs in opposition to that motion.


2        I exhibit to this Declaration a bundle of documents marked Exhibit GDW1.  I confirm these are true copies of the documents

that have been exchanged on behalf of Sinochart in this matter. These documents are numbered consecutively and are identified herein by reference to those page numbers.

3    I was providing advice to Sinochart whilst negotiations between themselves and the Plaintiff for the provision of security for the Plaintiffs' claim were continuing, although as those negotiations were carried out through various channels I was not involved in every aspect.

4    The question of security was originally raised by the Plaintiff in an email (rather than fax) from the Hong Kong office of Mr. Moore's law firm, Ince & Co., on 15th February 2007 (rather than 22nd February 2007 as Mr Moore states) to Sinochart's Hong Kong lawyers, Richards Butler.  A copy of that fax is attached (Exhibit GDW1, pages 1-2). Despite demanding security of approximately US$150,000,000 that fax was very brief and provided no details of the basis of the claim or why Sinochart were liable for it.  It also expressly acknowledged that it would be necessary for there to be discussions on the wording of any security and the actual amount of security to be provided.

5 We were asked to respond to Ince & Co., and did so by fax dated 7th March 2007 requesting further information to enable us properly to consider their request with Sinochart. However, Ince & Co. refused to provide any further information. We again wrote to Ince & Co., on 13th March 2007 explaining why we required the information requested both with regard to the cause of the incident and the quantum of the security requested (copies of these exchanges are at Exhibit GDW1, pages 3 – 8).

6 In my opinion those requests were entirely legitimate and wholly reasonable, given the total lack of detail provided in Ince & Co's original demand, the very substantial amount of security requested and the absence of any proper breakdown. In my view, it is inappropriate and incorrect for Mathew Moore to now seek to characterise Sinochart's approach as showing that Sinochart were *"intent upon avoiding putting up security on a voluntary basis"* (at paragraph 15) particularly as my firm heard nothing further from Ince & Co in connection with the Plaintiff's request for security, in response to our fax of 13th March 2007, until after they obtained the Rule B attachment in September

contrary to Mathew Moore's assertion (at paragraph 16) that "*through out this period [February – August 2007] ... efforts to persuade Sinochart to provide satisfactory security came to nought*".

7      It is also interesting to note that when Sinochart first indicated that they may seek counter-security (our fax to Ince & Co of 16th October 2007, Exhibit GDW1, pages 9 - 11), Ince & Co immediately requested (in their fax of 17th October 2007) that we provide them with clarification of certain of Sinochart's claims, the basis for bringing those claims against the Plaintiffs and clarification of the quantum of various items (Exhibit GDW1, pages 12 – 13).

8      As far as I am aware, it was only in August 2007 that the Plaintiff again raised the question of security, this time through their own insurers (P&I Club), directly with Sinochart's P&I Club, Skuld. Again they did not provide the details we had requested. It was only a few days before the Plaintiff obtained the Rule B attachment that they provided Skuld with some further information on the quantum of the security request (with figures

that were significantly different to those provided in February 2007).

9    After the Plaintiff obtained the Rule B attachment, it was repeatedly made clear to Plaintiff through its attorneys, Ince & Co., that Sinochart were willing to provide security in the form of a Skuld Letter of Undertaking (for US$50 million) and a Bank of China Guarantee for the balance (approximately US$127 million); see for example our messages of 8th October 2007, 11th October 2007 and 16th October 2007.   Exhibit GDW1, pages  14 – 16 and 9 - 11).

10    One of the criticisms Mr. Moore levels at Sinochart is that their proposals were headed "subject to contract" (his paragraph 32). In my experience, it is very common for a party to agree "in principle" to provide security subject to the parties reaching an agreement on the form and amount of the security.  Indeed, it is often necessary to do so where a third party, such as a bank, is involved as the bank will have to approve the wording of the guarantee before it can be issued; clearly a party can not commit themselves to provide security in a particular form until they can

be sure that the bank will provide that security.  The negotiation of the wording of security for such a substantial sum would never be straightforward.

11     Owners repeatedly refused to accept such security, and insisted upon the provision of a single guarantee, notwithstanding the fact that the were fully aware that the limit of Sinochart's cover with their insurer, Skuld, was US$50 million, and therefore, unsurprisingly, Skuld were not in a position to provide security beyond that amount.

12     The Plaintiff's objections to that proposal were set out in Ince & Co.'s email of 21st January 2008 (Mr. Moore's Declaration, Exhibit MSM1 at pages 22-24) and apparently consisted of what were, in my view, relatively minor grounds concerning how these two securities would operate together in different jurisdictions and apparent inconsistencies in a short side agreement, setting out various procedural matters depending upon the outcome of Sinochart's challenge to the Rule B attachment and their request for countersecurity (although this agreement did not, contrary to the assertions made by Ince & Co. in their email of 21st January,

did not specifically provide that Ince & Co. be authorised to accept service of High Court proceedings, but only proceedings in respect of claims under the charterparty).

13    In my opinion, the concerns raised by Ince & Co. were ones which could readily have been overcome by careful drafting following constructive discussion between the parties.  In this regard, it is not surprising that the provision of security for such a large amount would not be straightforward and would require detailed dialogue between the parties. To this end, on 21st and 23rd January 2008, we wrote to Ince & Co, proposing that we meet with them to work through the wording and offering to travel to their offices to facilitate such discussions.  See the attached documents at pages 17 to 19 of Exhibit GDW1, attached hereto.

14    Ince & Co. rejected our offer to meet.  In my view, this demonstrated a clear unwillingness to deal with the issue of security in a sensible and constructive manner.

15    It is my opinion that the offer of two securities (which in my experience is not unusual when only part of a claim is covered by

one insurer) was a reasonable proposal. Ince & Co.'s objections could and would have been satisfactorily addressed had they met with us to discuss the details. Unfortunately, they were not willing to engage in any dialogue. I do find this very surprising if the Plaintiff's intention was to obtain satisfactory security at a minimal cost to both parties and not only to try to cause difficulties for Sinochart.

16    I declare, under penalty of perjury and the laws of the United States of America pursuant to 28 USC Section 1746 that the foregoing is true and accurate.

Signed    ..........................................................

Glenn Daniel Winter

Date:      2nd July 2008

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
————————————————————X
OCEAN LINE HOLDINGS LIMITED,

                    Plaintiff,

        -   against –                              ECF CASE

CHINA NATIONAL CHARTERING CORP.                    07-CV-8123 (DC)
a/k/a SINOCHART
                                                   DECLARATION OF
                                                   GLENN DANIEL WINTER
                    Defendant.
————————————————————X

EXHIBIT GDW1

EXHIBIT TO THE DECLARATION OF
GLENN DANIEL WINTER

DATED 2ND JULY 2008

# Email



**INTERNATIONAL LAW FIRM**

Partners
AWY Chan
RSY Lau
PJ Murray*
DJ Beaves**
M Cross
KCK Lee
HT Hirst
P Ho*

Consultant
SJ Latham

PRC Lawyer
VC Xu

*Non resident
** Notary Public

Room 3801·6, 38th Floor
ICBC Tower, Citibank Plaza
3 Garden Road
Hong Kong

Tel +852 2877 3221
Fax +852 2877 2633
www.incelaw.com

Please contact us immediately if any part of this email is incorrectly received.

| From | Our Ref | Date |
|---|---|---|
| Harry Hirst / Janice Lee | HTH/JL (06.7011) | 15 February 2007 |

| To | Attention | Your Ref |
|---|---|---|
| Richards Butler | Mr Lianjun Li<br>Mr Marcus Dodds | |

| Total number of pages | | Email address |
|---|---|---|
| 2 | | liangjunli@richardsbutler.com.hk<br>marcusdodds@richardsbutler.com.hk |

| Copies to | | Email address |
|---|---|---|
| | | |

Matter

**Ocean Victory - Unsafe Port Claim**

We refer to our conversation yesterday with regards security for Owners' unsafe port claim.

At present and entirely without prejudice, a very preliminary breakdown of Owners' claim is as follows:

| Head of Claim | Amount (USD) |
|---|---|
| Loss of Vessel | 70,000,000.00 |
| Loss of use of Vessel (180 days x USD58,500.00 per day) | 10,530,000.00 |
| Salvage (SCOPIC) | 25,000,000.00 |
| Removal of Wreck | 40,000,000.00 |
| Loss of cargo | 2,000,000.00 |
| Ancillary (crew repatriation costs, agents' fees etc) | 500,000.00 |
| Total | 148,030,000.00 |



62992



15 February 2007

We look forward to hearing from you as to Charterers' position in putting up security on a voluntary basis subject to quantum and wording. With regards to the amount owed by Owners to Charterers under Charterers' Final Statement of Account, we will revert as soon as we hear further from you on the issue of security.

We will revert separately on the questions you have raised with regards to the bunkers.

Lastly, please kindly direct all future further enquiries now on these and other matters arising from the charter party to us.

Yours faithfully,

Harry Hirst / Janice Lee
**Ince & Co**



# Winter Scott
## Solicitors

19-21 Great Tower Street
London EC3R 5AR
Telephone: + 44 (0)20 7648 2460
Fax: + 44 (0)20 7626 5591
DX: 518 London/City
E-mail: firstinitialsurname@winterscott.co.uk

---

### FAX TRANSMISSION

DATE:           7th March 2007

1TO:            020 7481 4968
                Ince & Co, London
                Ian Chetwood/Matthew Moore

COPY TO:        00 852 2877 2633
                Ince & Co, Hong Kong
                Harry Hirst

FROM:           Glenn Winter
OUR REF:        GDW/kr/82/139

NO. OF PAGES:   3

CONFIDENTIALITY NOTICE: This facsimile is intended only for the addressee. It may contain privileged and/or confidential information. If you are not the intended recipient please inform us on the above telephone number immediately and do not disclose the contents or take copies.

---

Re:  "OCEAN VICTORY" – Alleged unsafe port claim

We thank you for your fax.

We have noted your Clients' request for security in the region of US$150 million in respect of an unsafe port claim.

In view of the sum involved, we would ask you to provide the following items so that we can consider your request further with our Clients:-

1.    Details of each respect in which your Clients consider Kashima to have been an unsafe port.

2.    Clarification as to the reasons why your Clients consider the casualty occurred; in particular:-

      (a)   Is it still your Clients' position that the vessel was ordered by Kashima Port Authority to leave the berth?

      (b)   Were there any problems with the engine, steering gear, VHF, Auto Identification System and were all of these items being used without problem during the vessel's departure?

---

Partners: Glenn Winter Ken Scott Michael Ellis Damian Wilkes Tim Houghton James King
Associates: Richard Verney (not admitted)                                    VAT No GB 819 4124 16
Regulated by the Law Society

③

(c)    What was the vessel's course in leaving the inner harbour and when and at what position, did she attempt to turn?

3.    A copy of the following documents:-

(a)    The vessel's chart showing the vessel's positions;

(b)    Any departure plan prepared by the Master;

(c)    The pilot card signed by the Master;

(d)    The engine room bell book and/or any computer printout showing engine movements;

(e)    The course recorder;

(f)    The GPS positions (or details if not extractable);

(g)    Deck logs (fair and rough);

(h)    Engine logs (fair and rough);

(i)    Weather forecasts received on board;

(j)    Correspondence exchanged with the vessel whilst at Kashima (including correspondence with the Port Authority, agents and Owners);

(k)    Any inventory or other documents relating to the number and type of mooring ropes carried on board;

(l)    Any record or printout showing the vessel's speed over the ground;

(m)    Any Note of Protest made by the Master.

(n)    A copy of the hull and machinery policy (including the insured amount).

4.    Any statements already made by the Master, duty officer or crew members.

5.    Details of the salvage operations, involving reasons for the delay in refloating the vessel, together with clarification as to the current status of the claim for remuneration.

6.    The following documents relating to the salvage operations:-

(a)    Correspondence exchanged with the salvors;

(b)    Reports issued by the SCR and SHR.



7.    Details of the current position as to the wreck removal, including clarification as to whether a contract price has yet been agreed.

8.    Clarification of the legal basis on which a claim for loss of use can be made.

We look forward to hearing from you as soon as possible.

Yours faithfully,

WINTER SCOTT

5

Ince&Co+442076233225 09 March 2...  PAGE...
TO:Glenn Winter   COMPANY:Winter Scott

# Fax



### INCE & CO

INTERNATIONAL
LAW FIRM

Ince & Co is a partnership of solicitors and registered foreign lawyers and is regulated by the Law Society. A list of partners is open to inspection at the office shown.

This message and any attachments are confidential to the intended recipient and may be privileged. If you are not the intended recipient we request that you contact us and not make any use of them pending arrangements for their return or destruction.

Please contact us immediately if any part of this transmission is incorrectly received. This document has been generated electronically and therefore may not include a signature.

International House
1 St Katharine's Way
London E1W 1AY
DX 1070 London City

Tel +44 20 7481 0010
Fax +44 20 7481 4968
www.incelaw.com

| From | Our Ref | Date |
|---|---|---|
| Ian Chetwood/Matthew Moore | IAC/MSM/8295/8718 | 09 March 2007 |
| To | Attention | Your Ref |
| Winter Scott | Glenn Winter | GDW/kr/82/139 |
| Total number of pages | Town/Country | Fax Number |
| One | London/UK | 020 7626 5591 |
| Copies to | Attention/Ref | Town/Country/Fax Number |

Matter

**OCEAN VICTORY - Unsafe Port Claim**

We confirm receipt of your fax of 7 March 2007.

The provision of security is not contingent upon the requests you have set out being dealt with now. The time for pleading the case, exchanging disclosure and exchanging witness statements has yet to be reached.

We have told you that steps will be taken to secure our clients' claims. In the absence of an offer to secure these claims on a voluntary basis, please take this message as notice that action will be taken to obtain security without further reference to you.

We note you have been instructed by the time charterers' P&I Club, Skuld. Can we take it that any correspondence which is directed to you will also be passed onto Sinochart/Richards Butler or should we be copying them in on these exchanges?

Regards,
Ince & Co
*[This is a computer generated fax and is therefore unsigned]*





# Winter Scott
## ˙olicitors

St Olave's House
Ironmonger Lane
London EC2V 8EY
Telephone: + 44 (0)20 7367 8989
Fax: + 44 (0)20 7726 2371
E-mail: firstinitialsurname@winterscott.co.uk

---

## FAX TRANSMISSION

DATE:              13th March 2007

1TO:               020 7481 4968
                   Ince & Co, London
                   Ian Chetwood/Matthew Moore – Ref: IAC/MSM/8295/8718

COPY TO:           00 852 2877 2633
                   Ince & Co, Hong Kong
                   Harry Hirst

FROM:              Glenn Winter
OUR REF:           GDW/ln/82/139

NO. OF PAGES:      2

CONFIDENTIALITY NOTICE: This facsimile is intended only for the addressee. It may contain privileged and/or confidential information. If you are not the intended recipient please inform us on the above telephone number immediately and do not disclose the contents or take copies.

Re: "OCEAN VICTORY" – Alleged unsafe port claim

We refer to your fax of 9th March, the contents of which are totally unacceptable.

This is not, on any view, a normal claim.

Firstly, it appears clear that the claim resulted from the negligence of the Master. Apart from a one line bare assertion that the port was "unsafe", you have provided no particulars (let alone evidence) explaining how and why the port was unsafe.

Secondly, your Clients are asking for security for a very substantial sum (approximately US$150,000,000) without any detailed breakdown as to how the individual items making up this sum are calculated; for example, there is a request for security in the sum of US$40,000,000 for wreck removal, without any explanation as to the origin of that figure.

In these circumstances, it is patently reasonable for us to ask you to provide particulars of the basis on which you are claiming from our Clients, together with documents supporting your request, in order to enable our Clients to give proper consideration to the matter.

⑦

---

Partners: Glenn Winter Ken Scott Michael Ellis Damian Wilkes Tim Houghton James King
Associates: Richard Verney (not admitted)
Regulated by the Law Society                                    VAT No GB 819 4174 16

We must therefore ask you to confirm, within 5 working days, that you will not take any steps to obtain security until we have a proper response to our request.

If you are not prepared to provide that confirmation, we would ask you to draw the attention of this correspondence to any Court to which your Clients make any application in respect of security. In addition, we must reserve our Clients' rights to take appropriate steps against your Clients.

We hope that this will not be necessary and that you will deal sensibly with this matter.

Skuld have asked us to advise that they previously asked you only to correspond with ourselves.

Yours faithfully,

WINTER SCOTT

**Please note we have moved and our new contact details are as above for all future correspondence.**



# Winter Scott
Solicitors

St Olave's House
Ironmonger Lane
London EC2V 8EY
Telephone: + 44 (0)20 7367 8989
Fax: + 44 (0)20 7726 2371
DX: 42602 Cheapside
E-mail: firstinitialsurname@winterscott.co.uk

## FAX TRANSMISSION

DATE:              16th October 2007

TO:                020 7481 4968
                   Ince & Co, London
                   Ian Chetwood/Matthew Moore – Ref: IAC/MSM/8295/8718

FROM:              Glenn Winter
OUR REF:           GDW/ln/82/139
NO. OF PAGES:      3

CONFIDENTIALITY NOTICE: This facsimile is intended only for the addressee. It may contain privileged and/or confidential information. If you are not the intended recipient please inform us on the above telephone number immediately and do not disclose the contents or take copies.

### TOP URGENT

SUBJECT TO CONTRACT
WITHOUT PREJUDICE

~~Re:   "OCEAN VICTORY" – Alleged unsafe port claim~~

Thank you for your fax on Friday night (which makes your Clients' position clear). Let us now make our Clients' position clear:-

1.   Our Clients do not consider that your Clients have acted reasonably. You and they refused to provide a proper breakdown of the security required, despite numerous requests from March to September. Only on 17th September did your Club Clients provide a detailed breakdown (which contained significantly different figures to those previously provided). However, they then immediately proceeded with the Rule B Attachment before giving Skuld a reasonable opportunity to respond, even though Skuld confirmed they were taking instructions.

2.   Your Clients have subsequently been wholly unconstructive. They initially refused (and possibly still will refuse) to accept a Bank Guarantee issued by the London branch of the Bank of China and are refusing, without any

Partners: Glenn Winter Ken Scott Michael Ellis Damian Wilkes Tim Houghton James King Graeme Lloyd
Associates: Richard Verney (not admitted)
Regulated by the Solicitors Regulation Authority

VAT No GB 819 4...



justifiable reason) to accept separate securities in respect of the insured and uninsured elements of the claim.

3.    Sinochart are extremely displeased regarding the manner in which your Clients (particularly West of England) have dealt with this matter and that may obviously have significant consequences for the future.

4.    We now have instructions to give you the following ultimatum:-

(a) Skuld will provide your Clients with a Letter of Undertaking for US$50,000,000 and the Bank of China will provide your Clients with a Bank Guarantee for US$127,520,838, along the lines previously proposed, subject to the provision of counter security and subject to the Bank's final approval and subject to the parties' reaching an agreement on any amendments (in which regard we remain willing to discuss with you any reasonable proposals which you might wish to put forward).

(b) If final agreement is reached on the above basis, our Clients will waive their rights to set aside the Rule B Attachment.

(c) If agreement is not reached in principle by close of business tomorrow, our Clients intend:-

(i)    To consider putting a Bail Bond in place without further notice;

(ii)   To apply to the US Court to lift the Attachment;

(iii)  To apply to the US Court for an order that your Clients provide counter-security in the sum of approximately US$22,500,000 for the following:-

| | | |
|---|---|---|
| Overpaid hire | – | US$896,221.04; |
| Bunkers | – | US$834,999.85; |
| Loss of use of the vessel (estimated) | – | US$2,150,000; |

|  | | |
|---|---|---|
| Cost of Bail Bonds (US$4,540,000 p.a) | - | US$13,620,000; |

Interest and costs
(possibly to be increased to
take into account
Sinochart's costs exposure
in respect of counterclaims
under the Sub-Charterparty).                          -          US$5,000,000

(iv)    In the event that the Attachment is not set aside, your Clients will be held liable for the cost of the Bail Bond which is calculated to exceed US$13,600,000.  These costs will be recoverable as costs in the Arbitration.

Please confirm by close of business tomorrow whether, in principle, your Clients are willing, in principle and subject to contract, to enter into an agreement along these terms. If we do not hear from you within that period we will assume that your Clients are not willing to do so and our Clients will proceed accordingly.

Yours faithfully,

WINTER SCOTT

# Fax



**INTERNATIONAL
LAW FIRM**

Ince & Co is a partnership of solicitors and registered foreign lawyers and is regulated by the Solicitors Regulation Authority. A list of partners is open to inspection at the office shown.

This message and any attachments are confidential to the intended recipient and may be privileged. If you are not the intended recipient we request that you contact us and not make any use of them pending arrangements for their return or destruction.

Please contact us immediately if any part of this transmission is incorrectly received. This document has been generated electronically and therefore may not include a signature.

International House
1 St Katharine's Way
London E1W 1AY
DX 1070 London City

Tel +44 20 7481 0010
Fax +44 20 7481 4968
www.incelaw.com

| From | Our Ref | Date |
|---|---|---|
| Ian Chetwood/Matthew Moore | IAC/MSM/8295/8718 | 17 October 2007 |
| To | Attention | Your Ref |
| Winter Scott | Glenn Winter | DGW/In/82/139 |
| Total number of pages | Town/Country | Fax Number |
| Two | London/UK | 020 7726 2371 |
| Copies to | Attention/Ref | Town/Country/Fax Number |
| Richards Butler | Chris Howse | 00 852 2810 1607 |
| Matter | | |
| Ocean Victory - Unsafe Port Claim - Without Prejudice | | |

Thank you for your fax timed at 16:11 yesterday, marked subject to contract and without prejudice.

At paragraph 4(iii) of your message, you refer to certain counter-claims that your clients apparently intend to advance. We would be grateful for clarification of the claim which you have suggested that your clients may have for the loss of the use of the *Ocean Victory*. Can you please tell us based on what alleged breach by our clients, your clients believe that they might be able to make such a claim? Further, you refer to the possible cost of providing bail bonds in the sum of US$13.6 million, being US$4,540,000 p.a. for three years. Could you please confirm whether that US$4.5 million is premised upon the provision of bail bonds for the full amount of the Rule B Order, i.e. US$177,520,838? Finally, can you please clarify for us the reference to "Sinochart's costs exposure in respect of counterclaims under the sub-charterparty". Please tell us what those counter-claims are and why you think that counterclaims made under the sub-charterparty might properly be made against our clients.

As you acknowledge, we have endeavoured to make our clients' position very clear on the subject of possible substitute security, to replace the Rule B attachment.

We do not accept the suggestion that you make that our clients have been unconstructive. As we see it, the truth of the position is that your clients apparently wish our clients to assume a risk which your clients are seemingly themselves unwilling to run. This is in circumstances where we understand that neither Skuld nor Bank of China is prepared to accept the other's undertaking as counter-security. If they were so willing, we see no reason why a single letter of undertaking or a single guarantee for the full claim could not be provided to stand as security for our clients' claims in full.





17 October 2007

Security by way of a single guarantee is the norm, as we are sure you will have advised your clients. It remains our clients' position that that is what they will accept, on the terms outlined previously.

Regards,
Ince & Co
*[This is a computer generated fax and is therefore unsigned]*

2

⑬



# Winter Scott
## Solicitors

St Olave's House
Ironmonger Lane
London EC2V 8EY
Telephone: + 44 (0)20 7367 8989
Fax: + 44 (0)20 7726 2371
DX: 42602 Cheapside
E-mail: firstinitialsurname@winterscott.co.uk

## FAX TRANSMISSION

DATE:        8 October 2007

TO:          020 7481 4968
             Ince & Co, London
             Ian Chetwood/Matthew Moore – Ref: IAC/MSM/8295/8718

FROM:        Glenn Winter
OUR REF:     GDW/ln/82/139
NO. OF PAGES: 1

CONFIDENTIALITY NOTICE: This facsimile is intended only for the addressee. It may contain privileged and/or confidential information. If you are not the intended recipient please inform us on the above telephone number immediately and do not disclose the contents or take copies.

### TOP URGENT

WITHOUT PREJUDICE
SUBJECT TO CONTRACT

Re:— "OCEAN VICTORY" – Alleged unsafe port claim

We refer to our previous correspondence.

Although there have been discussions with WoE regarding security, we understand that WoE are maintaining that, as they only have a limited interest, they cannot themselves agree to accept security in the form being proposed by our Clients.

In these circumstances, we have been requested to approach you and to ask you urgently whether your other Clients (namely hull underwriters and Owners) would agree, in principle, to accept a Skuld Letter of Undertaking for US$50million and a Bank of China Guarantee for the balance.

Please take instructions and revert as soon as you can.

Yours faithfully,

WINTER SCOTT

Partners: Glenn Winter Ken Scott Michael Ellis Damian Wilkes Tim Houghton James King Graeme Lloyd
Associates: Richard Verney (not admitted)
Regulated by the Solicitors Regulation Authority

VAT No GB 819 4174 10

14



# Winter Scott
## Solicitors

St Olave's House
Ironmonger Lane
London EC2V 8EY
Telephone: + 44 (0)20 7367 8989
Fax: + 44 (0)20 7726 2371
DX: 42602 Cheapside
E-mail: firstinitialsurname@winterscott.co.uk

---

## FAX TRANSMISSION

DATE:           11 October 2007

TO:             020 7481 4968
                Ince & Co, London
                Ian Chetwood/Matthew Moore – Ref: IAC/MSM/8295/8718

FROM:           Glenn Winter
OUR REF:        GDW/kr/82/139

NO. OF PAGES:   2

CONFIDENTIALITY NOTICE: This facsimile is intended only for the addressee. It may contain privileged and/or confidential information. If you are not the intended recipient please inform us on the above telephone number immediately and do not disclose the contents or take copies.

---

Re: "OCEAN VICTORY" – Alleged unsafe port claim-Without Prejudice-Subject to Contract

We thank you for your fax of yesterday. We have taken instructions from both Sinochart and Skuld in respect of your fax.

Our Clients are pleased to note that your Clients may accept a Bank of China ("BOC") guarantee but disappointed that your Clients still insist on a single guarantee.

As your Clients are aware, Sinochart has a Charterers' liability cover from Skuld up to US$ 50 million. If your Clients maintain their position for a single guarantee, it is difficult for Sinochart to obtain approval from the Chinese Government forBOC to issue a security for the total amount. Therefore, our Clients request your Clients to reconsider their position.

We have been instructed by both Skuld and Sinochart that they will cooperate with your Clients in respect of the wording of the LOU and the bank guarantee so that your Clients can enforce both the BOC guarantee and LOU if they win the case.

Sinochart requests your Clients to lift the Rule B attachment immediately to allow Sinochart to work out acceptable security to your Clients within a reasonable



---

Partners: Glenn Winter Ken Scott Michael Ellis Damian Wilkes Tim Houghton James King Graeme Lloyd
Associates: Richard Verney (not admitted)
Regulated by the Solicitors Regulation Authority

VAT No GB 819 4174 16

period of time, say four weeks. Please note that your Clients' action to restrain Sinochart's funds has seriously disrupted Sinochart's normal business operation including projects of the Chinese Government. If your Clients insist on continuing Rule B attachment in the US, this will cause more serious consequences.

We have been instructed by our Clients that Sinochart have reported this matter to the Chinese Government because Sinochart is a state owned company. They are requested to make a further report to the Chinese Government within this week.

In summary, our Clients believe that a Skuld LOU and a BOC guarantee should be acceptable to your Clients and that your Clients' request for a single guarantee is not reasonable in the circumstances. Our Clients believe that the security arrangements can be progressed without any further delay if both parties cooperate with each. We should be grateful if you could take instructions to respond to us on the above by close of business tomorrow, so that Sinochart can make a further report to the Chinese Government.

Yours faithfully,

WINTER SCOTT

16



# Winter Scott
## Solicitors

St Olave's House
Ironmonger Lane
London EC2V 8EY
Telephone: + 44 (0)20 7367 8989
Fax: + 44 (0)20 7726 2371
DX: 42602 Cheapside
E-mail: firstinitialsurname@winterscott.co.uk

---

## FAX TRANSMISSION

**DATE:**          21 January 2008

**TO:**            020 7481 4968
                   Ince & Co, London
                   Ian Chetwood/Matthew Moore – Ref: IAC/MSM/8295/8718

**COPY TO:**       00 852 2810 1607
                   Richards Butler in Association with Reed Smith, Hong Kong
                   Lianjun Li

**FROM:**          Glenn Winter
**OUR REF:**       GDW/DMW/has/82/139
**NO. OF PAGES:**  2

CONFIDENTIALITY NOTICE: This facsimile is intended only for the addressee. It may contain privileged and/or confidential information. If you are not the intended recipient please inform us on the above telephone number immediately and do not disclose the contents or take copies.

---

Dear Ian,

Re:  "OCEAN VICTORY" – Alleged unsafe port claim

I refer to Lianjun's email of earlier today.

Our Clients are anxious to finalise the question of security as quickly as possible. Unless there are major differences of principle (which I understand may not be the case) I can see no reason why we could not reach agreement on the wording this week.

There is obviously no problem in discussions continuing in Hong Kong but, if you feel it would be helpful for us to meet in London (to identify and attempt to resolve any outstanding points) I would be delighted to meet with you this week. At present I have good availability but there is a possibility that I might be unavailable on Thursday. However, Tuesday, Wednesday and Friday would be fine.

If it would assist, I would be pleased to come to your office.

---

Partners: Glenn Winter Ken Scott Michael Ellis Damian Wilkes Tim Houghton James King Graeme Lloyd
Associates: Richard Verney (not admitted) Simon Leslie
Regulated by the Solicitors Regulation Authority

VAT No GB 819 4174 1

I look forward to hearing from you.

Best regards,

Glenn Winter
WINTER SCOTT



# Winter Scott
## ᴸolicitors

St Olave's House
Ironmonger Lane
London EC2V 8EY
Telephone: + 44 (0)20 7367 8989
Fax: + 44 (0)20 7726 2371
DX: 42602 Cheapside
E-mail: firstinitialsurname@winterscott.co.uk

---

## FAX TRANSMISSION

DATE:           23 January 2008

TO:             020 7481 4968
                Ince & Co, London
                Ian Chetwood/Matthew Moore – Ref: IAC/MSM/8295/8718

COPY TO:        00 852 2810 1607
                Richards Butler in Association with Reed Smith, Hong Kong
                Lianjun Li

FROM:           Glenn Winter
OUR REF:        GDW/DMW/ln/82/139
NO. OF PAGES:   1

CONFIDENTIALITY NOTICE: This facsimile is intended only for the addressee. It may contain privileged and/or confidential information. If you are not the intended recipient please inform us on the above telephone number immediately and do not disclose the contents or take copies.

Dear Ian,

Re:  "OCEAN VICTORY" – Alleged unsafe port claim

Many thanks for your prompt response.

I do appreciate the points you make and would certainly wish you to continue to respond to Richards Butler.

However, assuming that you (rather than Peter) are providing the final recommendation to your Clients as to the form and wording of the security, I still feel that it might be helpful for us to get together for a very short meeting (which frankly should take no more than an hour) so that we can discuss the differences between the last two sets of drafts put forward on behalf of our respective Clients, with a view to making significant progress on the security issue during the course of this week.

Best regards,

Glenn Winter
Winter Scott

---

Partners: Glenn Winter Ken Scott Michael Ellis Damian Wilkes Tim Houghton James King Graeme Lloyd
Associates: Richard Verney (not admitted) Simon Leslie
Regulated by the Solicitors Regulation Authority                    VAT No GB 819 4174 16

